KELLEY DRYE & WARREN LLP
  Daniel Schimmel (*Pro Hac Vice Pending*)
101 Park Ave, 27th Floor
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
dschimmel@kelleydrye.com

KELLEY DRYE & WARREN LLP
   Lee S. Brenner (State Bar No. 180235)
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, CA 90067-4008
Telephone: (310) 712-6100
Facsimile:  (310) 712-6199
lbrenner@kelleydrye.com

Attorneys for Defendants Orange S.A.,
Anne Benrikhi, Dimitri Delmas, Olivier
Godiniaux, Guillaume Guimond,
Fabrice Petesch, and Jacques Viel

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| TELESOCIAL INC.,<br><br>    Plaintiff,<br><br> v.<br><br>ORANGE S.A., a French Corporation; ANNE BENRIKHI, an individual; DIMITRI DELMAS, an individual; ANN DORNIER, an individual; OLIVIER GODINIAUX, an individual; GUILLAUME GUIMOND, an individual; FABRICE PETESCH, an individual; and JACQUES VIEL, an individual.<br><br>    Defendant. | Case No.  3:14-cv-03985 JD<br><br>Assigned to Hon. James Donato<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS TELESOCIAL'S COMPLAINT FOR IMPROPER VENUE UNDER RULE 12(B)(3), UNDER JUDICIAL ESTOPPEL PRINCIPLES OR, ALTERNATIVELY, FOR *FORUM NON CONVENIENS***<br><br>[*Declaration of George Bermann; Declaration of Catherine Le Drogo; Declaration of Daniel Schimmel; Request for Judicial Notice; and [Proposed] Order Filed Concurrently Herewith*]<br><br>Date:  January 28, 2015<br>Time:  9:30 a.m.<br>Room:  11<br><br>Action Filed: September 2, 2014<br>Trial Date: None Set |

LA01\BrenL\520561.1

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  PLEASE TAKE NOTICE that on January 28, 2015, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California, 94102, defendants Orange S.A., Anne Benrikhi, Dimitri Delmas, Olivier Godiniaux, Guillaume Guimond, Fabrice Petesch, and Jacques Viel's (collectively, the "Defendants") motion to dismiss Telesocial, Inc.'s ("TS") Complaint (the "Complaint") for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, under judicial estoppel principles, or alternatively for *forum non conveniens* will be heard.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declarations of George Bermann, Catherine Le Drogo and Daniel Schimmel, the Request for Judicial Notice, and the pleadings, records and files herein, and upon such other argument as may be presented at the hearing.

DATED: December 1, 2014           KELLEY DRYE & WARREN LLP
                                    Daniel Schimmel
                                    Lee S. Brenner

                                  By  /s/ Lee S. Brenner
                                    ─────────────────────
                                    Lee S. Brenner
                                  Attorneys for Defendants Orange S.A., Anne
                                  Benrikhi, Dimitri Delmas, Olivier Godiniaux,
                                  Guillaume Guimond, Fabrice Petesch, And
                                  Jacques Viel

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

|     |     |                                                                                                                                                                                      | Page |
| --- | --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------ | ---- |
| I.  |     | INTRODUCTION                                                                                                                                                                         | 1    |
| II. |     | STATEMENT OF FACTS                                                                                                                                                                   | 2    |
|     | A.  | On April 25, 2012, Orange and TS Entered a Non-Disclosure Agreement Designating Paris as the Mandatory Forum                                                                         | 2    |
|     | B.  | TS Has Actively Litigated the Same Issues in France Under the Agreement                                                                                                              | 4    |
| III.|     | ARGUMENT                                                                                                                                                                             | 6    |
|     | A.  | TS's Claims Should Be Dismissed Under Rule 12(b)(3) Because a Valid Forum Selection Clause Requires That All Claims Arising Out of or Relating To the Agreement Be Litigated in Paris| 6    |
|     | B.  | The Complaint Should Be Dismissed Based on Principles of Judicial Estoppel                                                                                                           | 10   |
|     | C.  | Separately, the Complaint Should Be Dismissed Based on Principles of *forum non conveniens*                                                                                          | 11   |
| IV. |     | CONCLUSION                                                                                                                                                                           | 15   |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argoquest Holdings, L.L.C. v. Israel Discount Bank Ltd.*,
   No. 04-10292, 2005 WL 6070168 (C.D. Cal. Apr. 8, 2005) ....................... 6, 7, 13

