KELLEY DRYE & WARREN LLP
 Daniel Schimmel (*Pro Hac Vice Pending*)
101 Park Avenue, 27th Floor
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
dschimmel@kelleydrye.com

KELLEY DRYE & WARREN LLP
 Lee S. Brenner (Bar No. 180235)
10100 Santa Monica Boulevard, Suite 2300
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
lbrenner@kelleydrye.com

Attorneys for Defendants Orange S.A., Anne Benrikhi, Dimitri Delmas, Olivier Godiniaux, Guillaume Guimond, Fabrice Petesch, and Jacques Viel

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| TELESOCIAL INC., <br><br> Plaintiff, <br><br> v. <br><br> ORANGE S.A., a French Corporation; ANNE BENRIKHI, an individual; DIMITRI DELMAS, an individual; ANN DORNIER, an individual; OLIVIER GODINIAUX, an individual; GUILLAUME GUIMOND, an individual; FABRICE PETESCH, an individual; and JACQUES VIEL, an individual. <br><br> Defendant. | Case No. 3:14-cv-03985 JD <br><br> Assigned to Hon. James Donato <br><br> **DECLARATION OF PROFESSOR GEORGE A. BERMANN** <br><br> *[Notice of Motion and Motion; Declaration of Catherine Le Drogo; Declaration of Daniel Schimmel; Request for Judicial Notice and [Proposed] Order Filed Concurrently Herewith]* <br><br> Date: January 28, 2015 <br> Time: 9:30 a.m. <br> Room: 11 <br><br> Action Filed: September 2, 2014 <br> Trial Date: None Set |

520508

DECLARATION OF PROFESSOR GEORGE A. BERMANN

1    I, George A. Bermann, do hereby affirm and declare under the penalty
2 of perjury, pursuant to 28 U.S.C. § 1746, as follows:

3  1. I am Professor of Law at Columbia Law School in New York, where I
4 hold the Jean Monnet Chair in European Union Law and the Walter Gellhorn
5 Professorship of Law, and also direct the Center for International Commercial and
6 Investment Arbitration. I have been a member of the Columbia Law faculty since
7 1975. Between 1993 and 2014, I directed the European Legal Studies Center.

8  2. I am a *professeur affilié* (affiliated professor) at the School of Law of
9 the Institut des Sciences Politiques (Sciences Po) in Paris. I have taught for the past
10 25 years as visiting professor at the Sorbonne Law School of the Université de Paris
11 I and at the Université de Paris II. Between 2009 and 2013, I was a member of the
12 visiting faculty of the Collège d'Europe in Bruges, Belgium.

13  3. At Columbia and abroad, I teach in the fields of European law (notably
14 French and European Union Law), Transnational Litigation, International
15 Arbitration, Conflict of Laws, Comparative Law and WTO Dispute Resolution.

16  4. I am the author of numerous books and edited volumes, as well as
17 many journal articles. Among the former are Cases & Materials on European
18 Union Law (3d ed. West 2010); Introduction to French Law (Kluwer 2008);
19 French Business Law in Translation (Juris Pub. 2009); and Law and Governance in
20 an Enlarged European Union (Hart Pub. 2006).

21  5. From 2006 through 2014, I was President of the world-wide *Académie*
22 *internationale de droit comparé* and remain Council Member of the newly-created
23 European Law Institute ("ELI"). I am currently Chief Reporter of the American
24 Law Institute's ongoing Restatement (Third) of the US Law of International
25 Commercial Arbitration, co-author of the ongoing project for an UNCITRAL Guide
26 to the New York Convention on the Recognition and Enforcement of Foreign
27 Arbitral Awards, and Co-editor-in-chief of the *American Review of International*

520508  1
520584

DECLARATION OF PROFESSOR GEORGE A. BERMANN

*Arbitration*. I am past president of the American Society of Comparative Law and past editor-in-chief of the *American Journal of Comparative Law*. I founded and remain chair of the executive editorial board of the *Columbia Journal of European Law*. I was recently appointed Chair of the Board of Advisers of the New York International Arbitration Center.

