UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TELESOCIAL INC.,
    Plaintiff,

v.

ORANGE S.A., et al.,
    Defendants.

Case No. 14-cv-03985-JD

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 46

Plaintiff Telesocial Inc. alleges that defendants Orange S.A., the French multinational telecomm company, and several of its employees hacked into Telesocial's secure servers and stole its trade secrets and proprietary software code. Telesocial has sued under the federal Computer Fraud and Abuse Act, and California state law statutes and common law for unauthorized computer access, trade secret theft and other claims. Defendants ask this Court to dismiss the case under the *forum non conveniens* doctrine on the strength of a forum selection clause in a non-disclosure agreement that locates certain dispute resolution proceedings in Paris, France. The motion does not challenge the adequacy of Telesocial's complaint in any other way. The Court took the motion under submission without oral argument pursuant to Civil Local Rule 7-1(b), and now denies it.

## BACKGROUND

This case arises out of business negotiations that started enthusiastically and ended abruptly. As alleged in the complaint, plaintiff Telesocial Inc. ("Telesocial") is a tech start-up in San Francisco that was founded in 2008. Dkt. No. 37 ¶¶ 1, 19, 24. Telesocial has developed a software application known as "Call Friends" that integrates carrier-based phone call capability into social media platforms like Facebook without needing to use traditional phone numbers. *Id*. ¶

24 *et seq.* Telesocial maintains the secure servers that host its confidential and proprietary data and code in Emeryville, California. *Id.* ¶ 17. Defendants are Orange S.A., the well-known French telecomm giant, and a dozen individually named Orange employees (collectively "defendants" or "Orange"). *Id.* ¶¶ 2-14. Orange runs an office in San Francisco called "Orange Fab," which "actively scouts out Bay Area-based start-up companies 'that could be a good fit with Orange.'" *Id.* ¶ 2.

In 2012, Orange Fab and Telesocial began several months of discussions about a possible business deal over the "Call Friends" technology. *Id.* ¶¶ 29 *et seq*. In April 2012, the parties signed a non-disclosure agreement ("NDA") to protect the confidentiality of disclosures made during the discussions. Dkt. No. 50-1. The NDA is a short and very typical confidentiality agreement. The parties state that they "wish to reciprocally protect and safeguard any information they may disclose to each other during their Discussions" and will not disclose any received confidential information for five years. *Id*. The parties agreed that the discussions and disclosures did not in any way grant intellectual property rights or interests to the party receiving confidential information. *Id*. And the parties elected, apparently at Orange's urging, to resolve disputes about the NDA in France ("Any and all dispute, controversy, claim or question arising out of or relating to the Agreement . . . shall be submitted to the Court of Paris (France)"). *Id*.

Telesocial alleges that the business discussions with defendants started as intense and enthusiastic, and then abruptly collapsed over money. Dkt. No. 37 ¶¶ 29-39. Orange told Telesocial that its proposed deal price of $1 million was a "no go." *Id*. ¶ 39. But instead of simply parting ways with Telesocial, Orange allegedly resorted to "stealing" what it chose not to buy. *Id*. ¶ 41. According to Telesocial, Orange was under intense internal pressure to deploy a product like Call Friends, and decided to take the "shortcut" of hacking into Telesocial's servers and misappropriating the Call Friends technology. *Id.* On many occasions in September through December 2012, Orange purportedly used fake computer accounts, aliases and "unauthorized hacking tools" to breach Telesocial's servers and poach its code and other trade secrets. *Id*. ¶¶ 42-45. Telesocial alleges that Orange accessed and copied enough of its proprietary information

to announce in late 2012 that it was launching a product called "Party Call," which Telesocial claims would have the same features and functionality of its Call Friends application. *Id*. ¶ 54.

