**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE ORANGE, S.A.; ANNE BENRIKHI; DIMITRI DELMAS; OLIVER GODINIAUX; GUILLAUME GUIMOND; FABRICE PETESCH; JACQUES VIEL; BARBARA BOBILLIER; BENOIT AMET; THOMAS LESENECHAL; FLORIAN DE SA; ANTOINE LECOUTTEUX, | No. 15-71668<br><br>D.C. No.<br>3:14-cv-03985-JD |
| ORANGE, S.A.; ANNE BENRIKHI; DIMITRI DELMAS; OLIVER GODINIAUX; GUILLAUME GUIMOND; FABRICE PETESCH; JACQUES VIEL; BARBARA BOBILLIER; BENOIT AMET; THOMAS LESENECHAL; FLORIAN DE SA; ANTOINE LECOUTTEUX,<br>                    *Petitioners*,<br><br>v.<br><br>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO,<br>                    *Respondent*,<br><br>TELESOCIAL, INC.,<br>                    *Real Party in Interest.* | OPINION |

Petition for Writ of Mandamus

Argued and Submitted
October 19, 2015—San Francisco, California

Filed April 8, 2016

Before: J. Clifford Wallace, Dorothy W. Nelson,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Wallace

---

## SUMMARY[*]

---

### Mandamus Relief

The panel denied a petition for a writ of mandamus, brought by Orange, S.A., and several of its employees, under 28 U.S.C. § 1651, asking this court to direct the district court to dismiss Telesocial, Inc.'s First Amended Complaint.

Orange and Telesocial executed a non-disclosure agreement ("NDA") concerning a custom software application named "Call Friends." Telesocial filed an action in the Northern District of California, alleging violations of the Computer Fraud and Abuse Act, and California state law claims. The district court denied Orange's motion to dismiss Telesocial's First Amended Complaint based on forum non conveniens.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In denying Orange's petition for writ of mandamus, the panel applied the factors in *Bauman v. United States*, 557 F.2d 650, 654 (9th Cir. 1977), and concluded that the district court did not commit clear legal error in determining that the NDA did not cover the claims at issue; Orange had the ability on direct appeal to attain the relief it desired; Orange would not be prejudiced in a way that was not correctable on appeal; and the district court's decision did not raise a novel issue that affected the international business community.

## COUNSEL

Daniel Schimmel (argued) and Anthony D. Mirenda, Foley Hoag, New York, New York; Michael H. Page, Durie Tangri, San Francisco, California, for Petitioners.

Benjamin L. Singer (argued) and Renee B. Bea, Colt Singer Bea, San Francisco, California; Matthew S. Warren and Patrick M. Shields, Warren Lex, San Francisco, California, for Respondent.

## OPINION

WALLACE, Senior Circuit Judge:

Orange, S.A. and several of its employees (collectively, Orange) ask this court to issue a writ of mandamus under 28 U.S.C. § 1651 directing the district court to (1) vacate its order denying Orange's motion to dismiss and (2) direct an entry of judgment dismissing Telesocial, Inc.'s (Telesocial) First Amended Complaint (FAC). We have jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and

4                   IN RE ORANGE, S.A.

decline to issue the writ. Under 28 U.S.C. § 1291, we have
"jurisdiction of appeals from all final decisions of the district
courts." *Special Investments, Inc. v. Aero Air, Inc.*, 360 F.3d
989, 993 (9th Cir. 2004). A district court's decision is
appealable under section 1291 only when the decision ends
the litigation on the merits and leaves nothing for the court to
do but execute the judgment. *Confederated Salish v.
Simonich*, 29 F.3d 1398, 1401 (9th Cir. 1994) (internal
quotation and citation omitted). A district court order
denying a motion to dismiss for forum non conveniens is not
a final decision for purposes of section 1291. *Van
Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).
Nevertheless, under the All Writs Act, if we would have the
power to entertain appeals at some stage of the proceedings,
we have the power to issue writs of mandamus in the case.
*United States v. Harper*, 729 F.2d 1216, 1221 (9th Cir. 1984).

I.

Telesocial is a San Francisco start-up, formed in 2008, to
solve a unique telecommunications problem: how to enable
telephone calls between users of social media without the
need for telephone numbers. To remedy the problem,
Telesocial created a custom software application (app) named
"Call Friends," which allows users of social networks (such
as Facebook) to place carrier-based phone calls directly to
other users.

