# EXHIBIT 3
# Foster Declaration

International Small Business Journal
Copyright © 2004
SAGE Publications (London,
Thousand Oaks and New Delhi)
[DOI: 10.1177/0266242604042377]
Vol 22(3): 227–248



# What do Investors Look for in a Business Plan?

*A Comparison of the Investment Criteria of Bankers, Venture Capitalists and Business Angels*

COLIN MASON
*University of Strathclyde, UK*

MATTHEW STARK
*Tenon Limited, UK*

Most potential funders wish to see a business plan as a first step in deciding whether or not to invest. However, much of the literature on how to write a business plan fails to emphasize that different types of funder look at business plans from different perspectives. Using a real time methodology this article highlights the different investment criteria of bankers, venture capital fund managers and business angels. Bankers stress the financial aspects of the proposal and give little emphasis to market, entrepreneur or other issues. As equity investors, venture capital fund managers and business angels have a very different approach, emphasizing both market and finance issues. Business angels give more emphasis than venture capital fund managers to the entrepreneur and 'investor fit' considerations. The implication for entrepreneurs is that they must customize their business plan according to whether they are seeking funding from a bank, venture capital fund or business angel.

KEYWORDS: banks; business angels; business plans; small business; venture capital

## Introduction

As Barrow et al. (2001: 6) note, 'perhaps the most important step in launching any new venture or expanding an existing one is the construction of a business plan.' Although a business plan has several purposes and target audiences, most are produced in order to raise finance. Kuratko and Hodgetts (2001: 289) suggest that 'the business plan is the minimum document required by any financial source.' For example, more than three-quarters of business angels require a business plan before they will consider investing (Mason and Harrison, 1996a).

The business plan is therefore the first – and possibly only – substantial contact that a potential funder has with the entrepreneur (Shepherd and Douglas, 1999). So, as Barrow et al. (2001: 11) note, 'the business plan is the ticket of admission giving the entrepreneur his [*sic*] first and often only chance to impress prospective sources of finance with the quality of the proposal.' The decision by the prospective funder whether to proceed beyond the initial reading of the business plan to consider the proposal in more detail will therefore depend on the quality of the business plan used to support the funding proposal.

Entrepreneurs have recourse to a large literature that describes the format and structure of a business plan. However, much of this literature can be criticized for either failing to draw the attention of readers to the different ways in which bankers and venture capitalists interrogate business plans, the different questions that they ask and the different types of information that they look for, or else for not drawing out the implications of these differences for their readership.

The fundamental criticism of much of the literature on 'how to' write a business plan is that it adopts a 'one size fits all' approach. For example, having noted that the audience for a business plan might include suppliers, distributors, major customers, the board of directors, outside consultants, banks and investors, Tiffany and Peterson (1997: 12) go on to say that '. . . a well-written plan satisfies *all these groups* . . .' (emphasis added). Even *The Sunday Times Business Plan Workbook* (Barrow et al., 2001), one of the most successful UK books on how to write a business plan, barely acknowledges that bankers and venture capitalists have different perspectives on the business plan.

Some of this 'how to' literature is written from the perspective of one type of audience – usually an equity investor (e.g. Looser and Schläpfer, 2001; Shepherd and Douglas, 1999; Timmons, 1999). The criticism of this literature is that it generally does not acknowledge that other types of funder (such as bankers) may have different expectations concerning the style and content of business plans.

Only a small minority of authors explicitly recognize that different audiences look at the business plan from different perspectives (e.g. Allen, 1999; Burns, 2001; Kuratko and Hodgetts, 2001; Smith and Smith, 2000; Vesper, 1996). For example, Vesper (1996: 241) observes that 'to some degree all . . . audiences will care about central issues such as viability, potential profit, downside risk, likely life cycle time and potential areas for dispute and for improvement. Beyond that, however, different audiences will care about different details.' Specifically, these authors emphasize that bankers and equity investors (venture capitalists and business angels) 'have very different requirements' (Kirby, 2002: 236). The criticism of these works is that they mostly fail to draw out the implications of these differences for the entrepreneur, and have nothing to say about how entrepreneurs should differentiate their business plan to suit the different needs and requirements of bankers and equity investors.

Using a 'real time' methodology, the objective of this article is to highlight the different ways in which bankers, venture capital fund managers (VCFMs) and business angels (BAs) evaluate business plans, the questions that they ask, the information which they take into account in making a funding decision and their investment criteria. The findings provide entrepreneurs with much clearer

guidance on how to customize their business plan according to the type of funder that they propose to approach.

## Literature Review

### *The Banker's Lending Decision*

Bankers face a situation of information asymmetry when assessing lending applications (Binks and Ennew, 1996, 1997). New businesses are the most informationally opaque on account of their lack of track record (Berger and Udell, 1998). The information required to assess the competence and commitment of the entrepreneur and the prospects for the business is either unavailable, uneconomic to obtain or difficult to interpret. This creates two types of risk for the banker (Parker, 2002). First, there is a risk of adverse selection – lending to businesses which subsequently fail (type one error) – or not lending to businesses which go on to become successful, or have the potential to do so (type two error). The low margins on small business lending encourage bankers to strive to minimize type one errors.[1] Second, there is the risk of moral hazard. This arises from the inability of banks to monitor entrepreneurs once a loan has been made to ensure that they do not switch to riskier projects that would enrich them at the expense of the bank, or reduce their effort. The consequence is that bankers default to a capital gearing approach to lending (Binks and Ennew, 1996) in which their lending decisions will emphasize financial considerations – margins, cash flow forecasts, gearing ratios, asset management ratios and financial controls (Burns, 2001) – and, in particular, the availability of collateral, rather than a full evaluation of the proposed project. Storey (1994: 149) notes that 'overall, bank lending is only weakly related to the personal characteristics of new firm founders.' Avery et al. (1998: 1058) note that in the USA 'loans with personal commitments comprise a majority of small business loans measured in numbers or dollar amounts.' Taking collateral as security – which in the case of new businesses will be in the form of personal guarantees or personal collateral – is attractive to bankers for two reasons. First, the willingness to offer collateral signals the confidence of an entrepreneur in both his/her own abilities and also in the likely success of the project. Second, taking collateral is thought to align the interests of the entrepreneur with that of the banker. It therefore addresses both the adverse selection problem at loan origination and the moral hazard problem after the loan has been granted (Berger and Udell, 1998).

