REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DURIE TANGRI LLP
  Daralyn J. Durie (SBN 169825)
  ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, California, 94111
+1 (415) 362-6666
+1 (415) 236-6300 facsimile

*Attorney for Defendant Orange, S.A.*

FOLEY HOAG LLP
  Daniel Schimmel (*pro hac vice*)
  dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, New York, 10036
+1 (646) 927-5500
+1 (646) 927-5599 facsimile

  Anthony Mirenda (*pro hac vice*)
  amirenda@foleyhoag.com
Seaport West
155 Seaport Boulevard
Boston, MA 02210
+1 (617) 832-1220
+1 (617) 832-7000 facsimile

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL, INC., | Case No. 3:14-cv-03985-JD |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF GEORGE FOSTER** |
| v. | |
| ORANGE S.A., et al., | |
| Defendants. | Date:   March 9, 2017<br>Time:   10:00 a.m.<br>Ctrm:   11, 19th Floor<br>Judge:  Honorable James Donato<br>Trial:   April 10, 2017 |

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FOSTER'S OPINION SHOULD BE EXCLUDED BECAUSE HIS
       TESTIMONY DOES NOT FIT THE CLAIMS OF THE CASE............................1

III.   FOSTER'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE
       NOT BASED ON VALID AND RELIABLE METHODS....................................2

       A.     Foster's comparable company analysis does not offer a meaningful
              comparison ................................................................................................2

       B.     Foster's method is neither replicable nor testable.......................................4

       C.     Foster's comparable company analysis is unreliable and cannot be
              admitted......................................................................................................6

       D.     Foster's reliance on PitchBook, an unproven and inaccurate source for
              performing valuations, warrants exclusion ..................................................7

IV.    FOSTER'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE
       BASED ON ASSUMPTIONS GIVEN BY TELESOCIAL'S ATTORNEYS,
       NOT DEVELOPED BY HIS OWN ANALYSIS ..................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579 (1993).............................................................................................................. 1

*GE v. Joiner*,
522 U.S. 136 (1997)........................................................................................................... 4, 6

*In re Nellson Nutraceutical, Inc.*,
356 B.R. 364 (Bankr. D. Del. 2006) ..................................................................................... 3

*Intermedics, Inc. v. Ventritex, Inc.*,
139 F.R.D. 384 (N.D. Cal. 1991).......................................................................................... 9

*Lippe v. Bairnco Corp.*,
288 B.R. 678 (S.D.N.Y. 2003)........................................................................................... 4, 7

*Lust v. Merrell Dow Pharms.*,
89 F.3d 594 (9th Cir. 1996) .................................................................................................. 8

*Open Text S.A. v. Box, Inc.*,
No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783 (N.D. Cal. Jan. 23, 2015) .......................... 5

*Rite-Hite v. Kelley*,
56 F.3d 1538 (Fed. Cir. 1995)............................................................................................... 2

**Rules**

Fed. R. Evid. 702 ............................................................................................................. *passim*

I.   **INTRODUCTION**

Telesocial's damages expert George Foster has constructed a valuation opinion without value. He begins with a foundation of assumptions supplied improperly by Telesocial's counsel, builds on them by applying unjustified and untestable methodology to unproven data, all to reach a conclusion that does not even fit the claims of the case. Telesocial's efforts to prop up this edifice – cosmetic arguments that never seriously address the faults riddling Foster's opinions – are unavailing. Any one of those faults would be enough to justify exclusion of his testimony; together they render it wholly unreliable and dangerous to present to the jury, warranting exclusion under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702.

II.  **FOSTER'S OPINION SHOULD BE EXCLUDED BECAUSE HIS TESTIMONY DOES NOT FIT THE CLAIMS OF THE CASE.**

Telesocial opens its opposition with a primer on contract law, and then spends pages retelling its version of the facts of the case. Telesocial, Inc.'s Opposition to Orange's Motion to Exclude Opinions and Testimony From George Foster (Dkt. No. 215) ("Opp.") at 2-6. None of this has any bearing on Orange's *Daubert* challenge; Orange does not dispute the basic legal precept that foreseeable, proximately-caused damages are the norm for breach of contract and tort claims, and an opposition to a *Daubert* challenge is hardly the typical place for a plaintiff's opening statement, particularly one not grounded in reality.

Orange's first objection to Foster's testimony was straightforward: his damages opinion did not value Telesocial at the time of the alleged breach or tort. Defendants' Motion to Exclude the Opinions and Testimony of George Foster (Dkt. No. 200) ("Mot.") at 3-4. Foster's task should have been to analyze the existing assets and liabilities of Telesocial in November 2012, factor in any future expectancies (adjusted for probability of occurrence), and determine a value for the company. Instead Foster skipped forward, assuming[1] that two highly beneficial

---

[1] Without independent analysis of those assumptions, *see infra* at 8-9.