*Argueta v. Banco Mexicano*,
   S.A. 87 F.3d 320 (9th Cir. 1996) ................................................................ 6, 8, 9

*Boston Telecomms. Grp., Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ............................................................................. 11

*Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................... 7, 8, 9

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ............................................................................... 8

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ............................................................................... 6

*Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.*,
   No. C 08-2153, 2008 WL 3929814 (N.D. Ca. Aug. 26, 2008) ........................ 6, 7

*Gschwind v. Cessna Aircraft Co.*,
   161 F.3d 602 (10th Cir. 1998) ............................................................................. 12

*Guinness P.L.C. v. Ward*,
   955 F.2d 875 (4th Cir. 1992) ............................................................................... 10

*Harris v. France Telecom, S.A.*,
   No. 11-357, 2011 U.S. Dist. LEXIS 93630 (N.D. Ill. Aug. 22, 2011) ............. 7, 12

*Holck v. Bank of New York Mellon Corp.*,
   769 F. Supp. 2d 1240 (D. Haw. 2011) ......................................................... 6, 7, 10

*Holland Am. Line Inc., v. Wärtsilä N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................. 9

*Leuck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) .................................................................. 11, 12, 13

*Lockman Found. v. Evangelical Alliance Mission*,
 930 F.2d 764 (9th Cir. 1991) .......................................................................... 11, 12

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
 858 F.2d 509 (9th Cir. 1988) .................................................................. 7, 8, 9, 10

*Milne v. Slesinger*,
 No. 02-08508, 2009 WL 3140439 (C.D. Cal. Sept. 25, 2009) ............................ 10

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ........................................................................................... 10

*Otor, S.A. v. Credit Lyonnais, S.A.*,
 No. 04-6978, 2006 U.S. Dist. LEXIS 64885 (S.D.N.Y. Sept. 11, 2006) ............................................................................................................... 12

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ........................................................................................... 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 US 395 (1967) ............................................................................................... 8

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*,
 350 F. Supp. 2d 369 (S.D.N.Y. 2004) ................................................................. 11

*S.F. Tech., Inc., v. The Glad Prods. Co.*,
 No. 10-000966, 2010 WL 2943537 (N.D. Cal. July 26, 2010) ........................... 13

*Tuazon v. R.J. Reynolds Tobacco Co.*,
 433 F.3d 1163 (9th Cir. 2006) ............................................................................ 14

**Statutes**

Fed. R. Civ. Pro. 12(b)(3) ......................................................................................... 6

## I. INTRODUCTION

Telesocial, Inc. ("TS")'s lawsuit ignores the mandatory forum selection clause in the parties' contract, which mandates that "[*a*]*ny and all dispute, controversy, claim or question arising out of or relating to the Agreement"* be resolved by courts in Paris, France. *See* Le Drogo-Ferrari Decl. Ex. A ¶ 10. (emphasis added). In its Complaint, TS disclosed neither the existence of this agreement, entered into by Orange[1] and TS on April 25, 2012 (the "Agreement"), nor the fact that judicial proceedings relating to this same dispute between Orange and TS have been pending in Paris for more than a year.

In June 2013, TS brought judicial proceedings in the Paris Commercial Court. These proceedings are based on the same basic factual allegations as the Complaint in this action. In both judicial proceedings, TS alleges that, during the parties' negotiations in 2012, TS provided Orange with confidential information, including a password to access its mobile phone application from France, and that Orange improperly used that information to develop its own application. TS brought the Paris proceedings to obtain pre-action disclosure of documents. In support of its application, it repeatedly represented to the Paris courts that it intends to litigate the merits of the dispute in Paris based on the *mandatory* forum selection clause in the Agreement. The Paris courts relied on these representations and exercised jurisdiction over TS's petition. TS has engaged in forum shopping by filing this new action with this Court. Tellingly, TS brought this new action two months after it received an adverse ruling from the Paris Court of Appeal on July 1, 2014, which reversed the grant of pre-action disclosure of documents to TS.