I.      **INTRODUCTION**

6.      I have been asked by counsel for Defendant Orange SA ("Orange") and Defendants Anne Benrikhi, Dimitri Delmas, Ann Dornier, Olivier Godiniaux, Guillaume Guimond, Fabrice Petesch, and Jacques Viel ("the Individual Defendants") to consider the question whether Orange and the Individual Defendants (together "the Defendants") would be within the personal jurisdiction of the courts of France for purposes of litigation of the present dispute.[1]  I have also been asked to determine whether the laws of France would afford the Plaintiff in this case an adequate alternative remedy.

7.      In preparation of this declaration, I have reviewed: (a) the Complaint in this action; (b) Telesocial's first petition to the Paris Commercial Court pursuant to Article 145 of the French Code of Civil Procedure, dated June 4, 2013; (c) the Paris Commercial Court's order granting that petition, dated June 4, 2013 (the "Order"); (d) Telesocial's appellate brief filed with the Paris Court of Appeal on March 25, 2014; (e) the decision of the Paris Court of Appeal reversing the Order, dated July 1, 2014; (f) Telesocial's second petition to the Paris Commercial Court pursuant to Article 145 of the French Code of Civil Procedure, dated September 25, 2014; (g) French authorities regarding jurisdiction, remedies, and forum selection clauses; and (h) the elements of the statutory causes of action in this case.

/ / /

---

[1] I understand from counsel for the Defendants that named Defendants Anne Benrikhi and Ann Dornier are in fact the same individual.

8. I have no independent knowledge of any of the underlying facts in this case. I derive my understandings from the documents referred to in paragraph 7.

9. I treat in the next two parts of this declaration, successively, the personal jurisdiction of the French courts over the Defendants in this case (Part II) and the relevant causes of action under French law (Part III).

## II. AMENABILITY OF DEFENDANTS TO THE JURISDICTION OF THE FRENCH COURTS

10. Adequate personal jurisdiction over the Defendants in France is easily established in this case on multiple grounds.

### A. JURISDICTION BY CONSENT

11. It is my understanding that all the Defendants in the present case consent to the jurisdiction of the French courts. Consent of the defendant is a fully adequate basis of jurisdiction in French law.[2]

12. Because French law does not recognize the doctrine of *forum non conveniens*, even the extreme inconvenience of litigating in France, assuming it could be established in the present case, would not lead a French court to decline to exercise jurisdiction. Once consent is established, it is virtually certain that a French court will hear the case.

13. Thus, the French courts will consider themselves competent if the Defendants submit to jurisdiction in this case, and will exercise that competence.

### B. Jurisdiction by Virtue of the Forum Selection Clause

14. Section 10 of the Agreement at issue in the present case – the Non-Disclosure Agreement dated April 25, 2012 – contains a forum selection clause that reads as follows:

> GOVERNING LAW AND JURISDICTION: This Agreement shall be governed by and construed in accordance with French

---

[2] New French Code of Civil Procedure, art. 48.

DECLARATION OF PROFESSOR GEORGE A. BERMANN

> law. Any and all dispute, controversy, claim or question arising out of or relating to the Agreement including the validity, binding effect, interpretation, performance or non-performance thereof shall first be submitted to the respective authorized management representatives of the Parties for discussion in good faith and amicable resolution. In the event the Parties cannot resolve such dispute on an amicable basis within thirty (30) days after the beginning of such discussion and after making their best efforts to do so, then the Parties hereto irrevocably consent that the matter shall be submitted to the Court of Paris (France).[3]

This clause unambiguously designates French courts as the forum for resolution of disputes between the parties arising out of or related to their agreement. French jurisdiction is exclusive, inasmuch as the clause, again unambiguously, provides that the matter "shall be submitted to" the designated court.

15. Under U.S. law, the question, if any, of the scope of a foreign forum selection clause is determined by the law of the forum. See *M/S Bremen v. Zapata Off-Shore Company*.[4] The *Bremen* case further establishes both that U.S. law strongly favors the enforcement of international forum selection clauses[5] and that such clauses are to be construed broadly.[6] Under U.S. law, broadly drawn forum selection clauses apply to both common law and statutory claims, provided those claims satisfy the "arising from or related to" language. (Even if French law, as the law chosen in the contract, were deemed to govern the scope of the forum selection clause, the result would be no different, since French law likewise holds that forum

---

[3] Non-Disclosure Agreement, para. 10.