Telesocial has sued defendants under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*, for unauthorized access to its secure servers, and under California state law for trade secret theft, breach of Telesocial's "Terms of Use," and other claims. Dkt. No. 37. Telesocial states that the information it is suing on was never disclosed in the negotiations with defendants and that Telesocial refused to disclose it unless and until the parties signed a deal. *See, e.g.,* Dkt. No. 37 ¶ 35.

Orange moves to dismiss on the ground that the forum selection clause in the NDA requires that this case be heard only in the Court of Paris. Dkt. No. 46. Orange does not dispute this Court's personal jurisdiction over any of the Orange defendants, and does not challenge the FAC under FRCP Rule 12(b)(6) for failure to state a claim. The sole basis for dismissal is the *forum non conveniens* doctrine.

## DISCUSSION

Orange's motion relies almost exclusively on the Supreme Court's recent decision in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568 (2013). In *Atlantic Marine*, the Supreme Court significantly clarified the often murky waters of venue, forum selection clauses and the *forum non conveniens* doctrine. As the court held, the "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 580. The court noted that the familiar venue transfer provision in 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Id*. "For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" *Id*. (internal citation omitted).

The Supreme Court held that the existence of a valid forum selection clause should be a heavy hand on the *forum non conveniens* scale. "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens*

3

1  motion) must evaluate both the convenience of the parties and various public-interest

2  considerations." *Id*. at 581.  But when a valid forum selection clause is present, it should be

3  "'given controlling weight in all but the most exceptional cases.'"  *Id*.  (internal citation omitted).

4  As the court determined, that means the *forum non conveniens* analysis is modified in three ways:

5  (1) a plaintiff's venue privilege for "choice of forum merits no weight"; (2) the district court

6  should not consider arguments about the parties' private interests such as witness convenience;

7  and (3) a plaintiff flouting a forum selection clause does not get the advantage of having the state

8  law applicable in the original court apply in the transferee court.  *Id*. at 581-82.

9        Orange points to all of these considerations in *Atlantic Marine* and concludes that the

10 "decision mandates dismissal" of Telesocial's complaint.  Dkt. No 46 at 2.  It is certainly true that

11 the NDA contains a forum selection clause stating that "[a]ny and all dispute, controversy, claim

12 or question arising out of or relating to the [NDA] including the validity, binding effect,

13 interpretation, performance or nonperformance thereof . . . shall be submitted to the Court of Paris

14 (France)."  Dkt. No. 50-1 ¶ 10.  It is also true that this Court is required to treat the clause as

15 "*prima facie* valid," *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 (9th Cir. 1988),

16 and that Telesocial does not raise a serious question about validity.

17       But the condition precedent to Orange's *forum non conveniens* argument is that the NDA

18 forum clause applies to Telesocial's claims in the FAC.  If the claims do not fall within the scope

19 of the forum selection clause, the Court need not reach the *forum non conveniens* issue, and

20 Orange's lengthy discussion of *Atlantic Marine* is nothing more than interesting but irrelevant

21 commentary.  *Cf. Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1267 (2001) ("The Court

22 will not, however, reach this question because it finds that the forum selection clause does not

23 apply to the claims in this case.").

24       Orange has indeed failed to connect the FAC to the NDA.  Orange contends that all claims

25 in the FAC trace back to the confidential discussions held under the NDA and are therefore subject

26 to the clause.  In essence, Orange argues that once the parties started discussing Call Friends under

27 the NDA, all other events and communications involving the application, including the events

28 alleged in the FAC, necessarily relate to it.  To get to that conclusion, Orange must stretch the

4

NDA well past any reasonable application to the facts alleged in the complaint, and too far to be the basis for dismissing this case.