Orange, a French telecommunications provider,
approached Telesocial in February 2012 about a possible
agreement to acquire the app. Over the next several months,
Telesocial demonstrated its software and arranged for Orange
staff to test the product. To test the product, Telesocial
allowed Orange personnel in the United States to download

and use the demonstration app without restriction. Because Telesocial had to pay for its users' international calls, it required overseas users to insert a password. On April 18, 2012, Telesocial provided Orange with the password—"CALLFRIENDS"—and confirmed that Orange had overseas access to test the app.

Shortly after, on April 25, 2012, Orange and Telesocial executed a non-disclosure agreement (NDA). The NDA specifies that the "[p]arties desire to have certain business discussions with regards to a possible contractual relationship" and that they "wish to reciprocally protect and safeguard any information they may disclose to each other during their [d]iscussions, and intend to hold such disclosures in confidence." The NDA protected all "confidential information," which it defined as all non-public information that either party disclosed during the discussions, from being disclosed to third parties, used for purposes beyond the discussions, or otherwise distributed. The NDA excluded some confidential information from its scope, including information which "is already known or is in the possession of the receiving Party at the time it is disclosed . . . ."

The final page of the NDA included a forum selection clause, which stated:

> This Agreement shall be governed by and construed in accordance with French law. Any and all dispute, controversy, claim or question arising out of or relating to the Agreement including the validity, binding effect, interpretation, performance or non performance thereof shall first be submitted to the respective authorized management of the

Parties for discussion in good faith and amicable resolution. In the event the Parties cannot resolve such dispute on an amicable basis within (30) thirty days after the beginning of such discussion and after making their best efforts to do so, then the Parties hereto irrevocably consent that the matter shall be submitted to the Court of Paris (France).

For the next two months, Telesocial continued to demonstrate its app to Orange. While Telesocial was responsive to Orange's information requests, Telesocial asserts that it never disclosed how it implemented its technology, electing to keep that proprietary information confidential until Orange and Telesocial executed a partnership agreement. On July 4, 2012, Orange told Telesocial that it was going to offer Telesocial a Production Contract to seal a development deal between the parties.

Shortly after, on July 31, 2012, Orange abruptly terminated negotiations, telling Telesocial that its price of about one million U.S. dollars was a "no go." Instead of purchasing the app from Telesocial, Orange elected to create the technology itself. Telesocial alleges that at this point, Orange, unsuccessful in replicating the technology and under pressure to create its own social calling software, made a drastic decision: instead of continuing its attempts to create the technology, Orange would instead steal it from Telesocial. Beginning on August 31, 2012, Orange repeatedly used fictitious names and a variety of telephone numbers to access Telesocial's application. By using the fictitious names, Orange was able to make dozens of unauthorized telephone calls and execute certain functions to obtain information

about how the Teleoscial platform operated. Telesocial further alleges that Orange hacked into its Emeryville computer servers to access proprietary information about the software.

After months of probing, on November 21, 2012, Orange announced that it had created a product called "Party Call." Telesocial immediately responded with a cease-and-desist letter, warning Orange not to proceed with the roll out of the stolen product. The media found out about the letter, and the magazine TechCrunch published an article about Telesocial's allegations against Orange. *See* Ingrid Lunden, *Startup Claims That Party Call, France Telecom's Facebook Calling App, Was Its Idea*, TechCrunch.com (Dec. 2, 2012), http://archive.is/LqHFs.

Orange, apparently frustrated by the allegations in the article, responded by suing Telesocial in the Tribunal de Commerce of Paris (Tribunal) on March 5, 2013, asserting that Telesocial had disparaged Orange and breached the NDA. The Tribunal dismissed all of Orange's claims, and the Paris Court of Appeals affirmed the dismissal on April 29, 2014.

After Orange sued Telesocial, Telesocial began to explore whether it should file a lawsuit of its own. On June 4, 2013, Telesocial applied to the Tribunal for *ex parte* pre-action document collection, a French procedure for obtaining discovery without filing suit. In its application for document production, Telesocial identified two possible claims: (1) breach of the NDA and (2) "brutal interruption of negotiations." The Tribunal granted Telesocial's application, and the French authorities seized the requested documents from Orange. On appeal, the Paris Court of Appeals revoked

the seizure order on the grounds that Telesocial's application failed to establish "due cause" for an ex parte seizure. Telesocial elected not to pursue further its claim regarding the NDA.