The capital gearing approach of bankers to lending decisions is highlighted in a detailed study of banks and small businesses in Canada. Wynant and Hatch (1991: 132) concluded from interviews with bank managers that 'the primary focus in a bank's decision of a loan request is the degree of risk that the loan represents for the bank . . . Two considerations are key in evaluating a firm's riskiness: the company's ability to generate sufficient cash flow to service the bank loan and the presence of collateral security to ensure that the bank can recover its funds from the liquidation of the business and/or personal assets if the business fails.' They go on to report that 'most bankers claim that adequate collateral backing is a necessary condition for any loan: once the account manager is

satisfied that reasonable collateral is available, the evaluation of risks [then] focuses on the company's cash flow' (Wynant and Hatch, 1991: 132–3). The importance of collateral is further emphasized by Wynant and Hatch (1991) in their analysis of credit files (the top item, present in 97.7% of files examined) and reasons for formal and informal loan declines, with half of the loan applications rejected because collateral is insufficient or unsuitable. Indeed, the reasons given for rejecting loans were overwhelmingly finance-related. In only 18 per cent of cases was inadequate management cited as the reason.

The capital gearing approach of bankers to lending decisions is further demonstrated by Deakins and Hussain (1994) in a study in the West Midlands region of England that involved obtaining the reaction of 30 bankers to a proposal from a start-up business that was seeking funding. The assessment of the bankers was dominated by financial considerations whereas management capability was largely discounted. Moreover, those bankers who said that they would offer a loan would only do so if collateral was available. A replication of this study in Scotland by Fletcher (1995) using the same proposal confirmed the dominance of financial information and criteria in bankers' lending decisions.[2]

This leads to the following hypothesis:

H1: bankers' funding decisions will be dominated by financial considerations and they will give little consideration to entrepreneurial capabilities or the characteristics of the opportunity.

### *The Venture Capital Fund Manager's Investment Decision*

VCFMs and BAs also encounter information asymmetry problems when evaluating investment opportunities. However, as equity providers, they might be expected to adopt very different approaches to their funding decision. VCFMs and BAs are investing for capital gain and, in contrast to the banker, they share in the success of the businesses that they invest in. Unlike the banker, their investment is also fully exposed in the event that the business fails. A further risk is that their investment will be illiquid if the business does not achieve significant growth. Accordingly, VCFMs and BAs might be expected to place greatest emphasis on the capability of the management team, the product/service and the market.

The most consistent finding from studies of VCFM decision-making is the importance that is placed on the ability of management. This includes management skill, quality of management, characteristics of the management team and the management team's track record. Other criteria which VCFMs report that they take into account when assessing a new venture proposal are the characteristics of the market/industry, environmental threats to the business, the level of competition and the degree of product differentiation (Shepherd and Zacharakis, 1999). For example, MacMillan et al. (1985) conclude that the quality of the entrepreneur ultimately determines the investment decision, notably a thorough familiarity with the industry/market, leadership capability and the ability to evaluate and handle risks. Muzyka et al. (1996) also conclude that management team considerations dominate the investment decision. However, other studies –

while confirming the importance of the entrepreneurial team – suggest that other factors are also significant in the VCFM's investment decision, notably product characteristics (proprietary features, competitive advantage, potential to achieve strong market position), market characteristics (significant growth, limited competition) and returns (potential for high returns, clear exit opportunity) (Fried and Hisrich, 1994; Manigart et al., 1997; Sweeting, 1991). Indeed, while not underrating the crucial importance of having a competent management team in place, Sweeting (1991: 619) nevertheless suggests that VCFMs may be prepared to invest in situations where weaknesses in management were recognized but the business concept was otherwise sound: 'this was associated with venture capitalists who tended to be proactive in their style and had a belief that they could attract good managers to the businesses in which they chose to invest.' There is also agreement in the literature that the financial aspects of the proposal are generally of limited importance at the initial screening stage, but assume importance at the second stage in the decision-making process (Fried and Hisrich, 1994; Manigart et al., 1997).

This leads to the following hypothesis:

H2: VCFMs will also be concerned with financial issues but in addition will give considerable emphasis to the entrepreneurial team and market characteristics.

### The Business Angel's Investment Decision

BAs might be expected to adopt an approach to investment decision-making that is similar, although not identical, to that of VCFMs. There are several aspects where differences might be expected to arise. First, Fiet (1995a,b) suggests that VCFMs will be more concerned with market risk – risk that is due to unforeseen competitive conditions affecting the size, growth and accessibility to the market – whereas BAs will be more concerned with agency risk – risk that is caused by the separate and possibly divergent interests of entrepreneurs (agents) and investors (principals). These differences are related to the types of risk that BAs and VCFMs believe they are most competent to control. Venture capital fund managers have learned how to protect themselves from agency risk by using stringent boilerplate contractual provisions that allow them to replace an entrepreneur who underperforms, is guilty of misconduct or is found to be incompetent. However, market risk is less controllable through *ex post* contracting. Business angels, in contrast, attach more importance to agency risk. There are four reasons for this:

- Most angels have limited deal flow and therefore lack comparative data to evaluate market risk.
- Angels do not have the same level of resources as venture capital funds to both collect and analyse (costly) market-related information (Fiet, 1995b). Van Osnabrugge (2000) confirms that venture capital fund managers conduct significantly more due diligence than business angels.
- The contracts between angels and entrepreneurs tend to be simple and informal, making it harder for them to enforce sanctions.

- Many business angels have prior industry experience themselves and there-fore feel quite capable of assessing the market risks and so view the entre-preneur as the most potentially damaging contingency (Fiet, 1995a).

The implication, according to Van Osnabrugge (2000), is that VCFMs will seek to reduce their risks at the pre-investment stage by means of careful screening, due diligence and contracting. BAs, in contrast, will place greater emphasis on *ex post* investment involvement as a means of reducing risk. In terms of invest-ment decision-making, Fiet (1995b: 557) suggests that ' . . . business angels may rely on the entrepreneur to evaluate market risk for them . . . [This] would allow a business angel to specialise in evaluating whether or not the entrepreneur understands the deal and whether or not the entrepreneur can be relied upon as a venture manager, even if they as investors do not have enough market infor-mation to understand it completely. That is, business angels can specialise in evaluating agency risk while relying upon the entrepreneur to manage market risk.'

The limited empirical evidence available on how BAs make their investment decisions provides mixed support for this argument. Based on evidence from focus groups with BAs, Haines et al. (2003: 30) conclude that the people in the project is the most critical factor in a BA's decision to invest: 'many investors said that they would be spending considerable time with these people so it is import-ant that the people be the right ones for the job and be individuals with whom the investors would like to spend some time.' Thus, they look for people who are honest, exhibit a strong work ethic, understand what it takes to make the business succeed, have invested in their business, and have a realistic notion of how to value the business. In contrast, their earlier study (Feeney et al., 1999) found that BAs consider *both* the attributes of the business and the attributes of the entre-preneurs when deciding to invest in a proposal. They note that investors' percep-tions of poor management is the primary deal killer. However, management ability, although important, is not the primary factor that attracts investors to a deal. Rather, investors place greatest emphasis on the growth potential of the opportunity and the entrepreneur(s)' capability to realize that potential. Mason and Rogers (1996, 1997) have also found that BAs give greater emphasis to market considerations than to the entrepreneur at the initial screening stage. Mason and Harrison's (1996b) exploration of deals that were rejected by an investment syndicate found that market-related issues were the most significant-deal killer, followed by entrepreneur-related considerations in second place.