1  events were *guaranteed* to occur for Telesocial (a telco partnership and a Series B financing),

2  and valuing the company after those events.  This counterfactual valuation did not properly

3  measure Telesocial's damages, because the properly-discounted future value of any expectancy

4  of the hypothetical partnership and financing would have been accounted for in Telesocial's

5  November 2012 value.

6        Remarkably, Telesocial now unequivocally states that Foster is not offering a damages

7  opinion at all.  Rather, he is offering an opinion of Telesocial's value, *i.e.*, the sum worth of its

8  shares.  Opp. at 3 n.1.  Well and good, but this only raises another argument from Orange's

9  opening papers: such an opinion from Foster represents only *shareholder value*, but Telesocial,

10  not its shareholders, is plaintiff, and any damages calculated must be those sustained by the

11  company itself, not its shareholders.  Foster does nothing to tie his hypothetical valuation to

12  damage to the company caused by the alleged breach or tort.  In response, Telesocial simply

13  asserts that "the jury can consider Foster's testimony to calculate the damages based on the

14  difference between the value of Telesocial but-for the alleged misconduct and its value as a

15  result of that misconduct."  Opp. at 3.  But this merely transfers the fundamental error to the

16  jury – the difference between shareholder value at point A and shareholder value at point B is

17  still a measurement of shareholder value – not damage to the company.  *See Rite-Hite v. Kelley*,

18  56 F.3d 1538, 1546 (Fed. Cir. 1995) (en banc).  It must be excluded.

19  **III.    FOSTER'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE NOT**
20  **BASED ON VALID AND RELIABLE METHODS.**

21    **A. Foster's comparable company analysis does not offer a meaningful comparison.**

22        Telesocial bases its next argument on a fundamental mischaracterization – falsely

23  claiming that Orange's motion is "rigidly insisting that all valuations must be the result of

24  applying a multiple to revenue."  Opp. at 7.  Nowhere does Orange argue that revenue

25

26

27

28

multiples are the only acceptable valuation methodology.[2]  Rather, Orange's point is that for

the kind of analysis that Foster purports to undertake, the lack of the use of *any* multiple

(whether a multiple based on revenue or on some other justifiable driver of value) renders it

fatally flawed.  Mot. at 10-11.

Multiples allow apples-to-apples valuation comparisons of companies of different sizes.

Without deriving, justifying, and applying a multiple, the data points from any purportedly

comparable companies say nothing meaningful about the company sought to be valued.  No

two companies are identical; the use of a properly-justified multiple is what adjusts for the

differences between non-identical comparables to bring some scientific methodology to what

might otherwise be a wholly subjective exercise.  Foster's tactic is akin to trying to value a

piece of property by looking only at sale prices – even if one limits the sale prices to sales in

the same zip code, the raw absolute numbers are of virtually no help, whereas ratios such as

price per square foot offer a meaningful basis for comparison which can be tested.  Foster's

methodology, lacking multiples, offers no such meaningful basis, and thus is not reliable

enough to be presented to the jury.

Telesocial argues that Foster justified his multiple-less methodology, but the

justification is nothing more than a reference to his "experience."  Opp. at 7.  An expert relying

solely on experience "must explain how that experience leads to the conclusion reached, why

that experience is a sufficient basis for the opinion, and how that experience is reliably applied

to the facts." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) (citing Fed. R. Evid.

702 advisory committee's note (2000 Amendments)).  Foster never explains why his experience

---

[2] The page of Orange's brief Telesocial cites as support for the proposition does not include the word "revenue" at all.  Opp. at 7, Mot. at 10.  Although Telesocial's opposition is locked in on revenue multiples, Orange's motion and the authorities it cites are clear that multiples can be ratios of any number of relevant metrics.  Mot. at 10 n.4 (multiples can be ratios of "earnings, cash flow or some other measure") (citation omitted); *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 370 (Bankr. D. Del. 2006) ("At the heart of any valuation methodology is a simple task: the expert determines the appropriate metric of value and applies a multiple to that metric to determine the enterprise value of the company.").

led him to use *no multiple at all* – a fundamental flaw that renders any resulting valuation an unreliable apples-to-oranges comparison.  This supposed justification is nothing more than asking a jury to rely on Foster's "say-so," which is plainly insufficient.  *GE v. Joiner*, 522 U.S. 136, 146 (1997).  His testimony must be excluded under Rule 702.

  **B.  Foster's method is neither replicable nor testable.**

   Telesocial continues to maintain that Foster's methodology is replicable and testable, but never actually addresses Orange's arguments on this point: Foster cannot explain how his initial list of input companies is derived, did not provide that initial list of companies, and never "shows his work" as he adds and subtracts and adds and subtracts his way to his final list.