The Complaint in this action should be dismissed for three reasons. First, the Complaint should be dismissed for improper venue. The forum selection clause in

---

[1] Orange S.A. ("Orange") is formerly known as France Telecom S.A. (*See* Compl. ¶ 2). Orange is a corporation "organized and existing under the laws of France, with its principal place of business" in Paris, France.

the Agreement is both broad and mandatory. It is applicable to both Orange and the individual defendants. The Ninth Circuit has made clear that a party cannot change the bargain and contradict the policy of enforcing such clauses.

Second, TS's lawsuit should also be dismissed based on principles of judicial estoppel. The Paris courts exercised jurisdiction over TS's petitions based on its express representations that it provided information to Orange pursuant to the Agreement, and that the forum selection clause applies. TS should be estopped from changing its position now.

Third, this lawsuit should be dismissed based on principles of *forum non conveniens*. The defendants are all amenable to service of process in Paris. The Declaration of Professor George Bermann of Columbia University Law School, dated November 26, 2014 ("Bermann Decl."), demonstrates that TS could pursue in France the types of claims that it has brought here. Bermann Decl. ¶¶ 25-48. The forum selection clause strongly weighs in favor of dismissal. In addition, all of the current and former employees of Orange and its affiliates who were involved in the development of the relevant project are located in France, their documents are also located in France, and the parties' meetings took place in Barcelona and Paris. Moreover, TS represented to the Paris courts that it intends to litigate the merits of the dispute in Paris, and TS should not be allowed to evade its prior representations and to use the results of the Paris proceedings to initiate a lawsuit in California.

## II. STATEMENT OF FACTS

### A. On April 25, 2012, Orange and TS Entered a Non-Disclosure Agreement Designating Paris as the Mandatory Forum

On April 25, 2012, Orange and TS entered into the Agreement. Orange, a leading telecommunications service provider in Europe, had been working for more than ten years, in France, on projects designed to allow individuals to make telephone calls without knowing the recipients' phone numbers. Le Drogo-Ferrari Decl. ¶ 2. The goal was to protect the privacy of receiving parties. *Id.* Orange began its work in that field in 2000 and owned relevant patents, including a

| | |
|---|---|
| 1 | European patent granted in 2007.  *Id.* |
| 2 | TS, a start-up company with headquarters in California, had developed its |
| 3 | own application, called Call Friends, which allowed individuals with U.S. mobile |
| 4 | phone numbers to participate in conference calls via Facebook.  *Id.* ¶ 3.  Orange and |
| 5 | TS had an initial meeting at the World Mobile Congress, in Barcelona, in late |
| 6 | February 2012.  *Id.* ¶ 4.  In April 2012, they met twice in Paris and entered into the |
| 7 | Agreement to explore a possible relationship.  *Id.* ¶¶ 5-6.  The Agreement made |
| 8 | clear that these discussions were exploratory, and that the parties were not obligated |
| 9 | to complete a transaction.  Le Drogo-Ferrari Decl. Ex. A, ¶ 5. |
| 10 | Further, the Agreement contained a French governing law provision and a |
| 11 | broad mandatory forum selection clause: |

**GOVERNING LAW AND JURISDICTION**

This Agreement shall be governed by and construed in accordance with French law.  *Any and all dispute, controversy, claim or question arising out of or relating to the Agreement including the validity, binding effect, interpretation, performance or non-performance thereof* shall first be submitted to the respective authorized management representatives of the Parties for discussion in good faith and amicable resolution.  *In the event the Parties cannot resolve such dispute on an amicable basis within thirty (30) days after the beginning of such discussion and after making their best efforts to do so, then the Parties hereto irrevocably consent that the matter shall be submitted to the Court of Paris (France).*

*Id.* ¶ 10 (emphasis added).

TS alleges that it provided Orange with a password that allowed employees of Orange in France to access TS's application in the U.S.  Compl. ¶¶ 19, 21, 62. According to TS's Complaint, the parties terminated their negotiations regarding a possible relationship on July 31, 2012.  Compl. ¶ 20.  TS alleges that, following that date, Orange and the individual defendants continued to access the application using TS's password and obtained information that helped Orange develop its own application named Party Call.  *See* Compl. ¶¶ 19, 21, 26; *see also* Defendants' Request for Judicial Notice in Support of its Motion to Dismiss, dated December 1, 2014 ("RJN"), Ex. 4 ¶ 56-64, 68-69.