[4] 407 U.S. 1 (1972). To the same effect, *see Manetti-Farrow, Inc. v. Gucci America, Inc., Ninth Circuit.* 858 F.2d 509, 513 (9th Cir. 1988) (court applies U.S. federal law to determine the scope and validity of a forum selection clause designating Italy as the exclusive forum for the resolution of disputes between the parties)

[5] *Id.* at 12-13.

[6] *Id.* at 20 ("For the first time in this litigation, Zapata has suggested to this Court that the forum clause should not be construed ... to include in rem actions. However, the language of the clause is clearly mandatory and all-encompassing"). *See also Manetti-Farrow, supra* note 4, at 514-15.

DECLARATION OF PROFESSOR GEORGE A. BERMANN

selection clauses in international contracts are to be understood as exclusive[7] and construed broadly.[8] They are understood to reserve to the chosen forum jurisdiction applicable not only to claims sounding in contract, but also to other cause of action bearing a relationship to the underlying contract.[9])

16. The Agreement in this case (including its choice of forum clause) does not bind only its signatories. Article 4 of the Agreement provides as follows:

> Each party will procure the commitment and observance of this Agreement by its Affiliates and Representatives as if they were Parties to this Agreement and shall be liable for any breach of this Agreement by the aforementioned Affiliates and Representatives.

Thus, all "Affiliates" and "Representatives" of the parties – as defined in the Agreement[10] – are parties to the contract, including its forum selection clause, and

---

[7] Répertoire de droit international, art. 4 ("Forum Selection"), para. 121.

[8] *Id.,* para. 122 ("The jurisdictional effect [of forum selection clauses] extends to all disputes falling within the clause's scope of application, especially when the clause is drafted in general terms contemplating all disputes stemming from the contract")

[9] The Supreme Court of France (Cour de Cassation) has ruled that a contractual forum selection clause (in that case, a clause designating San Francisco as exclusive forum) applies not only to a contract claim but also to a statutory claim of abuse of economic dependency. *See also* Decision 07-15823 (Cass., 1st civil chamber, Oct. 22, 2008) (contractual forum selection clause applies to claim of discriminatory commercial practices); Decision 00-17709 (Cass., 1st civil chamber, Mar. 19, 2002) (applying contractual forum selection clause to a claim sounding in tort); Decision 06-10946 (Cass., 1st civil chamber, Mar. 6, 2007) (forum selection clause applies to any dispute flowing from the rupture of contractual relations between the parties) Thus the French Supreme Court's broad construction of international forum selection clauses parallels its broad construction of international arbitration agreements. *See* Decision 09-67.013 (Cass., 1st civil chamber, July 8, 2010) (arbitration clause applies not only to claims sounding in contract, but also to claims having a connection (*lien*) with the contract, including in that case a claim that a party committed an abrupt rupture of contractual relations); S.A.R.L. Sept de Coeur v. Société Babybjörn AB, No. 12-13601 (Court of Appeal of Paris, March 18, 2014) (an arbitration clause covering "any dispute arising from or linked to the present contract" is broad enough to cover a claim that "regardless of the way in which it is characterized, presents a connection with the contract," such as claim for the tort of abruptly terminating contractual relations).

[10] The Agreement defines "Affiliates" as:

an entity directly or indirectly, owning or controlling, owned by or controlled by, or under common control with a Party. For the purpose of this definition, the term

are bound by it.

### C. Jurisdiction by Domicile

17. The French legal system, like all others, enables courts to exercise jurisdiction over persons, including non-domiciliaries, under some circumstances, even in the absence of their consent to the jurisdiction of a local court. The rules governing jurisdiction over non-domiciliaries are provided by French rules of private international law (*droit international privé*).

18. The available bases of personal jurisdiction over the defendant in French law depend on whether the defendant is a European Union ("EU") domiciliary or not. The available bases for jurisdiction over EU domiciliaries are set out in an EU law instrument known as the Brussels I Regulation.[11] Since Defendant Orange and the Individual Defendants are all EU domiciliaries, they are all subject to the jurisdiction of the French courts under the circumstances provided for by EU law.