Telesocial's main federal claim under the CFAA illustrates the disconnect in Orange's argument. As the facts alleged in the FAC make clear, this claim is premised entirely upon events that occurred after the abrupt termination of the discussions subject to the NDA, and is necessarily based on Orange's unauthorized access to information that Telesocial did not disclose during those negotiations. Dkt. No. 37 ¶¶ 35, 39-49, 64-66. Specifically, the CFAA claim states that Orange hacked into Telesocial's protected servers in Emeryville, California, without authorization or permission and using aliases and fake computer accounts, accessed Telesocial's crown-jewel software code, and fraudulently copied it. *Id.* ¶¶ 61-74. Nothing in this claim or the facts alleged in support of it can be characterized with a straight face as requiring the interpretation of the NDA. The mere fact that Telesocial disclosed some information about Call Friends under the NDA does not mean that the allegations about Orange's subsequent server hacking and theft of other information about Call Friends falls within the scope of the NDA.

The California state law claims for breach of contract, breach of the covenant of good faith and fair dealing, theft of trade secrets and unfair competition are all subject to the same analysis. All of these claims arise out of the facts underpinning the CFAA claim and ineluctably lead to the same disconnect with the NDA. If anything, they are even farther away from the NDA. The contract claims, for example, relate to violations of Telesocial's "Terms of Use," a separate, fully integrated agreement that governs access to and use of Telesocial's web application. *Id.* ¶¶ 83, 85-88. The only contract these claims relate to is wholly separate from the NDA, executed at a different time and for different reasons, and covering distinctively different subject matter. The NDA protected information disclosed in the course of business discussions; the "Terms of Use" govern the public's proper use of Telesocial's web application. These claims in no way relate to the NDA, or the rights and duties enumerated in it.

So too for trade secrets and unfair competition. Neither claim requires any reference to, let alone interpretation of, the NDA. Telesocial does not allege that Orange misused any information disclosed during the negotiations governed by the NDA. To the contrary, Telesocial affirmatively

5

states that the proprietary information that is the basis of the claims in the complaint was never disclosed to Orange and was intentionally withheld to protect Telesocial in the event a deal was not reached. *See, e.g. id.* ¶¶ 35, 107. As with the CFAA, these claims are premised on unauthorized access to Telesocial's trade secrets and other confidential information, not on improper use of information that Telesocial disclosed in reliance on the NDA.

All of Telesocial's claims here can and will be "adjudicated without analyzing whether the parties were in compliance with the [NDA]." *Manetti-Farrow*, 858 F.2d at 514. Consequently, they fall outside the scope of the forum clause. Orange's effort to avoid this conclusion with citations to proceedings in France is unavailing. Orange asks the Court to take judicial notice of applications for "pre-action disclosure of documents" and related court proceedings that Telesocial is pursuing in France. Dkt. No. 46 at 4. Even assuming purely for discussion that judicial notice would be proper, nothing in the French documents shows that the NDA forum selection clause applies to the complaint in this case. At best, these documents show that Telesocial is pursuing or at least investigating claims in France against Orange for breach of the NDA. *See e.g.* Dkt. No. 51-2 at 19 ("Orange, after having broken off the negotiations with Telesocial, used confidential information (access to Call Friends application, which Telesocial had only given for the purposes authorized by the confidentiality agreement, i.e. studying a partnership with Telesocial) for purposes other than those authorized by the confidentiality agreement.") As these documents indicate, Telesocial's claims in France are for Orange's alleged misuse of confidential information that was actually disclosed during the parties' discussions. That claim is perfectly appropriate for Telesocial to pursue in Paris under the NDA's forum selection clause because it clearly arises out of and relates to the NDA. But it is factually distinct from the claims raised in this Court. Orange also faults Telesocial for never mentioning the NDA in the complaint and purportedly concealing it from this Court. Dkt. No. 46 at 1. But Telesocial has elected to sue on information not disclosed under the NDA and so the absence of the agreement in the FAC is hardly noteworthy.

6

## CONCLUSION

The Court denies defendants' motion to dismiss. The case will proceed in the Northern District of California.

**IT IS SO ORDERED**.

Dated: April 28, 2015

_____
JAMES DONATO
United States District Judge