Telesocial subsequently filed an action in the Northern District of California, alleging violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, California state law claims for breach of contract for violating Telesocial's "Terms of Use," breach of the covenant of good faith and fair dealing, theft of trade secrets, and unfair competition. Telesocial's initial complaint stated that Telesocial provided Orange with the "CALLFRIENDS" password "solely for the purposes of evaluating the Telesocial application as part of the negotiations." Telesocial later amended its complaint, and removed the statements surrounding the "CALLFRIENDS" password from the First Amended Complaint (FAC).

Orange moved to dismiss Telesocial's First Amended Complaint for forum non conveniens. The district court denied the motion, and this petition followed.

## II.

Our standard of review of the challenged district court order is limited and "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Bauman v. United States*, 557 F.2d 650, 654 (9th Cir. 1977), *quoting Will v. United States*, 389 U.S. 90, 95 (1967). To secure issuance of the writ of mandamus, a petitioner must show a "clear and indisputable" right to it. *Confederated Salish*, 29 F.3d at 1404. (internal quotations and citations omitted).

In *Bauman*, we consolidated our prior mandamus jurisprudence to focus on five factors which govern the decision whether to grant a writ of mandamus:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

557 F.2d at 654–55 (citations omitted). The five factors "often raise questions of degree" and proper disposition requires "a balancing of conflicting indicators." *Id.* at 655. "No single factor is determinative and all five factors need not be satisfied at once." *Confederated Salish*, 29 F.3d at 1404.

Our court determines *de novo* whether the writ should issue. *Valenzuela-Gonzalez v. U.S. Dist. Ct.*, 915 F.2d 1276, 1279 (9th Cir. 1990), *citing Seattle Times v. U.S. Dist. Ct.*, 845 F.2d 1513, 1515 (9th Cir. 1988). "Before the writ may issue, we must be 'firmly convinced that the district court has erred,' and that petitioner's right to the writ is 'clear and indisputable.'" *Id.*, *quoting Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976) (internal citation omitted).

Orange petitions this court for a writ of mandamus ordering the district court to dismiss the case on the grounds

of forum non conveniens. Orange asserts that the district court clearly erred in determining that Telesocial's claims were not subject to the forum selection clause in the NDA. Orange further argues that mandamus is warranted because it has no viable alternative to attain relief; it will suffer significant harm and prejudice that is not correctable on appeal; and the district court order raises issues that are critical to the international business community. We will now analyze these arguments.

Orange first asserts that the district court clearly erred in its order denying the motion to dismiss for forum non conveniens because it refused to dismiss the case even though a valid forum selection clause was present in the NDA. Orange argues that the district court artificially narrowed the scope of the forum selection clause, thereby promulgating a rule that promotes "artful pleading" and forum-shopping.

Whether Telesocial's claims are subject to the NDA is crucial to the forum non conveniens analysis. In *Atlantic Marine Const. Co. v. U.S. Dist. Ct.*, 134 S. Ct. 568 (2013), the Supreme Court redefined the forum non conveniens analysis when a valid forum selection clause is present. Because a valid forum selection clause is bargained for by the parties and embodies their expectations as to where disputes will be resolved, it should be "given controlling weight in all but the most exceptional cases." *Id*. at 581 (internal quotation marks omitted).

The presence of a forum selection clause requires the court to adjust the forum non conveniens analysis in three ways: (1) "the plaintiff's choice of forum merits no weight," *id*. at 581; (2) the court "should not consider arguments about the parties' private interests," *id*. at 582; and (3) a "transfer of

venue will not carry with it the original venue's choice of law rules." *Id.*

The success of Orange's forum non conveniens argument hinges on whether the NDA forum selection clause applies to Telesocial's claims in the FAC. The NDA contained the following forum selection provision: "Any and all dispute, controversy, claim or question arising out of or relating to the Agreement…shall be submitted to the Court of Paris (France)."

But Telesocial did not sue Orange in the Northern District of California for breach of the NDA, or for disclosures that were made pursuant to the covered negotiations. Rather, Telesocial brought claims for violations of the CFAA, California state law claims for breach of contract for violating Telesocial's "Terms of Use," breach of the covenant of good faith and fair dealing, theft of trade secrets, and unfair competition.