A second difference is that although VCFMs and BAs both emphasize the importance of the entrepreneur/entrepreneurial team, they stress different aspects (Van Osnabrugge and Robinson, 2000). In particular, because BAs are looking to take a more hands-on role in their investee businesses than are VCFMs, they place greater importance on the 'chemistry' between themselves and the entrepreneur. This also means that BAs are less deterred by gaps in the management team because they can contribute missing expertise through their own involvement. Indeed, as noted above, the opportunity for involvement in the entrepreneurial process is one of the motivations of BAs. VCFMs, in contrast,

regard the need for hands-on involvement as a cost. Thus, the opportunity to contribute is an important consideration for BAs, both because it is part of the 'return' that they look for, and also because they think that their involvement can contribute to the success of their investee businesses. Indeed, in the Haines et al. (2003) study the non-financial value that a BA can bring to a project is the third most important factor in the decision to invest (after the people and market potential for the product/service).

A third difference between VCFMs and BAs is that VCFMs will be expected to give greater emphasis to financial returns. VCFMs are returns-driven. Their primary objective is to deliver high returns to the outside investors (limited partners) whose funds they manage. BAs, on the other hand, are investing their own money, and although capital gain is their dominant motivation, other considerations include satisfaction and enjoyment from playing a role in the entrepreneurial process, 'hot buttons' and, in some cases, altruism (Mason and Harrison, 1994, 2002; Van Osnabrugge and Robinson, 2000; Wetzel, 1981). These differences in the investment motivations of VCFMs and BAs will also be reflected in the emphasis that they give to growth potential, with VCFMs placing greater emphasis on investing in businesses with the potential to become significant global players.

A fourth difference is that there is some evidence to suggest that VCFMs will place more emphasis on the financials and specifically are more likely to make returns calculations (Dixon, 1991; Wright and Robbie, 1996). BAs are less likely to perform such calculations and place less weight on financial projections, giving greater emphasis to subjective factors and gut instinct (Van Osnabrugge and Robinson, 2000). Indeed, some business angels are fairly cynical about the value of financial projections, especially for new and recently started businesses (Mason and Rogers, 1997).

Finally, Van Osnabrugge and Robinson (2000) suggest that VCFMs will have a narrower investment focus than BAs. Certainly many venture capital funds specialize in particular industry sectors. This is a means of coping with information asymmetries. Specialist industry knowledge allows VCFMs to be better able to evaluate the viability of investment proposals and thereby reduce their risk. Hall and Hofer (1993) note that an important reason why VCFMs reject proposals at the initial screening stage is because they do not fit the fund's investment preferences. This contrasts with BAs who, according to Van Osnabrugge and Robinson (2000: 149), are quite open-minded about the industry sector: 'their main requirement appears to be that they understand the generic business, rather than the sector. This understanding allows them to assess how they might add their own general business knowledge and experience to the firm.' However, there is also some evidence to the contrary. From a VCFM perspective, Muzyka et al. (1996) suggest that deals which offer a good management team and reasonable financial and product-market characteristics will override fund investment requirements. And from a business angel perspective, both Mason and Rogers (1997) and Mason and Harrison (2002) suggest that most investors do have clearly defined investment criteria which influence the type of businesses that they will consider investing in, although these criteria may be relaxed in certain

circumstances, notably where the entrepreneur/management team has high credibility. These criteria include stage of business development, industry, technology and location. Mason and Rogers (1996, 1997) argue that these investment criteria are generally related to what BAs understand as a result of their business experience. Although there are exceptions, the approach of the majority of business angels to minimizing risk is to have a limited investment focus in order to leverage their experience and knowledge both to evaluate opportunities and to add value to those opportunities that they invest in.

This discussion suggests that bankers, VCFMs and BAs will analyse funding proposals in different ways. Specifically we propose the following hypotheses:

H3a: The approach of BAs will be closer to that of VCFMs than to bankers because they are both investing for capital gain.

However:

H3b: BAs will place greater emphasis than VCFMs on the entrepreneur/ entrepreneurial team.

H3c: BAs will give greater emphasis to the 'fit' of the business to their own personal investment criteria.

H3d: BAs will give consideration to the opportunity for involvement in the investee business.

## Methodology

The methodology used in this study is verbal protocol analysis, a technique which involves respondents 'thinking out loud' as they perform a particular task, in this case reviewing a potential funding opportunity. The technique has been used successfully to examine the decision-making process of venture capitalists (Hall and Hofer, 1993; Zacharakis and Meyer, 1995) and business angels (Mason and Rogers, 1996, 1997) and has also been applied in a variety of other contexts (see Ericsson and Simon, 1993). The verbalizations of respondents are tape-recorded, transcribed and then content analysed by means of a coding scheme devised for the specific research questions.

This methodology provides a more reliable and much richer understanding of the decision-making process of funders and the criteria used to evaluate funding opportunities than is possible from approaches that use questionnaires, surveys and interviews to collect data on the self-reported decisions of VCFMs made in the past (Shepherd and Zacharakis, 1999). Self-reported, retrospective data are subject to conscious or unconscious errors associated with post hoc rationalization and recall bias. There are also cognitive perceptual limitations, with evidence that VCFMs have limited insights into their decision processes (Zacharakis and Meyer, 1998; Shepherd, 1999). The consequence is that they often overstate the number of criteria actually used, understate the most important criteria and overstate the least important criteria (Shepherd and Zacharakis, 1999). Hence, as Zacharakis and Meyer (1998: 72) note, 'past studies provide a laundry list of factors that may be biased in that they list a multitude of factors

that have a relatively small influence on the decision.' As a real-time experiment that does not require VCFMs to introspect about their thought processes, verbal protocol analysis sidesteps these recall, post hoc rationalization and cognitive biases (Shepherd and Zacharakis, 1999).

Moreover, the funding decision is a multi-stage process (Feeney et al., 1999; Haines et al., 2003) involving at least three distinct stages: initial screening, detailed investigation and negotiation, and deal crafting. Although the same considerations may be present at each stage their relative importance changes during the course of the decision-making process (Riding et al., 1993). A further limitation of questionnaire and interview surveys of decision-making is that they do not differentiate between these different stages in the decision-making process and as a consequence may produce misleading findings. Two real-time studies of the investment decision-making of VCFMs which focused on the initial screening stage suggest that, in contrast to the generalized studies reviewed earlier, the entrepreneur is not the primary determinant, except where they are at one or other end of the distribution (i.e. either very competent or very incompetent) (Hall and Hofer, 1993; Zacharakis and Meyer, 1995). Business strategy and financial issues are also unimportant. Rather, the crucial considerations are the potential of the product (does it meet a need?) and the long-term growth and profitability of the industry.