   Foster's initial set is a mashup of companies created from two sources on Pitchbook: a "Similarity Score" list, and a list generated from a potpourri of "keyword," "industry vertical," and "industry classification" tags.  Ex. 1 to Decl. of Anthony Mirenda in Support of Defendants' Mot. (Foster's Report, "Rep.") at 32-33.  Similarity Score is a one-number-fits-all measure that is the product of a proprietary algorithm.  Telesocial's opposition claims Foster did "extensive due diligence" on the algorithm, Opp. at 9, but Foster's own explanation of the algorithm tells the tale best:



Ex. 2 to Decl. of Anthony Mirenda in support of Defendants' Mot. ("Foster Depo. (Mot.)") at 99-100.  Foster makes clear that he knows very little about how the algorithm actually works.  Regarding the second source of companies for Foster's initial set, the "keyword," "industry vertical," and "industry classification" tags are, like the Similarity Score, created and applied

1
2
3
4

by PitchBook. Rep. at 32-33. And, as with the Similarity Score, Foster offers little explanation and no analysis of how PitchBook decides how to classify each company or why it is justifiable. Ex. 2 to Decl. of George Foster in Support of Plaintiff's Mot. ("Foster Depo. (Opp.)") at 101.

5
6
7
8
9
10
11

Orange does not contend that Foster is required to start from scratch for each analysis, independently developing his own database for each valuation he might perform.[3] But he cannot base his analysis on a Pitchbook-generated set of companies without understanding and being able to explain the methodology used by Pitchbook in doing so. The process remains a black box, opaque to the jury, and thus Foster's testimony based on that box's output must be excluded. *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783, at *21 (N.D. Cal. Jan. 23, 2015).

12
13
14
15
16
17

Even assuming Foster offered sufficient explanation of how PitchBook generated his initial set, he must also describe how he transforms that set into his final list of "comparable" companies. Yet this too is absent. Foster never specifies the list of companies in his initial set. As he proceeds to nip and tuck the set from 200 down to 11, he did not provide and could not testify to what companies he removed with each step, again rendering portions of his analysis immune to testing and verification. Foster Depo. (Mot.) at 105-107.

18
19
20
21
22
23

Contrary to Telesocial's assertions, the fact that Foster offers some explanation of some steps of his methodology does not cure the total lack of transparency as to his inputs. Explaining how long you cooked the mystery meat gives me no insight into what I'm actually eating – and likewise, Foster's explanation of his pruning process is worthless without knowing what companies he started with, what he added, and what he subtracted. The product of such untestable, unverifiable analysis should not be fed to the jury. *GE*, 522 U.S. at 146.

24
25

Telesocial's repeated response (Opp. at 9-10) is that Foster does not need to provide his inputs or show his work because Orange could somehow recreate the same from Foster's

26

---

[3] Although he has in the past. Foster Depo. (Opp.) at 84.

27
28

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF GEORGE FOSTER / No. 3:14-cv-03985-JD

5

description.  Not so.  Foster himself admits that the Similarity Score is ███████████ and

that PitchBook's algorithms are not only unknowable but also constantly changing.  Rep. at 32

n.160.  Further, a number of the references cited by Foster that purport to explain Pitchbook are

links to blank pages – no use to Orange, the Court, or the jury in understanding or recreating

Foster's process.  Rep. at 32-33 nn. 161-163 (all three footnotes containing inoperative

hyperlinks).

### C. Foster's comparable company analysis is unreliable and cannot be admitted.

In its opening motion, Orange identified numerous crucial distinctions between the

companies on Foster's "comparable" list and Telesocial.  Mot. at 8-9.  Telesocial's response is

that the fact that they share an "industry vertical" makes them sufficiently comparable, and, at

any rate, what makes a company comparable is always to be left to the factfinder.  Opp. at 10-

11.  Telesocial dismisses important factors such as user base and revenues as "granular," Opp.

at 11, but Foster's own report contradicts this: although WhatsApp is part of his final list of

comparable companies, he offers an alternative analysis excluding it because ███████████

███████████.  Rep. at 39-42.  Telesocial admits that (except for the WhatsApp case) Foster

disregards every characteristic save "industry vertical."  Opp. at 10-11.  But this myopic focus

on industry vertical alone is not sufficient to determine whether companies are actually

comparable.  "[C]ompanies are not completely comparable merely because they are in the same

industry, and often factors such as product and geographic markets, size, growth rates, profit

margins, and other industry and economic considerations warrant adjustments." *Lippe*, 288

B.R. at 693-94.  Foster's contention that industry is enough to make a company comparable is

incorrect, and his analysis built on that contention must be excluded.  *Id.* (excluding expert

testimony based in part on failure to consider factors beyond industry in comparable company

analysis).