### B. TS Has Actively Litigated the Same Issues in France Under the Agreement

TS has actively litigated in Paris, since June 2013. On June 4, 2013, TS brought an *ex parte* proceeding against Orange before the Paris Commercial Court under Article 145 of the French Code of Civil Procedure, which allows parties to seek pre-action disclosure of information. RJN Ex. 1. In its petition, TS relied on the mandatory forum selection clause in the Agreement and stated that it intended to bring an action against Orange in Paris for breach of the Agreement. *Id.* ¶¶ 24-32. It stated as follows:

> Now, as concerns the former, according to the provisions of the Confidentiality Agreement: "*the Parties hereto irrevocably consent that the matter shall be submitted to the Court of Paris (France)*" (article 10). As France Telecom is a commercial company (as, moreover, is the Applicant, though under foreign law), it goes without saying that "*the Court of Paris*" must be understood as the Paris Commercial Court.

*Id.* ¶¶ 26. In its pleadings in Paris, TS emphasized that "it was imperative for it that its discussions with France Telecom and Orange be held in the context of" this Agreement, in 2012. *Id.* ¶¶ 9-10.

On June 4, 2013, in reliance on TS's representation that Paris was the parties' mandatory forum, a judge of the Paris Commercial Court directed Orange to provide pre-action disclosure of documents, primarily internal emails of 15 custodians (the "Production Order"), all of whom were based in the Paris area. *Id.* The Paris Commercial Court initially ordered that the documents be provided to a judicial officer. RJN Ex. 3, at 2-3. The parties actively litigated in Paris the subject of whether the documents should be produced to TS; a number of them were produced while others remained in the custody of the judicial officer. *Id.*

Orange promptly appealed from the Production Order. In its appellate brief, TS once again relied on the mandatory forum selection clause and confirmed its intent to bring an action for breach of the Agreement in Paris. RJN Ex. 2 ¶¶ 40-47. TS argued that Orange's use of its password to access TS's application after July 31, 2012 was an "obvious violation" of the Agreement. *Id.* ¶¶ 94-95. TS argued as

follows:

> That conduct clearly shows that Orange, after having broken off the negotiations with Telesocial, used confidential information (access to the CallFriends application, which Telesocial had only given for the purposes authorized by the confidentiality agreement, i.e. studying a partnership with Telesocial) for purposes other than those authorized by the confidentiality agreement, and solely in the aim of developing their own application.
>
> That is an obvious violation of the confidentiality agreement that Telesocial will reiterate in the complaint it is currently preparing against Orange.

*Id.* ¶¶ 94-95.

On July 1, 2014, the Paris Court of Appeal reversed the Production Order. RJN Ex. 3, at 10-11. It held that TS had not established that it had a legitimate interest in obtaining the production of documents prior to the commencement of its action. *Id.* at 9-10. In particular, the Court of Appeal held that, in TS's *ex parte* application to the Paris Commercial Court, it had not adduced any evidence in support of the allegation that Orange had used its confidential information in developing Party Call. *Id.* at 9. The Court of Appeal noted that Orange owned a patent in the technical area at issue, which had been granted in 2007. *Id.* at 10. The Court of Appeal held that TS had not provided support for its allegations that Orange terminated the parties' discussions in bad faith; instead, the exchanges of emails between the parties at the time supported Orange's argument that the discussions were interrupted after TS significantly increased its proposed price. *Id.* at 9-10.

On September 25, 2014, TS brought a second petition with the Paris Commercial Court once again seeking pre-action disclosure. RJN Ex. 4. As with its June 2013 petition, TS invoked the mandatory forum selection clause in the Agreement and represented its intent to bring an action against Orange in Paris for breach of the Agreement. *Id.* ¶¶ 16, 73-81. TS specifically represented to the Paris Commercial Court that it is "*about to file*" an action on the merits in Paris. Id. ¶ 16 (emphasis added). TS has similarly represented to the Paris Court of Appeal that "it

LA01\BrenL\520561.1　　5
DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS

is currently preparing" a complaint on the merits against Orange. RJN, Ex. 2 ¶ 95.

On September 2, 2014, TS filed the Complaint in this action. Its factual allegations are virtually identical to those set forth in the Paris proceedings. (Compare Compl. ¶ 21 with RJN Ex. 2. ¶¶ 88-91, 94-95; Ex. 4 ¶¶ 68-69.) Even though the French proceedings have been pending for more than a year, TS has failed to disclose to this Court the existence of the Agreement or the Paris proceedings, including the decision of the Paris Court of Appeal, dated July 1, 2014. That decision required TS to return to Orange the documents obtained through the Paris Production Order, and TS now seeks them in this action.