19. According to Article 2 of the Brussels Regulation, a party domiciled in France is subject to the general jurisdiction of the courts of France, without need of any other showing. That is also the position taken by the French Civil Procedure Code.[12] Defendant Orange, having its principal place of business in France, is a French domiciliary. I understand from counsel for the Individual Defendants that they are all domiciled in France as well. Thus, all Defendants in this case are subject to French court jurisdiction.

---

"control" (including, with correlative meanings, controlling, controlled by, or under common control with), as applied to any person, means directly or indirectly the possession of at least 50% of voting rights or the power to elect the board of directors or any similar governing body.

The Agreement further defines "Representative" as: "any director, officer, employee, agent, or appointed advisor of one of the Parties."

[11] Council Regulation 44/2001 on Jurisdiction and the Recognition and Enforcement of judgments in Civil and Commercial Matters, O.J. L 12/1 (Jan. 16, 2001).

[12] New French Code of Civil Procedure, art. 42(1).

DECLARATION OF PROFESSOR GEORGE A. BERMANN

20.     The Complaint in the present case alleges that all the Individual Defendants "upon inform and belief, reside[ ] in France or the U.K." (Compl., paras. 3-9).  Despite my understanding that all of the Individual Defendants are French domiciliaries, I briefly address the question whether the courts of France would have jurisdiction over the Individual Defendants even if the Individual Defendants were in fact domiciled in the UK.

21.     According to Article 5 of the Brussels Regulation, an EU domiciliary may be sued in the courts of an EU Member State other than the one in which it is domiciled under, among others, the following circumstances:

> 1(a) in matters relating to a contract, in the courts for the place of performance of the obligation in question; …
>
> 3. in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur; …
>
> 5. as regards a dispute arising out of the operations of a branch, agency or other establishment, in the courts for the place in which the branch, agency or other establishment is situated.

22.     The Individual Defendants in the present case are alleged to have used the password provided by Telesocial to improperly access its application "from locations in France and England" (Compl., paras. 19-21, 33).  Based on this allegation alone, I conclude that under Article 5(3) of the Brussels Regulation, any Individual Defendant in this case who is a U.K. domiciliary would be subject to the jurisdiction of the courts of France.

23.     There is an alternative basis of jurisdiction of the French courts over any of the individual Defendants who happen to be U.K. domiciliaries.  Article 6 of the Brussels I Regulation provides:

> A person domiciled in a Member State may also be sued … where he is one of a number of defendants, in the

> courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings;

By virtue of Article 6, even if an EU domiciliary is not independently subject to the jurisdiction of a Member State court on the basis of one of the grounds specifically established under the Brussels I Regulation, it may nevertheless be sued in the courts of any State in which a co-defendant in the same action can properly be sued under the Regulation. Because Orange is independently subject to French court jurisdiction, any Individual Defendant domiciled in the U.K. is also subject under Article 6 of the Brussels I Regulation to the jurisdiction of the French courts in this case.

24. I thus conclude that all the Defendants in the present case are amenable to personal jurisdiction in the courts of France on the basis of consent and the forum selection clause. They are also subject to French jurisdiction under the Brussels Regulation based on domicile, irrespective of whether their domicile is in France or the U.K.

### III. AVAILABILITY OF RELIEF IN THE FRENCH COURTS

25. The French courts are willing to apply foreign law, and capable of doing so, when French conflict of rules point to the application of foreign law, and nothing would prevent Plaintiff from arguing that California law is applicable to the tort claims in this case. However, because this Declaration concerns the availability of relief under French law, I will assume that, if the present case were before the courts of France, it would be governed by the substantive law of France.

26. I consider here whether French law entertains claims comparable to those advanced by Plaintiff under U.S. law, viz. violation of the Federal Computer Fraud and Abuse Act, violation of the California Comprehensive Computer Data

DECLARATION OF PROFESSOR GEORGE A. BERMANN

520584

Access and Fraud Act, breach of contract, breach of the covenant of good faith and fair dealing, and violation of the California Unfair Competition Law.