The district court concluded that the claims were so factually distinct from the NDA that the forum selection clause could not apply. Telesocial's CFAA, theft of trade secrets, and unfair competition claims are predicated on Orange's using fictitious names to use Telesocial's app and hacking into Telesocial's servers after Orange ceased the "discussions" at the center of the NDA. Telesocial's contract claims, moreover, stem from a breach of Telesocial's "Terms of Use" agreement. Nothing in the claims required the district court to interpret, let alone reference, the NDA to issue a ruling on Telesocial's claims.

Orange contends that the district court erroneously narrowed the forum selection clause's broad language.

Orange argues that the district court's citation to *Manetti-Farrow, Inc. v. Gucci America Inc*., 858 F.2d 509, 514 (9th Cir. 1988), which addressed the scope of a forum selection clause that applied to any disputes "'regarding interpretation or fulfillment' of the contract," demonstrates that it ignored the reach of a forum selection clause that applies to claims "relating to" a contract. In *Manetti*, we stated that whether Manetti's tort claims were subject to the forum selection clause "depend[ed] on whether resolution of the claims relat[ed] to interpretation of the contract." *Id*. at 514. The district court applied that standard in its own analysis, concluding not only that Telesocial's claims did not require analyzing the NDA to decide them, but also bore no relation to the NDA.

Orange also relies heavily on *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716 (9th Cir. 1999) to show that the NDA's forum selection clause is further reaching than the district court decided. In *Simula*, we were tasked with determining whether an arbitration clause that covered "[a]ll disputes arising in connection with [the] Agreement" extended to allegations that included antitrust violations, misappropriation of trade secrets, and defamation. *Id*. at 720 (emphasis omitted). *Simula* held that the "language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id*. at 721. Orange argues that *Simula*'s holding dictates that every claim that touches an agreement with a forum selection clause is automatically covered by that clause.

*Simula* is distinct from the present case. The fact that the forum selection clause in *Simula* was an arbitration provision weighed heavily in our analysis. We stated that "all doubts

are to be resolved in favor of arbitrability," and, as a result, the plaintiff's claims "need only 'touch matters' covered by the contract." *Id*. Here, we do not interpret an arbitration clause, and, accordingly, do not apply the strong presumption that prompted us in *Simula* to construe broadly the scope of the arbitration clause.

Moreover, regardless of the interpretative distinctions between arbitration clauses and forum selection clauses, the district court's reasoning in this case is in line with the analysis in *Simula*. In *Simula*, we analyzed each of the tort claims, and considered whether the tort claim required us to interpret the underlying contract. *Id*. at 721–25. The district court applied the same considerations here: it looked at Telesocial's tort claims and determined if there was anything factually within the claims that required it to interpret the NDA. Unlike the facts underpinning the tort claims in *Simula*, the relevant facts in this case did not involve the parties' agreement. Orange fails to show how the district court's conclusion is legal error.

Orange also pursues the alternative theory that Telesocial engaged in "artful pleading" to mislead the district court. Orange attempts to tie the NDA to Telesocial's claims by arguing that it was able to access servers due to the "CALLFRIENDS" password that Telesocial provided during negotiations. It contends that Telesocial excluded the fact that it gave Orange a password to access its computer servers in its FAC in an attempt to mislead the court into concluding that the NDA does not cover its claims. Although these arguments might present an argument on appeal from final judgment, the district court's conclusion that Telesocial's claims were unrelated to the NDA was not so clearly

erroneous that Orange's right to a writ of mandamus is "clear and indisputable." *Bauman*, 557 F.2d at 662.

Orange's contention that the district court's ruling is erroneous because it promotes forum shopping lacks merit. According to Telesocial, the reason that there was ongoing litigation in France in the first instance was because Orange, not Telesocial, initiated suit there. After Orange sued Telesocial, Telesocial applied to the Tribunal for ex parte pre-action document collection, and Telesocial ultimately elected not to pursue its claims further, even though it had the right to do so. That Orange may have to litigate a breach of the NDA in France and tort claims in the United States is not a reflection that the district court erred; it is a reflection of Orange's extensive conduct that brought about the claims.

In sum, it is far from clear that the district court committed an act that amounts to a "judicial usurpation of power" or that Orange has shown a "clear and indisputable" right to the writ as required by *Bauman*. As a result, this factor does not weigh in favor of granting the writ of mandamus.

III.