In this study the focus is also on the initial screening stage – the stage when a funder has become aware of an investment opportunity and considers it with a view to obtaining sufficient initial impressions to decide whether it is worthy of detailed consideration or should be rejected out of hand. A study of Canadian business angels reported that they accepted just 6 per cent of the investment opportunities for detailed consideration (Haines at al., 2003). Sweeting (1991) found that VCFMs typically spent 10–15 minutes on the initial screening stage. In Hall and Hofer's (1993) study it was typically completed in less than six minutes. In the case of business angels the median time devoted to screening was just nine minutes (Mason and Rogers, 1997).

Nevertheless, verbal protocol analysis has some limitations. First, a frequency count of 'thought units' is an imperfect indicator of the importance of a factor in the final decision (Zacharakis and Meyer, 1995). No weightings are placed on the responses to measure emphasis and the topics mentioned most frequently are not necessarily those that have the ultimate influence on the decision. And neither does it allow for different convincer patterns. In other words, people may repeat something several times if they are unsure but say it only once if they are absolutely sure. Second, subjectivity is involved in coding, analysing and interpreting the transcripts (Riquelme and Rickards, 1992). Third, some respondents may be uncomfortable or self-conscious about thinking and speaking out loud which may distort their thinking (e.g. resulting in excessive repetition of what they are reading). Fourth, it is impossible to entirely remove the effect of the artificiality of the situation. Fifth, from a practical point of view it ignores the role of the source of funding opportunity, which is an important initial influence on the investor's attitude to the opportunity (Hall and Hofer, 1993).

However, Ericsson and Simon (1993) argue that verbal protocol analysis is a

valuable method of analysing decision-making as long as the following criteria are met:

- the information reported must be the focus of attention;
- the task is not highly routinized by habit;
- there must be only a short time between performance and verbalization;
- verbalization does not require excessive encoding;
- reports are oral;
- subjects are free from distraction;
- instructions are clear;
- completeness in reporting is encouraged.

These conditions are all met in this study.

The sample of funders comprised three bankers, three VCFMs and four BAs. All were based in the south of England. The three bankers worked in the Southampton offices of major clearing banks (Barclays, NatWest and Lloyds TSB). Two of the VCFMs worked in the Southampton offices of major private equity firms. The third VCFM was a partner in a small fund located in Winchester. Two of the four business angels were based in Southampton with the others based elsewhere in South East England. Two of them were identified through the University of Southampton's Enterprise Centre (both had invested in one of the university's spin-off companies), a third was identified through the internet and the fourth was an acquaintance of this angel.

Each of these funders was asked to review three business proposals that were seeking funding in the presence of one of the authors. Two of the proposals were taken from Venture Capital Report (VCR) and the third was taken from the Business Angels Bureau (BAB) (now Investor Champions). Both organizations are business angel networks which circulate details of investment opportunities to their subscribers – these are mostly business angels but also include some venture capital funds and corporate investors. The proposals were as follows:

- an internet training company providing on-line, e-learning, tutor-supported management courses, based in London and seeking up to £300,000 of start-up funding (from BAB);
- a branded restaurant concept based on a successful Chinese model, with one outlet in Oxford, seeking £500,000 to open two new outlets in its first phase of expansion (from VCR);
- a provider of test laboratory facilities using its own patented equipment to test and compare absorbent disposable products, based in North West England, seeking £380,000 (out of a total funding requirement of £500,000) for early stage expansion (from VCR).

The information on each opportunity is provided in summary form: three pages in the case of the BAB opportunity and five pages for the VCR opportunities. Each opportunity provides information on the following topics: concept/product; market; competition; management team; financial summary.

The selection of the proposals was influenced by two considerations. First, it was thought to be desirable to provide respondents with a diverse range of

opportunities to consider in order to militate against the possibility that any of them had narrow sectoral preferences. Second, and much harder to fully address, was the need to select investment opportunities that would appeal equally to bankers, VCFMs and BAs. Given that they were sourced from business angel networks, all three opportunities could be regarded as being equity deals rather than loan deals. On the other hand, the restaurant business could be seen as a loan rather than a credit deal on account of its property basis. A further issue was the amount of finance sought, to ensure that the size of investment would not be too small to be a VCFM deal nor too big for the typical BA.

Respondents were asked to read each opportunity in the same way that they would normally read an investment proposal and verbalize their thoughts as they did so. The instruction that they were given was to say out loud the thoughts that came into their mind. Respondents were not required to provide any explanations or verbal descriptions (Ericsson and Simon, 1993). The second-named author was present as each respondent performed this task and reminded respondents to think out loud if they lapsed into silence for more than 15 seconds. Their thoughts were tape-recorded and subsequently a complete transcript was made for each respondent's consideration of each investment opportunity, giving a total sample of 30 transcripts. These verbatim transcripts were then broken down into short phrases, or 'thought segments' – that is, phrases and sentences that are independent thought units – to permit analysis. These thought units were then coded into one of nine categories relating to different types of investment criteria (Table 1). From this analysis it is possible to identify which aspects of the proposal are most and least important to the funder.

## Results

### Overview

There was a high degree of consensus among the funders on their overall assessment of the three proposals. Only one funder, a business angel, would consider further the internet training company. Similarly, one funder, a different business angel, would consider further the restaurant business. However, six of the funders – all three of the bankers, two of the VCFMs and one of the business angels – would consider further the laboratory testing company (Table 2). Thus, there is a very high level of consistency among the bankers: none would consider lending to either the internet training company or the restaurant chain but all three were positive about the laboratory testing company. This is likely to reflect the structured approach used by bankers to make lending decisions that is increasingly standardized between banks. There was also a high level of consistency among the VCFMs. All three VCFMs rejected both the internet training company and the restaurant chain. However, the laboratory testing company passed the initial screening of two of the VCFMs. In contrast, there was no consensus among the BAs in terms of their reactions to the proposals. Two of them rejected all three opportunities, one was favourably disposed to the internet training company and the final BA would investigate the restaurant chain and the laboratory testing company in more detail (Table 2).