**D. Foster's reliance on PitchBook, an unproven and inaccurate source for performing valuations, warrants exclusion.**

Telesocial claims Pitchbook is "widely used in the venture capital and private equity community to value companies." Opp. at 12. Yet the citation to Foster's report that supposedly supports this assertion says nothing of the sort. The cited paragraph and footnotes describe ███████████████████████████████████████████████████ ████████████████████████████████████████ Rep. at 32. The report says nothing about Pitchbook being used for valuations. Of course, this is no surprise, as Foster himself readily admitted that he had never used Pitchbook to value a company before, nor had he heard of anyone else doing so. Foster Depo. (Mot.) at 82, 92; Foster Depo. (Opp.) at 88-89.

The most Foster could offer is that ███████████████████████████████████ ████████████████████████████████████████████████. Foster Depo. (Opp.) at 89. That may be true, but says nothing about PitchBook's reliability for valuations. Similarly, Telesocial's opposition makes much of PitchBook's recent partnership with a trade association (the National Venture Capital Association), going so far as to argue that this fact alone is sufficient proof of the reliability of PitchBook. Opp. at 12. But this claim suffers from the same problem as Foster's testimony: the partnership does nothing to establish the reliability of PitchBook for its proffered purpose in this case, valuation. *See id.*

PitchBook's reliability is further called into question by Foster himself, who admits that PitchBook contained an error in its information on Telesocial. Foster Depo. (Opp.) at 144. Telesocial's opposition tries to dismiss this as merely a "single" error.[4] Opp. at 13. The context of that "single" error, however, is critical. Because PitchBook's database is almost wholly private companies, Foster could do nothing to verify the data for any individual

---

[4] The publicly-available PitchBook website for Telescocial contains more than a "single" error: it shows one funding round (not two) with only one investor (not four), gives an incorrect amount of funding ($1.09m versus $1.3m), and lists two members of the Board of Directors (not four). *Compare* Rep. at 23-24 *with* Telesocial Company Profile: Valuation and Investors, PITCHBOOK (last accessed Feb. 20, 2017), *available at* https://pitchbook.com/profiles/telesocial-profile-investors-funding-valuation-and-analysis.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF GEORGE FOSTER / No. 3:14-cv-03985-JD

7

company – with one exception: Telesocial.  Foster Depo. (Mot.) at 95.  And in that single

instance where Foster could actually verify PitchBook's private company data, *that data was*

*wrong*.  Foster Depo. (Opp.) at 144.  Telesocial bears the burden of showing that its expert's

testimony is reliable and should be admitted, *Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598

(9th Cir. 1996), yet Foster's own testimony damns the reliability of his source.

## IV.    FOSTER'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY ARE BASED ON ASSUMPTIONS GIVEN BY TELESOCIAL'S ATTORNEYS, NOT DEVELOPED BY HIS OWN ANALYSIS.

Telesocial's opposition credits Foster with reviewing the factual record and then

purportedly developing the assumptions underlying the valuation himself.  Opp. at 14.  But this

is belied by Foster's own report, in which he explicitly states that *Telesocial's counsel* supplied

the assumptions:



Rep. at 6.  Foster did not independently develop these assumptions.  Foster did not evaluate the

assumptions to see if they were justified by the record, or if they were reasonable.   Indeed,

Foster did not evaluate the assumptions at all.  Instead – as he readily admits – they were

simply handed to him by Telesocial's counsel.  Rep. at 6; Foster Depo. (Mot.) at 14, 57-58.

What should have been outputs of Foster's expertise were instead blindly accepted inputs.

In their opposition Telesocial's attorneys scramble, after-the-fact, to try to justify the

assumptions they themselves developed.  But this is too little, too late: Foster has built his

entire valuation opinion on a foundation of lawyer advocacy, not expert analysis.  Because "it

would be fundamentally misleading … if testimony that was being presented as the

independent thinking of an 'expert' in fact was the product, in whole or significant part, of the

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF GEORGE FOSTER / No. 3:14-cv-03985-JD

8

suggestions of counsel," the Court must exercise its gatekeeper function and exclude Foster's testimony. *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 395-96 (N.D. Cal. 1991).

## CONCLUSION

For all the foregoing reasons, Orange respectfully requests that the Court grant its Motion and issue an order prohibiting George Foster from offering any of the opinions in his Rule 26 report.

Respectfully submitted,

ORANGE, S.A., et al.

By their attorneys,

/s/ Anthony D. Mirenda
Anthony D. Mirenda
FOLEY HOAG LLP

Dated:   February 22, 2017

FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Daralyn J. Durie, attest that concurrence in the filing of this document has been obtained.

 /s/ Daralyn J. Durie
Daralyn J. Durie