In a decision, dated November 27, 2014, the Paris Commercial Court denied TS's second application seeking pre-action disclosure of documents. *See* Schimmel Decl. ¶ 2. There are at this time two appeals pending before the Paris Court of Appeal and an appeal pending before the French Supreme Court in connection with the various proceedings TS and Orange initiated in Paris. *Id.* ¶ 4. The parties have submitted numerous briefs to the Paris courts. *Id.*

### III. ARGUMENT

#### A. TS's Claims Should Be Dismissed Under Rule 12(b)(3) Because a Valid Forum Selection Clause Requires That All Claims Arising Out of or Relating To the Agreement Be Litigated in Paris

TS's choice of forum in this action does not comply with the broad and mandatory forum selection clause in the Agreement. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (motion to dismiss based on enforcement of forum selection clause is treated as motion for improper venue under Rule 12(b)(3)); *Argueta v. Banco Mexicano*, S.A. 87 F.3d 320, 324 (9th Cir. 1996); *Forte Technical Sales, LLC v. Freescale Semiconductor, Inc.*, No. C 08-2153, 2008 WL 3929814, at *1 (N.D. Ca. Aug. 26, 2008); *Holck v. Bank of New York Mellon Corp.*, 769 F. Supp. 2d 1240, 1245 (D. Haw. 2011). When a defendant invokes a forum selection clause, the court may consider facts outside the pleadings. *Argueta*, 87 F.3d at 324;

*Forte Technical Sales, L.L.C.*, 2008 WL 3929814, at *1; *Holck*, 769 F. Supp. 2d at 1253.

### 1. The Agreement's forum selection clause is mandatory

A forum selection clause is mandatory if it sets forth "language that clearly designates a forum as the exclusive one." *Forte Technical Sales, L.L.C.*, 2008 WL 3929814, at *2 (citing *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995); *Holck*, 769 F. Supp. 2d at 1245. The clause in the Agreements states that *"[a]ny and all dispute, controversy, claim or question arising out of or relating to the Agreement including the validity, binding effect, interpretation, performance or non-performance thereof . . . shall be submitted to the Court of Paris (France)."* Le Drogo-Ferrari Decl. Ex. A, ¶ 10 (emphasis added). Courts in the Ninth Circuit have held that substantially identical forum selection clauses are mandatory. *Holck*, 769 F. Supp. 2d at 1254 (clause stating that, in the event a dispute cannot be resolved through mediation, "the dispute will be adjudicated" in California is mandatory); *Forte Technical Sales, L.L.C*, 2008 WL 3929814, at *2 (forum selection clause stating that "venue for any litigation will be in Travis County, Texas" is mandatory) (*citing Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989)); Bermann Decl. ¶¶ 14-15. Particularly pertinent here, in the Paris proceedings, TS has insisted that the parties had "irrevocably consent[ed]" to litigate issues relating to the Agreement in Paris. RJN Ex. 1 ¶¶ 26, 32; Ex. 4 ¶¶ 75, 81; Ex. 2 ¶¶ 41, 47.

### 2. All of TS's claims are within the scope of the forum selection clause

TS's claims fall within the ambit of the Agreement's forum selection clause. *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 20 (1972); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513-14 (9th Cir. 1988); *Holck*, 769 F. Supp. 2d at 1246-47. All of TS's claims in this action are based on the allegation that, during the parties' negotiations, TS provided Orange with confidential information

regarding Call Friends, including a password to access the application from France, and Orange improperly used TS's confidential information to develop Party Call. *See* Compl. ¶ 19, 21, 26, 33, 39, 62. These allegations relate to or arise out of the Agreement because they focus on the provision and use of information pursuant to that Agreement. In the French proceedings, TS has expressly stated that it provided a password and other information to Orange pursuant to the Agreement, and that the Agreement was "imperative" to TS's protection. *See* RJN Ex. 4 ¶¶ 56-58, 69, 87, 90-91; Ex. 2 ¶¶ 89-91, 94. TS's factual allegations are substantially the same in both actions, and TS's French petitions focus on Orange's alleged breach of the Agreement.