27. I conclude that French law would provide the Plaintiff in the present case with an adequate remedy for its various claims.

### 1. *Federal Computer Fraud and Abuse Act*

28. Plaintiff first alleges that the Telesocial computers that Defendants accessed are protected computers within the meaning of the Federal Computer Fraud and Abuse Act because they are used in and affect interstate and foreign commerce and/or communication (Compl., paras. 33-35). In particular, the Telesocial computers were allegedly designed to be accessed—and were accessed by Defendants—from locations in France and England. They were allegedly also designed to be used—and were used by Defendants—to place and route telephone calls throughout the United States and the world. According to the complaint, Defendants intentionally accessed Telesocial's protected computers without authorization and/or in excess of authorized access, and thereby obtained information from those protected computers in violation of the Federal Computer Fraud and Abuse Act.

29. French law provides a remedy for the conduct of which Plaintiff complains. According to Article 1382 of the Code Civil, "Any act whatsoever of a person which causes injury to another obligates the person through whose fault the injury occurred to give compensation." The fault may be either intentional or negligent.[13] If the plaintiff can show fault, a causal link and actual damage, it is entitled to compensation for all the loss suffered. French law entitles the tort victim to recovery of damages in the full amount necessary to restore the tort victim to the position it would have been in had the fault and its consequences not occurred. The victim is thus entitled to what is called *réparation intégrale* (full compensation).

---

[13] Code Civil of France, art. 1383.

Moreover, French courts recognize *responsabilité delictuelle in solidum*, which is the French analogue to joint and several liability for tortious conduct.

30. The civil courts of France have applied Article 1382 in countless cases sounding in tort, affording a full compensatory remedy in all cases in which the requisite tort elements have been found.

31. French law more generally provides a remedy in damages for fraud, which is defined under French law as a representation or other act knowingly performed to deceive another person or otherwise cause harm to him so as to obtain a material advantage.[14] As such, fraud constitutes "fault" or "a wrong" within the meaning of the French law of tort as expressed in Article 1382 of the Code Civil (see *supra*, paras. 29-30). A person who perpetrates a fraud and thereby causes injury to another person has committed an intentional tort cognizable in French law and is therefore liable to that other person in damages.[15]

32. Damages in French tort law, whether awarded in civil or criminal court, are measured in such a way as to fully restore the victim to the situation in which the victim would have found himself or herself if the fraud or other form of wrongdoing had not occurred.[16]

33. In addition to the remedies for tort, including fraud, there are numerous provisions of French law that establish and protect rights in the kind of data at issue in this case and that contemplate both criminal and civil sanctions for violation of those rights. The Plaintiff in this case has itself invoked one such provision of French law in the French proceeding that it has instituted against Defendant Orange. In legal papers that Plaintiff served upon Defendants in French court (*assignation* of September 25, 2014),[17] Plaintiff invoked Article 323-1 of the French Penal Code,

---

[14] *See* Mikaël Ouaniche, La Fraude en Entreprise 25 (2009).

[15] *See, e.g.* Cass civ. 3ème, 8 juin 2010, no. 09-14,949, FS-P+B.

[16] François Terré, Philippe Simler & Yves Lequette, Droit civil: les obligations (9th ed. 2005), ¶ 900 ff.

[17] *Assignation* of Sept. 25, 2014, para. 91.

which provides that "the act of fraudulently accessing or maintaining access to all or part of an automatic data processing system is punishable by two years of prison and a 30,000 euro fine," and asserted that that provision is applicable to the facts in the present case.

34. Although the statute just referred to is penal in nature, it affords a remedy in civil damages to any person who personally suffers injury as a direct result of the penal violation. According to a common French procedure, called the *action civile*, the victim of a penal offense is entitled to bring a civil action in damages in a criminal court against the perpetrator of the crime. The Cour de cassation, or French Supreme Court, has thus reiterated that the victim of a fraud may recover damages in the criminal as well as in the civil courts.[18] Because of the *action civile*'s many procedural advantages over litigation in the civil courts, plaintiffs seeking damages in France make wide use of the *action civile* in those cases in which a civilly wrongful act also constitutes a penal offense.