Orange asserts that mandamus is also warranted because it lacks any viable alternative to attain relief; it will suffer significant harm and prejudice that is not correctable on appeal; and the district court order raises issues that are critical to the international business community.

Orange contends it has no viable alternative to obtain relief because direct appeal is not available from the district court's denial of its motion to dismiss. *Varsic v. U.S. Dist.*

*Ct.*, 607 F.2d 245, 251 (9th Cir. 1979) (denial of motion to dismiss is not appealable final order). Orange is correct that the possibility of certification, standing alone, is not a bar to mandamus relief. *Cole v. U.S. Dist. Ct.*, 366 F.3d 813, 817 n. 4 (9th Cir. 2004), *citing Executive Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1550 (9th Cir. 1994). But Orange presents no argument as to why it will not be able to contest the district court's decision to deny dismissal for forum non conveniens after entry of final judgment. This is crucial as the "foremost 'prerequisite[ ]' to invoking statutory mandamus authority is that the party seeking issuance of the writ 'have no other adequate means to attain the relief he desires.'" *In re U.S.*, 791 F.3d 945, 966 (9th Cir. 2015) (Wallace, J., concurring), *quoting Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004). This condition is "designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380–81.

While Orange may incur litigation expenses in the interim, that reason alone is insufficient to conclude that, absent a writ of mandamus, it has no adequate means of obtaining relief. Our court has concluded that litigation costs are a factor weighing in favor of mandamus relief only in the most extreme circumstances. *See, e.g.*, *Varsic*, 607 F.2d at 251–52 (holding that mandamus relief was warranted as severe prejudice would occur due to the peculiar hardship of the plaintiff, who lived on social security benefits and brought an action to secure pension benefits, having to travel across the country as a result of an erroneous forum transfer). Our court has consistently rejected the "position that the costs of trying massive civil actions render review after final judgment inadequate." *In re Cement Antitrust Litigation*, 688 F.2d 1297, 1303 (9th Cir. 1982), *quoting In re Sugar Antitrust Litigation*, 559 F.2d 481, 484 (9th Cir. 1977); *see*

*also Washington Public Utils. Grp. v. U.S. Dist. Ct.*, 843 F.2d 319, 325 (9th Cir. 1987).

To support its position, Orange relies on *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 953 (9th Cir. 1968) (stating that irremediable harm can result from "an expensive and protracted trial that leads to nowhere" when a district court improperly denies motion to transfer). Orange ignores that our court expressly limited *Pacific Car*'s broad language suggesting that appellate courts will liberally review forum non conveniens challenges through mandamus petitions. *See, e.g.*, *Am. Fidelity Fire Ins. Co. v. U.S. Dist. Ct.*, 538 F.2d 1371, 1375 n.2 (9th Cir. 1976). This limitation serves an important function: if appellate courts were to issue writs of mandamus routinely after denial of a motion to dismiss for forum non conveniens, they would be allowing non-statutory rights of interlocutory appeal. *See Kasey v. Molybdenum Corp. of America*, 408 F.2d 16, 19 (9th Cir. 1969).

Orange therefore fails to show that it will suffer prejudice that is not correctable on appeal. On appeal, Orange can contest the district court's denial of its motion to dismiss for forum non conveniens. If our court, at that time, concludes that the district court abused its discretion in denying the motion, the only thing that Orange will have incurred is the normal burden of time and expense spent on litigation.

Orange contends that its petition presents important problems for the international business community because of the uncertainty that the district court's decision injects into the interpretation of forum selection clauses. Orange's argument misconstrues the extent of the district court's opinion. Orange primarily contends that the district court's decision will affect international arbitrations. Arbitration

clauses are, however, distinct from the simple forum selection clause at issue here as arbitration clauses are construed liberally in favor arbitration. *See, e.g.*, *Simula* 175 F.3d at 720. The district court's decision, moreover, is limited to its fact-specific nature: Orange's motion to dismiss for forum non conveniens was denied based on the district court's reasoned conclusion that the forum selection clause at issue was unrelated to Telesocial's claims.

## IV. Conclusion

Thus, in applying the *Bauman* factors, we conclude that the district court did not commit clear legal error in determining that the NDA did not cover the claims at issue; Orange has the ability on direct appeal to attain the relief it desires; Orange will not be prejudiced in a way that is not correctable on appeal; and the district court's decision does not raise a novel issue that affects the international business community. Accordingly, we deny Orange's petition for writ of mandamus.

**DENIED**.