*Table 1.* Classification of Thought Segments in the Protocols: Evaluation Criteria

| Investment Criteria | Description |
|---|---|
| 1. Entrepreneur/Management Team | The background, experience and track-record of the entrepreneur, their personal qualities (e.g. commitment, enthusiasm) and the range of skills/functions of the management team |
| 2. Strategy | The overall concept and strategy of the business |
| 3. Operations (practicalities of the business functioning) | How the business is organized to produce and deliver the product (i.e. issues associated with the production process) |
| 4. Product/Service | The nature of the product/service, in terms of its concept, uniqueness, distinctiveness and innovativeness. It also includes the quality, standards and performance, appearance, styling and aesthetic appeal, and ergonomics, function and flexibility of the product/service |
| 5. Market | The potential and growth of the market, demonstrated market need, level/nature of competition and barriers to entry |
| 6. Financial Considerations | This includes three aspects: (i) the financial structure of the business (e.g. costs and pricing, revenue stream financial projections), (ii) the value of the equity/worth of business, and (iii) the likely rate of return and exit route possibilities |
| 7. Investor Fit | This includes two elements: (i) the relationship between the investor's background, skills and knowledge of the industry, market, technology, etc. and the investment opportunity, and (ii) the investor's preferences (i.e. is this an industry, market, etc. that the investor wants to be in?) |
| 8. Business Plan | The whole package/plan |
| 9. Other | Comments on any aspects of the business which cannot be coded in any other category |

## Investment Criteria: A Comparative Analysis

The verbal protocol analysis for each type of funder is shown in Table 3. As anticipated, the approach of the bankers contrasts sharply with that of VCFMs and BAs. Bankers place considerable emphasis on the financial aspects of the proposals. These account for over half (55%) of all their 'thought units', more than twice the emphasis which VCFMs and BAs give to financial issues. For example, banker 2 reacted to the restaurant chain by observing that 'the owner has 40% to plough in which is a good sign' but then went on to comment that 'I would need to check the profits against the industry benchmark.' In the case of the lab testing company this banker noted that 'they have fixed assets of £700,000 which is a strong positive because it gives us security.' The market (12%) and the entrepreneur (9%) are both of secondary importance to the bankers, and they give virtually no emphasis to the strategy, operations, product or business plan. As one of the bankers noted, 'we look at the finances, and as long as it meets certain criteria that's all we can ask.' Thus, hypothesis 1, which states that

*Table 2.* Overall Assessment of the Funding Proposals: By Type of Funder and Proposal

|  | Bank 1 | Bank 2 | Bank 3 | VC 1 | VC 2 | VC 3 | BA 1 | BA 2 | BA 3 | BA 4 |
|---|---|---|---|---|---|---|---|---|---|---|
| Internet Training Company | × | × | × | × | × | × | × | √ | × | × |
| Restaurant Chain | × | × | × | × | × | × | × | × | × | √ |
| Lab Testing Company | √ | √ | √ | √ | √ | × | √ | × | × | √ |

Key: × = reject; √ = consider in more detail

'bankers' funding decisions will be dominated by financial considerations and they will give little consideration to entrepreneurial capabilities or the characteristics of the opportunity' is supported.

VCFMs have a very different approach to investment appraisal. They give greatest emphasis to market issues (22%) and financial issues (21%), which receive approximately equal weighting in terms of thought units. Two further criteria – the entrepreneur (12%) and strategy (11%) – are of secondary importance. This conflicts with the conclusions of post hoc studies which typically find that the entrepreneur is the most important factor, but confirms the findings of other verbal protocol studies by Hall and Hofer (1993) and Zacharakis and Meyer (1995) that the entrepreneur is not the primary determinant at the initial screening stage. Hypothesis 2, which states that 'VCFMs will also be concerned with financial issues but in addition will give considerable emphasis to the entrepreneurial team and market characteristics' is therefore also supported.

*Table 3.* Verbal Protocol Frequency Counts

| Funding Criterion | % of Thought Units (averaged by type of funder) | | |
|---|---|---|---|
|  | Banker (n = 3) | Venture Capital Fund Manager (n = 3) | Business Angel (n = 4) |
| Entrepreneur | 9.0 | 12.0 | 16.8 |
| Strategy | 5.7 | 11.0 | 2.0 |
| Operations | 4.3 | 4.7 | 3.8 |
| Product | 2.7 | 6.7 | 5.5 |
| Market | 12.3 | 22.0 | 19.8 |
| Finance | 55.3 | 21.3 | 22.5 |
| Investor Fit | 0 | 1.0 | 13.5 |
| Business Plan | 2.7 | 6.7 | 4.8 |
| Other | 8.0 | 14.7 | 11.8 |
| Total | 100 | 100 | 100 |

*Notes:* Each respondent reviewed three funding opportunities. Percentages do not add up to 100 because of rounding.

BAs, like VCFMs, emphasize financial and market issues (22% and 21% respectively). They also give marginally greater emphasis to the entrepreneur (17%) than VCFMs do. Indeed, the methodology may well have under-emphasized the importance that angels give to the people behind the business. Business angel 3 commented that 'when you invest in a company you are invest-ing I should think 80 per cent in the people. Not only have we got to feel right about the idea, but you have to have people who we are convinced . . . know what they are about.' Business angel 1 commented as follows: 'We are always looking at . . . people. If the people know what they are doing we might back them. It is people driven.' He then went on to say that,

> It's not their track record. I'm not interested in the CVs. It is the personalities of the people concerned, because ultimately you are backing people . . . The business model must make sense, but it is very easy to make a business model that works. Are the people going to be able to sell the product? It's the smell of the people. The intangible feeling that this person has what it takes to be a success. Hard work, vision, judgement together in a mix . . . Start-ups have to be about self-motivated people. You need people who can motivate themselves to kick down the doors to get customers. It takes a certain type of person to do that. You also need to like the people. They are the sort of people you could be good friends with. If you don't like them you aren't going to be able to work with them and that's because we work a hands on approach.

BAs are also the only type of funder to give any emphasis to investor fit considerations (14%). Because BAs are investing their own money and so are not answerable to anyone else they can hold personal (and often idiosyncratic) investment criteria. The attitudes of each of the angels who participated in the study to the investment proposals were strongly influenced by their backgrounds and experience. First, restricting their investments to situations in which they had some prior knowledge was a way of minimizing investment risk. As angel 4 commented, 'the more unknowns that you can take out, the less risk you are running. If you have been involved in this business, or have a particular interest in something, this can help.' Angel 3 noted that 'I'd rather invest in something I know more about' and rejected the lab testing company because 'I don't really understand the market.' Second, angels want 'exciting' investments. Angel 1 rejected the internet training company because 'it wouldn't interest me at all. Mostly, I think because I find the area boring.' He went on to develop this point:

> there is always the motivation to make money, but equally the other big motivation is to have fun . . . I came out of IT – it has to be IT or technology with some weird and wacky interest and there is nothing weird and wacky about this . . . Basically it's rather boring and I would not fund it. That really is irrespective of the return.

Similarly angel 2 would only be attracted by an opportunity that 'had a bit of emotion in it'.

Hypothesis 3a, that 'the approach of BAs will be closer to that of VCFMs than to bankers because they are investing for capital gain' therefore receives support. There was also marginal support for hypothesis 3b, that 'BAs will place greater emphasis than VCFMs on the entrepreneur/entrepreneurial team'. However, following Fiet (1995a,b), it might have been expected that BAs would weigh

entrepreneurial issues higher than market issues. This was not the case. Hypothesis 3c, 'that BAs will give greater emphasis to the "fit" of the business to their own personal investment criteria' is also supported. Finally, hypothesis 3d, that 'BAs will also give consideration to the opportunity for involvement in the investee business', could not be supported because of a lack of data, with too few comments on scope for involvement for them to be separately categorized; they are included within the residual category. Although the angels made some comments about being hands on investors there was no evidence that their attitude to any particular investment was shaped by the opportunity to play a hands on role, or the nature of this role. This is contrary to the findings of other studies (Haines et al., 2003; Mason and Rogers, 1996, 1997).