The U.S. Supreme Court and the Ninth Circuit have applied U.S. law to the interpretation of forum selection clauses even where the underlying contract is governed by foreign law. *See, e.g., Bremen*, 407 U.S. at 20; *Manetti-Farrow, Inc.*, 858 F.2d at 513. Under U.S. law, a forum selection clause applies to both common law and statutory claims, provided its scope includes all claims "arising or related to" the agreement. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (arbitration clause providing that any disputes "arising out of or relating to" the agreement is "broad and far reaching"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 US 395, 406 (1967) (an arbitration clause governing "[a]ny controversy or claim arising out or relating to this Agreement" is broad); Bermann Decl. ¶ 15 (same result under French and U.S. law).

In its briefs filed in Paris, TS repeatedly invoked the mandatory forum selection clause in the Agreement. RJN Ex. 1 ¶¶ 26, 32; Ex. 4 ¶¶ 75, 81; Ex. 2 ¶¶ 41, 47. That clause is broad and does not limit the choice of a Paris forum to claims for breach of the Agreement.

A mandatory forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10; *Argueta*, 87 F.3d at 324-25;

*Manetti-Farrow, Inc.*, 858 F.2d at 513-14. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Bremen*, 407 U.S. at 12-18; *Argueta*, 87 F.3d at 325. The party seeking to avoid a forum selection clause bears a "'heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court.'" *Argueta*, 87 F.3d at 325 (citation omitted).

TS cannot possibly meet this burden here. To the contrary, it has repeatedly relied on the forum selection clause in petitions and briefs filed in Paris. *Supra* at 8. As described in Professor Bermann's declaration, its claims can be brought in France. *See* Bermann Decl. ¶¶ 25-48. Enforcement of this forum selection clause will not contravene any strong public policy of California. *See Holland Am. Line Inc., v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007); *Manetti-Farrow, Inc.,* 858 F.2d at 514 (forum selection clauses can be equally applicable to contractual and tort causes of action).

In *Manetti-Farrow*, the plaintiff argued that it could not be assured that an Italian court would adequately safeguard its rights. *Manetti-Farrow, Inc.,* 858 F.2d at 515. The Ninth Circuit rejected that argument and held as follows:

> This concern is not only speculative, it "reflects something of a provincial attitude regarding the fairness of [an Italian] tribunal[]." Moreover, it is a concern that the parties presumably thought about and resolved when they included the forum selection clause in their contract. Manetti-Farrow now wants to change the bargain. To permit it to do so would completely contradict the policy of enforcing forum selection clauses.

*Id.* (citing *Bremen*, 407 U.S. at 12). Similarly, TS should not be allowed to change the parties' bargain.

### 3. The clause applies to all the individual defendants

The forum selection clause applies to the individual Defendants. The Ninth Circuit "has made clear that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Holck*, 769 F. Supp. 2d at 1248 (citing *Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5). The forum selection clause applies to non-parties when their alleged conduct "is so closely related" to the parties' contract. *Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5; Bermann Decl. ¶ 16. Plaintiff's claims are all based on the allegation that the individual defendants, acting on behalf of Orange, improperly used confidential information provided by TS. Compl. ¶¶ 27, 29. The Agreement expressly provides that "[e]ach Party will procure the commitment and observance of this Agreement by its Affiliates and Representatives [including employees] as if they were parties to this Agreement and shall be liable for any breach of this Agreement by the aforementioned Affiliates or Representatives." Le Drogo-Ferrari Decl. Ex. A, ¶¶ 1, 4.

In *Manetti-Farrow*, a case in which non-parties were alleged to have conspired with the party that entered into the contract, the Ninth Circuit held that "the conduct of the non-parties is so closely connected to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc.*, 858 F.2d at 512, 514 n.5. The Court should follow the same analysis here.