35. Plaintiff's very invocation of Article 323-1 of the French Penal Code represents an acknowledgment of the existence and adequacy of the relief available under French law for the injury covered by the Federal Computer Fraud and Abuse Act.

36. In fact, Articles 323-1 *et seq.* of the French Penal Code is by no means the only relevant provision of French law available to the Plaintiff in this case. French law presents a thorough and detailed system of remedies available for the kind of injuries alleged in the present case. The components of this system, which are many,[19] include but are not limited to Articles L341-1, 342-1, and 343-1 *et seq.*

---

[18] Cass. crim., 8 mai 1968, Gaz. Pal. 1968.1, somm. 13; Cass crim., 3 janv. 1956, Bull. crim., no. 4.

[19] The relevant instruments include (a) Penal Code, arts. 311-1 *et seq.* (for fraudulent appropriation of property); (b) Penal Code, arts. 314-1 *et seq.* (for *abus de confiance* in the unauthorized use of an object of value, given to one person by another for a specific purpose, to the detriment of that other person); (c) Intellectual Property Code, arts. L615-1 *et seq.* (for any misappropriation of intellectual property); (d) Law no. 78-17 of Jan. 6, 1978 (relating to information technology, data and personal

of the French Intellectual Property Code, which prohibit the appropriation or unauthorized utilization of computer data and criminalize such conduct by three years of prison, a 300,000 euro fine, an order to delete or destroy the data collection, and an obligation to publicize the judgment of conviction. Once again, the victim may bring an *action civile* to recover all resulting damages.

### 2. *California Comprehensive Computer Data Access and Fraud Act*

37. The Plaintiff advances very similar charges against the Defendants under the California Comprehensive Computer Data Access and Fraud Act. It maintains that the Defendants knowingly accessed and without permission altered, damaged, and used the data, computers, computer systems, and computer networks of Telesocial to wrongfully control and/or obtain Telesocial's property and/or data. It alleges a range of related forms of misconduct through unauthorized access to and use of Telesocial's computers, computer systems, computer networks and the data available thereon.

38. The same provisions of French law cited in this Declaration in connection with the Federal Computer Fraud and Abuse Act (see *supra*, paras. 29-36) are equally applicable to the claims that Plaintiff asserts under the California Comprehensive Computer Data Access and Fraud Act. These include Article 1382 of the French Civil Code and Article 323-1 of the French Penal Code, coupled with the *action civile* procedure (see *supra*, paras. 29-35). As noted, there is in fact a thorough and detailed legal framework in French law that affords both civil and criminal remedies of which the Plaintiff could avail itself in French courts.[20]

---

liberty); (e) Law no. 2006-961 of August 1, 2006 and Intellectual Property Code, arts. L-122-1 (relating to authors' rights; (f) Law no. 2004-575 of June 21, 2004 (protecting confidentiality of economic data); (g) Decree no. 2000-405 of May 15, 2000 (creating a central office for combatting criminality in connection with information and communication technology); and (h) Decree no. 2006-580 of May 23, 2006 (implementing the 2001 Budapest Convention against Cybercriminality).

[20] See note 13, supra.

DECLARATION OF PROFESSOR GEORGE A. BERMANN

### *3.* ***Breach of Contract***

39. The Plaintiff also asserts a claim of breach of contract. According to the Complaint. Virtually all the acts by the Defendants complained of in the preceding paragraphs (Compl., paras. 48-50) also constitute breaches of contract.

40. French law fully recognizes breach of contract as a cause of action. The relevant provisions of the French Civil Code provide as follows:

> Art. 1101: A contract is an agreement by which one or several persons bind themselves, towards one or several others, to transfer, to do or not to do something.
>
> Art. 1134: Agreements lawfully entered into take the place of the law for those who have made them. They may be revoked only by mutual consent, or for causes authorized by law. They must be performed in good faith.
>
> Art. 1135: Agreements are binding not only as to what is therein expressed, but also as to all the consequences which equity, usage or statute give to the obligation according to its nature.
>
> Art. 1136: An obligation to transfer carries that of delivering the thing and of keeping it until delivery, on pain of damages to the creditor.
>
> Art. 1142: Any obligation to do or not to do resolves itself into damages, in case of non-performance on the part of the debtor.
>
> Art. 1145: Where there is an obligation not to do, he who violates it owes damages by the mere fact of the violation.
>
> Art. 1147: A debtor shall be ordered to pay damages, if there is occasion, either by reason of the non-performance of the obligation, or by reason of delay in performing, whenever he does not prove that the non-performance

> comes from an external cause which may not be ascribed
> to him, although there is no bad faith on his part.