## Conclusion

The findings of this article must be treated with caution. In particular, because of the artificiality of the situation it is likely that some of the proposals were considered by respondents whereas, in a real world situation they would have been rapidly dismissed because of their sector.[3] It is also based on a small sample, comprising just 10 funders and 30 protocols. With these caveats, we can draw three main conclusions from this study. First, the results do confirm the basic hypothesis of the article that different types of funder analyse proposals differently, have different funding criteria and place emphasis on different kinds of information. This conclusion therefore challenges the tenor of much of the literature on how to write a business plan which implies, often by omission, that different types of funder look at business plans in broadly the same way. The findings from this study indicate that bankers are particularly distinctive in their approach. Hence, the statement by Burns (2001: 340) that 'bankers are likely to be interested in similar things to the providers of equity finance, albeit with different emphasis' is incorrect. There are fewer contrasts between VCFMs and BAs: nevertheless, the article has highlighted some important differences in their approaches. As noted in the introduction, some texts on business plans have alluded to differences in the approach of different types of funder. However, this is the first study to demonstrate the extent and nature of these differences. Moreover, whereas such texts generally only make a distinction between bankers and equity investors, this study has demonstrated that there are also differences in the approaches of VCFMs and BAs.

Second, contrary to Deakins and Hussain (1994), bankers exhibited consistency, not only in their approach, but also in their decision. This may well reflect the development of standardized approaches by the banks. With the caveat that this conclusion is based on small numbers, it does raise the question whether it is worthwhile for an entrepreneur who has been turned down by one bank to spend time approaching other banks. Conversely, BAs have the least consistency in either approach or outcomes, reflecting the great heterogeneity in the angel population and the personalized nature of their investment criteria. The attitude of business angels to any investment proposal is very much shaped by whether it is an industry or market that they know anything about. Thus, an entrepreneur

who is seeking angel financing should be advised to be persistent in their search for an investor.

Third, from a methodological perspective, this study's findings concerning the investment criteria of VCFMs reinforce concerns about the reliability of the conclusions of previous studies that have used 'conventional' questionnaires, surveys and interviews which require respondents to self-describe their decision-making. In contrast with these post hoc studies, but confirming other studies using real time methodologies (verbal protocol analysis, conjoint analysis), the entrepreneur is not the most important consideration (Shepherd and Zacharakis, 1999). There are three reasons why real time methodologies, such as the approach used in this study, provide a better understanding of how funders make financing decisions. First, they overcome the inherent problems of retrospective reports (e.g. bias, incomplete recall). Second, real time methods overcome the poor grasp that investors have about their own decision-making processes (Zacharakis and Meyer, 1998). Third, conventional post hoc methodologies do not differentiate between the different stages in the decision-making process. However, the weightings that investors give to different criteria change between stages in the investment process. Using verbal protocol analysis, this study has been able to identify the considerations of funders at the initial screening stage. As a consequence, this article gives entrepreneurs a much more accurate and reliable guide to the investment criteria of funders than conventional post hoc studies which generate 'laundry lists' of criteria, and which tend to be reproduced in text books on how to write business plans.

Finally, in terms of its practical applications, the central message of the article is that different funders will look for different types of information in a business plan, have different expectations about what information should be included and will interrogate the business plan in different ways. Their decision on whether to proceed will also be based on different weightings of criteria. Entrepreneurs (and their advisers) therefore need to be aware of the need to customize their funding proposal according to whether they are seeking bank funding, approaching venture capital funds or seeking finance from business angels. The primary concern of the banker is the risk that the loan will not be repaid. Accordingly, the banker is most interested in the finances of the business (margins, cash flow) in order to judge whether the business can service the debt, and whether assets are available from either the business or the entrepreneur to secure the loan in the event that the business fails. A business plan that is to be used to approach a bank for a loan must therefore contain sufficient information for a banker to make this assessment and to indicate how the loan will be repaid in the event that the business performs below expectations (Smith and Smith, 2000). It is normal practice for bankers to compare the financial information in a business plan against industry averages. It is therefore essential that any significant deviations are explained in the plan.

VCFMs and BAs give less consideration to such financial information. Nevertheless, they expect the business plan to contain such information and will spend some time looking at the figures. However, their main concerns relate to the growth potential of the business and the potential returns that they might expect.

Accordingly, they are focused on the market – its size, growth, level of competition – and want to know what is the customer benefit or what problem is being solved (Looser and Schläpfer, 2001). Financial information is also very important, although for different reasons to that of the banker. Equity investors look at the numbers to assess potential valuation, likely level of profitability, amount of funding that is required now and in the future and what the money will be used for. However, there are at least two significant differences in the approach of VCFMs and BAs. First, although the capability of the management team to seize the opportunity that has been identified is an important consideration for both, because business angels are hands on investors they place more emphasis on personal relationship issues. Second, whereas VCFMs are exclusively oriented to the financial returns, business angels are also seeking a psychic income in the form of interest and fun. Thus, whereas a business plan targeted at a VCFM needs to contain the 'steak', one that is aimed at business angels needs to contain both 'steak' and 'sizzle'. It is therefore important that the plan should attempt to engage potential angel investors on an emotional level.

## Acknowledgement

We are grateful to Jonathan Levie and Lesley Hetherington for their comments on an earlier version of this article that was presented at the 2002 ISBA conference in Brighton, 13–15 November 2002.

## Notes

1. According to one banker, the return is just 4%.
2. However, in comparison with the English bankers who reviewed the proposal in the Deakins and Hussain (1994) study the dependence of the Scottish bankers on financial information was lower and a minority would have been prepared to lend without security.
3. The restaurant case is the one that is most likely to fall into this category.

## References

Allen, K. R. (1999) *Launching New Ventures: An Entrepreneurial Approach*, 2nd edn. Boston, MA: Houghton Mifflin.

Avery, R. B., Bostic, R. W. and Samolyk, K. A. (1998) 'The Role of Personal Wealth in Small Business Finance', *Journal of Banking and Finance* 22(6–8): 1019–61.

Barrow, C., Barrow, P. and Brown, R. (2001) *The Business Plan Workbook*, 4th edn. London: Kogan Page.

Berger, A. N. and Udell, G. F. (1998) 'The Economics of Small Business Finance: The Role of Private Equity and Debt Markets in the Financial Growth Cycle', *Journal of Banking and Finance* 22(6–8): 613–73.

Binks, M. and Ennew, C. T. (1996) 'Growing Firms and Credit Constraint', *Small Business Economics* 8(1): 17–25.