### B. The Complaint Should Be Dismissed Based on Principles of Judicial Estoppel

"'Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.'" *Milne v. Slesinger*, No. 02-08508, 2009 WL 3140439, at * 9 (C.D. Cal. Sept. 25, 2009) (*citing Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)). Not only is judicial estoppel

appropriate on a motion to dismiss, but the Court may apply judicial estoppel principles based on statements made or actions taken in foreign courts. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51, 755 (2001); *Guinness P.L.C. v. Ward*, 955 F.2d 875, 899-900 (4th Cir. 1992); *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 373-75 (S.D.N.Y. 2004). The Paris Commercial Court issued the Production Order based on TS's representations that its confidential information, including the passcode, were provided Orange pursuant to the Agreement, and that its forum selection clause requires litigation in Paris. RJN Ex. 1 ¶¶ 26, 32; Ex. 4 ¶¶ 56-58, 69, 75, 81, 87, 90-91; Ex. 2 ¶¶ 41, 47, 89-91, 94. TS is estopped from arguing that the forum selection clause is not applicable.

### C. Separately, the Complaint Should Be Dismissed Based on Principles of *forum non conveniens*

A motion to dismiss should be granted on *forum non conveniens* grounds where (1) an adequate alternative forum exists, and (2) the balance of private and public interest factors favor dismissal. *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009). An alternative forum ordinarily exists "when the defendant is amenable to service of process in the foreign forum." *Leuck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) (citation omitted). In addition, for the foreign forum to be adequate, it "must provide the plaintiff with some remedy for his [or her] wrong[.]" *Id.* "However, it is only in 'rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met." *Id.* (citation omitted). In other words, the foreign forum need not offer the same, or as favorable, remedies to still be adequate. *Id.* at 1144; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981). Procedural differences between United States and foreign courts also do not necessarily render a foreign forum inadequate. *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991).

LA01\BrenL\520561.1    11
DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS

### 1. France is an adequate alternative forum

Each defendant is amenable to jurisdiction in France. Bermann Decl. ¶¶ 10-24. (1) The Defendants consent to the jurisdiction of the French courts. (2) The forum selection clause in the Agreement establishes an additional basis of jurisdiction. (3) In addition, Orange has its principal place of business in Paris, and the individual defendants are domiciled in the Paris area. Le Drogo-Ferrari Decl. ¶ 9. Thus, French courts have jurisdiction based on both consent and domicile. Bermann Decl. ¶¶ 10-24.[2]

France is an adequate alternative forum because it provides TS a remedy for its alleged wrongs. Other courts have held that France's judicial system is adequate. *See, e.g.*, *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606-07 (10th Cir. 1998); *Otor, S.A. v. Credit Lyonnais, S.A.*, No. 04-6978, 2006 U.S. Dist. LEXIS 64885, *14-15, n. 11 (S.D.N.Y. Sept. 11, 2006) (holding that France is an adequate alternative forum in federal securities fraud case and recognizing that adequate alternative forum need "not depend on the existence of the identical cause of action in the foreign forum."); *Harris v. France Telecom, S.A.*, No. 11-357, 2011 U.S. Dist. LEXIS 93630, *11-12 (N.D. Ill. Aug. 22, 2011) (finding France adequate alternative forum even though state statutory claims had no equivalent in France because "avenues for redress need not be as comprehensive or favorable as the specific causes of action pursued in the American jurisdiction."). Moreover, the Defendants have demonstrated that TS could pursue in France the types of claims that it has brought here. Bermann Decl. ¶¶ 25-48.

### 2. The Balance of Private and Public Factors Favors Dismissal

"Ordinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign

---

[2] TS alleges that the individual defendants are domiciled in France or the U.K. (Compl. ¶¶ 3-9). Even if these defendants were domiciled in the U.K., which they are not, French courts would have jurisdiction. Bermann Decl. ¶¶20-23.

1  country." *Leuck*, 236 F.3d at 1145.  However, and particularly pertinent under the
2  circumstances here, "[t]he deference due to plaintiffs . . . . is far from absolute."
3  *Lockman Found.*, 930 F.2d at 767.  The presence of a forum selection clause
4  "weighs against an initial assumption that plaintiffs choice of forum is favored."
5  *Argoquest Holdings, L.L.C. v. Israel Discount Bank Ltd.*, No. 04-10292, 2005 WL
6  6070168, at * 3 n. 5 (C.D. Cal. Apr. 8, 2005) (citing *Evolution Online Sys., Inc. v.
7  Koninklijke PTT Netherland N.V.*, 145 F.3d 505, 511 (2d Cir. 1998).