41. The remedy under French law for breach of contract is an award of damages or, where sought by the successful plaintiff and not inappropriate, an order of specific performance directed to the breaching party. In the event of breach, the Civil Code entitles the prevailing party to full expectation damages, as follows:

> Art. 1149: Damages due to a creditor are, as a rule, for the loss which he has suffered and the profit which he has been deprived of, subject to the exceptions and modifications below.
>
> Art. 1150: A debtor is liable only for damages which were foreseen or which could have been foreseen at the time of the contract, where it is not through his own intentional breach that the obligation is not fulfilled.
>
> Art. 1151: Even in the case where the non-performance of the agreement is due to the debtor's intentional breach, damages may include, with respect to the loss suffered by the creditor and the profit which he has been deprived of, only what is an immediate and direct consequence of the non-performance of the agreement.

42. As in the case of the federal and state statutes relied upon in this action, the Plaintiff itself has acknowledged the existence and adequacy of the relief for breach of contract that is available under French law. In two sets of legal papers that Plaintiff served upon Defendant Orange in French court (the *assignation* of September 25, 2014 and the *signification d'ordonnance rendue sur requête* of June

4, 2013), the Plaintiff invoked the French law of contract in connection with the same facts alleged in this case.[21]

### 4. *Breach of Covenant of Good Faith and Fair Dealing*

43. The Plaintiff in this case further alleges a Breach of Covenant of Good Faith and Fair Dealing on the Defendants' part.

44. The facts alleged in connection with Plaintiff's claims of breach of covenant of good faith and fair dealing would unquestionably suffice to establish fault on the Defendants' part, and thus liability in damages under Article 1382 of the French Civil Code. As noted earlier (see *supra,* paras. 29-30), liability under Article 1382 entitles the tort victim to the full amount of damages required to restore it to the position it would have been in had no fault been committed and is subject to the principle of joint and several liability.

### 5. *California Unfair Competition Law*

45. The Plaintiff's final allegation is that by their actions the Defendants committed a violation of the California Unfair Competition Law. According to the allegations, the actions in which the Defendants engaged, as detailed in connection with the other claims in this proceeding, constituted unfair and unlawful business practices. The Complaint states that the violation of the California Unfair Competition Law consisted principally of a violation of the specific federal and state statutes dealt with earlier, namely the Federal Computer Fraud and Abuse Act and the California Comprehensive Computer Data Access and Fraud Act.

46. It has already been shown (see *supra*, paras. 29-35) that French law, through Article 1382 of the French Civil Code and Article 323-1 of the French Penal Code, among other provisions, provides an adequate remedy for these alleged violations.

---

[21] See *Signification d'ordonnance rendue sur requête* of June 4, 2013, paras. 9, 12, 23, 32; *Assignation* of September 25, 2014, paras. 27-31, 56, 69.

47. The only other specific allegation of unfair competition in the Complaint is that the Defendants violated California Penal Code § 507.7 by obtaining telephone services by fraud. As shown earlier (see *supra*, para. 31), French law provides a fully adequate damages remedy for fraud.

48. I thus conclude that substantive French law, were it to be applied by a French court in this case, would provide the Plaintiff with causes of action that correspond to its claims and that are capable of furnishing an adequate remedy in the event those claims are established.

## IV. GENERAL CONCLUSION

49. I conclude that, based on consent, domicile and the forum selection clause, the courts of France have and would exercise jurisdiction over all the Defendants in the present case.

50. I further conclude that French law provides actions comparable to those advanced in the present cases and that the remedies available in connection with those actions would be adequate to indemnify the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

George A. Bermann

Executed on Nov. 28, 2014