Binks, M. R. and Ennew, C. T. (1997) 'The Relationship between UK Banks and their Small Business Customers', *Small Business Economics* 9(2): 167–78.

Burns, P. (2001) *Entrepreneurship and Small Business*. Basingstoke: Palgrave.

Deakins, D. and Hussain, G. (1994) 'Risk Assessment and Asymmetric Information', *Journal of Bank Marketing* 12(1): 24–31.

Dixon, R. (1991) 'Venture Capitalists and the Appraisal of Investments', *Omega* 19(5), 333–44.

Ericsson, K. A. and Simon, H. A. (1993) *Protocol Analysis*, 2nd edn. Cambridge, MA: MIT Press.

Feeney, L., Haines, G. H. and Riding, A. L. (1999) 'Private Investors' Investment Criteria: Insights from Qualitative Data', *Venture Capital: An International Journal of Entrepreneurial Finance* 1(2): 121–45.

Fiet, J. O. (1995a) 'Reliance upon Informants in the Venture Capital Industry', *Journal of Business Venturing* 10(3): 195–223.

Fiet, J. O. (1995b) 'Risk Avoidance Strategies in Venture Capital Markets', *Journal of Management Studies* 32(4): 551–74.

Fletcher, M. (1995) 'Decision Making by Scottish Bank Managers', *International Journal of Entrepreneurial Behaviour and Research* 1(2): 37–53.

Fried, V. H. and Hisrich, R. D. (1994) 'Toward a Model of Venture Capital Investment Decision Making', *Financial Management* 23(3): 28–37.

Haines, G. H. Jr, Madill, J. J. and Riding, A. R. (2003) 'Informal Investment in Canada: Financing Small Business Growth', *Journal of Small Business and Entrepreneurship* 16(3–4): 13–40.

Hall, J. and Hofer, C. W. (1993) 'Venture Capitalists' Decision Criteria in New Venture Evaluation', *Journal of Business Venturing* 8(1): 25–42.

Kirby, D. A. (2002) *Entrepreneurship*. London: McGraw-Hill.

Kuratko, D. F. and Hodgetts, R. M. (2001) *Entrepreneurship: A Contemporary Approach*, 5th edn. Orlando, FL: Harcourt.

Looser, U. and Schläpfer, B. (2001) *The New Venture Adventure: Succeed With Professional Business Planning*. New York: Texere.

MacMillan, I. C., Siegel, R. and Subba Narasimha, P. N. (1985) 'Criteria Used by Venture Capitalists to Evaluate New Venture Proposals', in J. A. Hornaday, E. B. Shils, J. A. Timmons and K. H. Vesper (eds) *Frontiers of Entrepreneurship Research 1985*, pp. 126–41. Wellesley, MA: Babson College.

Manigart, S., Wright, M., Robbie, K., Desbrières, P. and De Waele, K. (1997) 'Venture Capitalists' Appraisal of Investment Projects: An Empirical European Study', *Entrepreneurship Theory and Practice* 21(4): 29–43.

Mason, C. M. and Harrison, R. T. (1994) 'The Informal Venture Capital Market in the UK', in A. Hughes and D. J. Storey (eds) *Financing Small Firms*, pp. 64–111. London: Routledge,.

Mason, C. M. and Harrison, R. T. (1996a) 'Informal Venture Capital: A Study of the Investment Process and Post-investment Experience', *Entrepreneurship and Regional Development* 8: 105–26.

Mason, C. M. and Harrison, R. T. (1996b) 'Why Business Angels Say No: A Case Study of Opportunities Rejected by an Informal Investor Syndicate', *International Small Business Journal* 14(2): 35–51.

Mason, C. M. and Harrison, R. T. (2002) 'Barriers to Investment in the Informal Venture Capital Market', *Entrepreneurship and Regional Development* 14(3): 271–87.

Mason, C. and Rogers, A. (1996) 'Understanding the Business Angel's Investment Decision', Venture Finance Working Paper No. 14, University of Southampton and University of Ulster.

Mason, C. and Rogers, A. (1997) 'The Business Angel's Investment Decision: An

Exploratory Analysis', in D. Deakins, P. Jennings and C. Mason (eds) *Entrepreneurship in the 1990s*, pp. 29–46. London: Paul Chapman Publishing.

Muzyka, D., Birley, S. and Leleux, B. (1996) 'Trade-offs in the Investment Decisions of European Venture Capitalists', *Journal of Business Venturing* 11(4): 273–87.

Parker, S. (2002) 'Do Banks Ration Credit to New Businesses? And Should Governments Intervene?', *Scottish Journal of Political Economy* 49(2): 162–95.

Riding, A., Dal Cin, P., Duxbury, L., Haines, G. and Safrata, R. (1993) *Informal Investors in Canada: The Identification of Salient Characteristics*. Ottawa: Carleton University.

Riquelme, H. and Rickards, T. (1992) 'Hybrid Conjoint Analysis: An Estimation Probe in New Venture Decisions', *Journal of Business Venturing* 7: 505–18.

Shepherd, D. A. (1999) 'Venture Capitalists' Introspection: A Comparison of "in use" and "espoused" Decision Policies', *Journal of Small Business Management* 37(2): 76–87.

Shepherd, D. and Douglas, E. J. (1999) *Attracting Equity Investors: Positioning, Preparing and Presenting the Business Plan*. Thousand Oaks, CA: Sage.

Shepherd, D. A. and Zacharakis, A. (1999) 'Conjoint Analysis: A New Methodological Approach for Researching the Decision Policies of Venture Capitalists', *Venture Capital: An International Journal of Entrepreneurial Finance* 1(3): 197–217.

Smith, J. K. and Smith, R. L. (2000) *Entrepreneurial Finance*. New York: Wiley.

Storey, D. J. (1994) 'New Firm Growth and Bank Financing', *Small Business Economics* 6(2): 139–50.

Sweeting, R. C. (1991) 'UK Venture Capital Funds and the Funding of New Technology-based Ventures: Process and Relationships', *Journal of Management Studies* 28: 601–22.

Tiffany, P. and Peterson, S. D. (1997) *Business Plans For Dummies*. Foster City, CA: IDG Books.

Timmons, J. (1999) *New Venture Creation: Entrepreneurship For The 21st Century*, 5th edition. Boston, MA: Irwin/McGraw Hill.

Van Osnabrugge, M. (2000) 'A Comparison of Business Angel and Venture Capitalist Investment Procedures: An Agency Theory-based Analysis', *Venture Capital: An International Journal of Entrepreneurial Finance* 2(2): 91–109.

Van Osnabrugge, M. and Robinson, R. J. (2000) *Angel Investing: Matching Start-Up Funds With Start-Up Companies*. San Francisco, CA: Jossey Bass.

Vesper, K. H. (1996) *New Venture Experience*, rev. edn. Seattle, WA: Vector Books.