### i. Private interest factors

Private-interest factors to consider in the analysis include: (1) the residence of the parties and the witnesses; (2) the presence of a forum section clause; (3) the location where the relevant agreements were negotiated and executed; (4) access to physical evidence and other sources of proof; (5) whether unwilling witnesses can be compelled to testify; (6) the cost of bringing witnesses to trial; (7) the enforceability of the judgment; and (8) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Lueck*, 236 F.3d at 1145; *Argoquest Holdings, L.L.C.*, 2005 WL 6070168, at *5; *S.F. Tech., Inc., v. The Glad Prods. Co.*, No. 10-000966, 2010 WL 2943537, at * 5 (N.D. Cal. July 26, 2010).

The Agreement's mandatory forum selection clause is "a strong factor" in favor of dismissal.  *Argoquest Holdings, L.L.C.*, 2005 WL 6070168, at *5.  All of the current and former employees of Orange and its affiliates who were involved in the development of Party Call are located in France, and their documents are there. Le Drogo-Ferrari Decl. ¶ 2.

A key witness cannot be compelled to testify.  Mr. Amet, the Orange employee who was the product manager of Party Call, left Orange in June 2014.  *Id.* ¶ 8.  He is the Orange official who was in charge of the discussions with TS and who executed the Agreement.  *Id.*

All the meetings between the parties took place in Paris or Barcelona, and the Agreement was entered into in Paris on April 25, 2012.  *Id.* ¶¶ 5-8.  Mr. Waytena,

1 TS's CEO, traveled to Paris for that meeting. *Id.* ¶ 6. Messrs. Waytena and Stone
2 traveled again to Paris for the June 12, 2012 meeting. *Id.* ¶ 7. All of the employees
3 of Orange who attended this meeting are based in France. *Id.* A fourth meeting
4 between Mr. Waytena, Mr. Amet, and Ms. Le Drogo-Ferrari was held in Paris in
5 July 2012. *Id.* ¶ 8. Orange and TS subsequently exchanged draft term sheets
6 discussing the possibility of conducting a temporary test, in France, to assess
7 whether customers of Orange France would be interested in the ability to call each
8 other via Facebook. *Id.* Ex. C at 4.1-4.5. This test, called a Proof of Concept,
9 would require obtaining the input of a group of 600 to 800 Orange France customers
10 in France for a period of three months. *Id.* Exs. B&C.
11 On November 13, 2014, TS's counsel sent a broad document preservation
12 letter to counsel for the Defendants, identifying 25 custodians. Only one of them is
13 located in the U.S. (Schimmel Decl. ¶ 5).

### ii. Public interest factors

15 Public interest factors to be considered are "(1) the local interest in the
16 lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local
17 courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute
18 unrelated to a particular forum." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d
19 1163, 1181 (9th Cir. 2006).
20 The courts in Paris have a strong interest in resolving the lawsuit because TS
21 obtained the Production Order based on its representation that the merits of the case
22 would be litigated in Paris. RJN Ex. 1. Allowing this action to proceeds creates a
23 risk of inconsistent rulings. Moreover, the factual allegations in the Complaint in
24 this action derive from information that TS obtained through the Production Order.
25 In Paris, TS has acknowledged that it conducted a search "in light of the documents
26 thus obtained" as a result of the Production Order. RJN. Ex. 4 ¶ 56-57. TS should
27 not be allowed to engage in forum shopping and use the fruits of the Production
28 Order to initiate a lawsuit in California. Moreover, the Agreement is governed by

LA01\BrenL\520561.1                               14
DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS

French law, a factor which weighs in favor of dismissal. The burden and costs on this Court and local jurors would be high given that this is not a local controversy; TS and Orange have been engaged in active litigation in France for more than a year. The Paris Commercial Court could timely address TS's claims. That court issued the Production Order on June 4, 2013, the day TS filed its First Petition.

## IV. CONCLUSION

For all of the foregoing reasons, defendant Orange respectfully requests this Court to dismiss this action on the alternative grounds of improper venue, judicial estoppel, and *forum non conveniens*.

DATED: December 1, 2014     KELLEY DRYE & WARREN LLP
Daniel Schimmel
Lee S. Brenner

By  /s/ Lee S. Brenner
    Lee S. Brenner
Attorneys for Defendants Orange S.A., Anne Benrikhi, Dimitri Delmas, Olivier Godiniaux, Guillaume Guimond, Fabrice Petesch, And Jacques Viel