Wetzel, W. E. (1981) 'Informal Risk Capital in New England', in K. H. Vesper (ed.) *Frontiers of Entrepreneurship Research 1981*, pp. 217–45. Wellesley, MA: Babson College.

Wright, M. and Robbie, K. (1996) 'Venture Capitalists, Unquoted Equity Investment Appraisal and the Role of Accounting Information', *Accounting and Business Research* 26: 153–68.

Wynant, L. and Hatch, J. (1991) *Banks and Small Business Borrowers*. London, Canada: The Western Business School, University of Western Ontario.

Zacharakis, A. L. and Meyer, G. D. (1995) 'The Venture Capitalist Decision: Understanding Process Versus Outcome', in W. D. Bygrave, B. J. Bird, S. Birley, N. C. Churchill, M. Hay, R. H. Keeley and W. E. Wetzel Jr (eds) *Frontiers of Entrepreneurship Research 1995*, pp. 465–78. Wellesley, MA: Babson College.

Zacharakis, A. L. and Meyer, G. D. (1998) 'A Lack of Insight: Do Venture Capitalists Really Understand their Own Decision Processes?', *Journal of Business Venturing* 13(1): 57–76.

COLIN MASON is Professor of Entrepreneurship in the Hunter Centre for Entrepreneurship, University of Strathclyde, Glasgow, UK. His research is

concerned with entrepreneurship and venture capital, particularly in the context of regional development. He has published extensively on topics such as the new firm formation process, the geography of new firm formation and growth, the impact of small business policy, and venture capital. He is founder and co-editor of *Venture Capital: An International Journal of Entrepreneurial Finance* (Routledge). [email: colin.mason@strath.ac.uk]

MATTHEW STARK is a trainee chartered accountant with Tenon Limited and is based at the company's Chandlers Ford, Hampshire office. He graduated from the Department of Geography, University of Southampton in 2001. This article is based on his research dissertation, which he undertook under the supervision of Colin Mason. [email: Matthew. Stark@tenongroup.com]

**Que cherchent les investisseurs dans un plan de développement?**
*Comparaison des critères d'investissement des banquiers, des spécialistes du capital risque et des business angels* – Colin Mason

*University of Strathclyde, Royaume-Uni*

Matthew Stark

*Tenon Limited, Royaume-Uni*

La plupart des financeurs potentiels souhaitent considérer un plan de développement comme une première étape lorsqu'ils décident ou non d'investir. Toutefois, une grande partie de la littérature sur la façon de rédiger un plan de développement manque de souligner que des types de financeur différents examinent les plans de développement de points de vue différents. Faisant appel à une méthodologie en temps réel, cet article met en lumière les critères d'investissement différents des banquiers, des gestionnaires de fonds capital risque et des business angels. Les banquiers insistent sur les aspects financiers de la proposition et mettent peu l'accent sur les questions liées aux marchés, aux entrepreneurs ou autres questions. En tant qu'investisseurs capital-actions, les gestionnaires de fonds capital risque et les business angels ont une approche très différente, mettant l'accent sur les questions liées aux marchés et à la finance. Les business angels mettent plus l'accent que les gestionnaires de fonds capital risque sur les considérations liées aux entrepreneurs et à « l'adéquation des investissements par rapport aux investisseurs ». L'implication pour les entrepreneurs est qu'ils doivent personnaliser leur plan de développement selon qu'ils cherchent à obtenir un financement auprès d'une banque, d'un fonds capital risque ou d'un business angel.
    *Mots clés: banques; business angel; plans de développement; petite entreprise; capital risque*

**¿Qué esperan los inversores de un plan de actividades empresariales?**
*Una comparación de los criterios de inversión de los bancos, gestores de capitales de riesgo y promotores* – Colin Mason

*Universidad de Strathclyde, RU*

Matthew Stark

*Tenon Limited, RU*

Para la mayoría de los financiadores potenciales la primera medida a tomar es examinar el plan de actividades antes de decidirse a invertir. No obstante, gran parte de la información sobre la preparación de un plan de actividades no da importancia al hecho de que los tipos diferentes de financiadores consideran los planes de actividades desde un punto de vista diferente. Empleando una metodología en tiempo real, este artículo destaca los criterios diferentes de los bancos, gestores de capitales de riesgo y promotores. Los banco hacen hincapié en los aspectos financieros de la proposición y dan poca importancia al mercado, al empresario o a otros asuntos. Como inversores en capital social, los gestores de capitales de riesgo y los promotores tienen un enfoque muy diferente dando igual importancia al

mercado y a los asuntos financieros. Los promotores dan más importancia a los factores de la compatibilidad del empresario con el inversor que los gestores de capitales de riesgo. La inferencia para los empresarios es que al buscar financiación tienen que adaptar su plan de actividades a las exigencias del banco, del gestor de capital de riesgo o del promotor, según el caso. .

*Palabras claves: bancos; promotores; plan de actividades; pequeñas empresas; capital de riesgo*

### Auf welche Punkte achten Investoren bei einem Geschäftsplan?
*Ein Vergleich der Investitionskriterien von Bankiers, Risikokapitalgebern und Finanzierern bzw. sog. Business Angels* – Colin Mason

*Universität von Strathclyde, GB*

Matthew Stark

*Tenon Limited, GB*

Der Großteil interessierter Geldgeber wird als ersten Schritt zur Entscheidung hinsichtlich einer Investition einen Geschäftsplan sehen wollen. Die vorhandene Literatur über die Art und Weise, wie man einen Geschäftsplan erstellt, vermittelt jedoch sehr selten, dass Geldgeber verschiedenen Typs Geschäftspläne aus unterschiedlicher Perspektive betrachten. Unter Einsatz einer Echtzeit-Methodik veranschaulicht dieser Beitrag die verschiedenen Investitionskriterien von Bankiers, Risikokapitalgebern und Finanzierern bzw. sog. 'Business Angels'. Bankiers konzentrieren sich auf die finanziellen Aspekte eines Plans und schenken dem Markt, dem Unternehmer bzw. anderen Gesichtspunkten wenig Aufmerksamkeit. Als Kapitalinvestoren haben Risikokapitalfondsverwalter und 'Business Angels' eine grundlegend andere Vorgehensweise, bei der sowohl marktbezogene als auch finanzielle Gesichtspunkte betont werden. Im Gegensatz zu Risikokapitalfondsverwaltern konzentrieren sich 'Business Angels' mehr auf den Unternehmer und die Erwägungen bezüglich der Geeignetheit für den Investor. Hieraus ergibt sich für Unternehmer, dass sie ihren Geschäftsplan speziell danach ausrichten müssen, ob sie sich für ihre Finanzierung an eine Bank, einen Risikokapitalfonds oder an einen 'Business Angel' wenden.

*Schlagwörter: Banken; 'Business Angels' (Finanzierer); Geschäftspläne; mittelständische Unternehmen; Risikokapital*