DURIE TANGRI LLP
   Daralyn J. Durie (SBN 169825)
   ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, California, 94111
+1 (415) 362-6666
+1 (415) 236-6300 facsimile

*Attorney for Defendant* Orange, S.A.

FOLEY HOAG LLP
   Daniel Schimmel (*pro hac vice*)
   dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, New York, 10036
+1 (646) 927-5500
+1 (646) 927-5599 facsimile

   Anthony Mirenda (*pro hac vice*)
   amirenda@foleyhoag.com
Seaport West
155 Seaport Boulevard
Boston, MA 02210
+1 (617) 832-1220
+1 (617) 832-7000 facsimile

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ORANGE S.A., et al., <br><br> Defendants. | Case No. 3:14-cv-03985-JD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF JAMES KEARL** <br><br> Date: March 9, 2017 <br> Time: 10:00 a.m. <br> Ctrm: 11, 19th Floor <br> Judge: Honorable James Donato <br> Trial: April 10, 2017 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. TELESOCIAL'S OPPOSITION PAPERS DO NOT CURE KEARL'S SPECULATIVE AND UNRELIABLE OPINION ON ENTERPRISE VALUE ...1

    A. Kearl's ███████ enterprise value estimate is speculative and unreliable as it uses none of the standard valuation methodologies. ..............................1

    B. Kearl's addition of ███ "control premium" is speculative and unreliable..........................................................................................................3

III. TELESOCIAL'S OPPOSITION DOES NOT SAVE KEARL'S REASONABLE ROYALTY OPINION FROM EXCLUSION. ........................................................5

    A. Telesocial's opposition papers provide no explanation as to why Orange would ███████████████████████████████████ ███████████████. ...................................................................................5

    B. Kearl has ████████████ despite Telesocial's implicit concession he was required to do so. ...................................................................................6

    C. The Opposition demonstrates that Kearl's methodology is a black box. ....8

    D. Telesocial's Opposition misstates Kearl's Report and ignores ██████████ ████████████████████████████████████████████.......10

# TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. Cisco Sys.*,
   239 F. Supp. 2d 660 (E.D. Tex. 2002) .................................................................. 3, 5, 6, 7, 10

*Comcast IP Holdings I, LLC v. Sprint Commc'ns*,
   2015 U.S. Dist. LEXIS 104367 (D. Del. Aug. 10, 2015) ............................................................ 9

*Cornell Univ. Hewlett Packard Co.*,
   609 F. Supp. 2d 279 (N.D.N.Y. 2009) ........................................................................................ 8

*Garretson v. Clark*,
   111 U.S. 120 (1884) .................................................................................................................... 6

*Estate of Godley v. Comm'r*,
   286 F.3d 210 (4th Cir. 2002) ...................................................................................................... 4

*Fujifilm Copr. V. Motorola Mobility LLC*,
   2015 U.S. Dist. LEXIS 46106 (N.D. Cal. 2015) ..................................................................... 7, 9

*In re Hawaiian Telcom Communs., Inc.*,
   430 B.R. 564 (Bankr. D. Haw. 2009) ......................................................................................... 2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ...................................................................................... 6, 7, 8, 9, 10

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004) .......................... 2, 3, 4

*In re Nellson Nutraceutical, Inc.*,
   356 B.R. 364 (Bankr. D. Del 2006) ............................................................................................ 3

*Philip Morris Inc. and Consol. Subsidiaries v. C.I.R.*,
   96 T.C. 606 (1991) ...................................................................................................................... 4

*Pope & Talbot, Inc. v. C.I.R., the Ninth Circuit*,
   162 F.3d 1236 (9th Cir. 1999) ..................................................................................................... 4

*ResQNet.com, Inc. v. Lansa Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ..................................................................................................... 8

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2010) ............................................................................................... 8, 9

*Veritas Operating Corp v. Microsoft Corp.*,
   2008 U.S. Dist. LEXIS 112135 (W.D. Wash. Feb. 26, 2008) .................................................... 9

*VirnetX, Inc. v. Cisco Sys.*,
   767 F.3d 1308 (Fed. Cir. 2014) .......................................................................................... 6, 7, 8

**Additional Authorities**

SHANNON P PRATT, *BUSINESS VALUATION DISCOUNTS AND PREMIUMS* 319 (2001) ........................... 5

I.       INTRODUCTION

Telesocial's opposition papers do not cure the several fatal flaws in its expert James Kearl's damages opinions.  For the reasons set forth below and in Orange's initial *Daubert* motion, neither Kearl's "enterprise value" opinion nor his "reasonable royalty" opinion are grounded in sound methodology and therefore his opinions must be excluded.

II.      **TELESOCIAL'S OPPOSITION PAPERS DO NOT CURE KEARL'S SPECULATIVE AND UNRELIABLE OPINION ON ENTERPRISE VALUE**

   A.       **Kearl's ▇▇▇▇▇▇▇ enterprise value estimate is speculative and unreliable as it uses none of the standard valuation methodologies.**

In an effort to avoid the fatal flaw that Kearl's valuation opinion relies on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  But the Court need not and should not rely on Telesocial's lawyers' description of Kearl's opinion – Kearl himself wrote his opinion in a few sentences on pages 46-47 of his report:



Ex. 1 to Declaration of James Kearl in Support of Telesocial's Opposition ("Report").

Kearl's own description of what he did is clear and unambiguous.  He (1) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2) he then

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE KEARL OPINIONS /
No. 3:14-cv-03985-JD                                                                                                                  1

1  "███████████████████████████ and (3) ███
2  ████████████████████████████████  Nowhere in this opinion is any
3  "analysis" that relies on any of the other things that Telesocial lists in its Opposition.  It is
4  impermissible revisionism for Telesocial, in opposition to a *Daubert* motion, to retrospectively
5  try to construct an analysis that its expert did not engage in.
6          The fact that Kearl started with a valuation calculated from ████████████
7  ████████████████████████████████████████████████ is a
8  foundational flaw that renders the valuation opinion inadmissible.  *See Lippe v. Bairnco Corp.*,
9  288 B.R. 678, 692 (S.D.N.Y. 2003) (expert opinion unreliable and speculative where failed to
10 consider whether a buyer actually existed), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004); *In re*
11 *Hawaiian Telcom Communs., Inc.,* 430 B.R. 564, 578 (Bankr. D. Haw. 2009) (precedent
12 transaction analysis is "based on what other companies have been willing to pay for similar
13 companies in a market transaction," not on rejected offers).  Telesocial concedes in its
14 Opposition that ██████████████████, and therefore it can do nothing to cure the
15 flaw in Kearl's opinion.  Opp. at 3.
16         Instead, Telesocial claims that Kearl also considered three other things besides ██
17 ████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████
21 ████████████████████████████████████████
22         And, in any event, each of the three items is illusory.  ████████
23 ████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████
27
28

[REDACTED]

Mot. at 10-11. Even if Kearl had actually considered any of these points, an opinion based on them would be untenable and could not be submitted to the jury. *Alcatel USA, Inc. v. Cisco Sys.*, 239 F. Supp. 2d 660, 669-672 (E.D. Tex. 2002) (tenuous inferences and unsupported assumptions are not reasonable or reliable evidence from which a jury can properly value damages). *See, In re Nellson Nutraceutical, Inc.* 356 B.R. 364, 374-376 (Bankr. D. Del. 2006) (discussing three standard valuation methodologies, none of which were followed by Kearl here). The Court should not allow Telesocial to give expert imprimatur to a [REDACTED]

**B.     Kearl's addition of a [REDACTED] is speculative and unreliable.**

---

[1] "Expert testimony is inadmissible if it makes no effort to account for major variables, such as, in a discrimination case, possible nondiscriminatory explanations . . . ." *Lippe*, 288 B.R. at 686. [REDACTED]

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE KEARL OPINIONS / No. 3:14-cv-03985-JD                     3

1   Kearl's opinion on control premium suffers from the same defect as the expert opinion
2   excluded in *Lippe*, 288 B.R. at 691.  In *Lippe*, the court addressed the exclusion of an expert
3   who applied a control premium without providing a reliable foundation.  *Id.* at 684-87.  The
4   court excluded the expert, holding that "it is not [the expert's] *conclusion* that a control
5   premium should be applied that is problematic; it is his utter failure to offer a meaningful
6   explanation as to why he reached that decision in each of the different factual scenarios and it is
7   his absence of any facts or data as to the existence of prospective buyers who would be willing
8   to pay a premium."  *Id.* at 693.[2]   The same analysis should apply here. ███████████
9   ████████████████████████████████████████████████████████████
10  ██████████████████████████████████████████ *Id.* █████████
11  ████████████████████████████████████████████████████████████
12  ████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████████
15  ████████████████████████████████████████████████████████████
16  █████████████████████████████████████████████████ Mot. at 4.
17  ████ Telesocial claims that ████████████████████████████████
18  ████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████
20  ██████████████████  Shannon Pratt, one of the two authors cited in the footnote, wrote that "[i]t
21  is amazing how many 'experts' throw out a number with little or no analysis. Courts tend to

---

[2] None of the cases cited in the Opposition support Kearl's opinion on control premium.  In *Pope & Talbot, Inc. v. C.I.R.*, the Ninth Circuit simply made the general statement that the value of an entire interest in property for tax purposes is greater than the sum of its fractional parts.  162 F.3d 1236, 1242 (9th Cir. 1999).  The Ninth Circuit did not hold that an expert is reliable when he selects without any inquiry an average from a one-page SEC report issued five years before focusing on a different industry.  The other cases do not involve Daubert challenges.  They pertain to the use of a control premium in other contexts.  *Estate of Godley v. Comm'r*, 286 F.3d 210 (4th Cir. 2002); *Philip Morris Inc. and Consol. Subsidiaries v. C.I.R.*, 96 T.C. 606, 628 (1991).

reject such unsupported conclusions." SHANNON P. PRATT, BUSINESS VALUATION DISCOUNTS AND PREMIUMS 319 (2001).  Pratt further wrote that "many appraisal reports simply apply a discount or premium based on the averages without analysis of why the discount or premium applicable to the subject should be at, above, or below the average." *Id.*  Indeed, Pratt states: "Clearly, the existence of an acquisition premium and its magnitude is a facts and circumstances test for each individual valuation." *Id*. at 40.  ██████████████████████████████████████████████████████████████████████████████████████.

### III.  TELESOCIAL'S OPPOSITION DOES NOT SAVE KEARL'S REASONABLE ROYALTY OPINION FROM EXCLUSION.

██ **Telesocial's opposition papers provide no explanation** ███████████████████████████████████████████



Telesocial recognizes the basic concept that ████████████████████████████████████████" Opp. at 6. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ It does not take a PhD in economics to appreciate that this makes no sense.  Kearl's failure to tether his reasonable royalty opinion to any semblance of reality is disqualifying.

In *Alcatel USA, Inc. v. Cisco Sys.*, the plaintiff alleged misappropriation of trade secrets by a company called Monterey, and that the abbreviated development schedule of Monterey's product was made possible as a result of such misappropriation.  239 F. Supp. 2d 660, 663-64 (E.D. Tex. 2002).  The Plaintiff claimed that being fast to the market increased the likelihood of AT&T selecting Monterey as a supplier and increased the likelihood of Monterey being acquired by Cisco.  *Id.*  Cisco acquired Monterey, but then cancelled the product after losing AT&T as a potential customer.  *Id.*  Alcatel brought suit for trade secrets misappropriation and

1    argued that its damages could be measured by a reasonable royalty. *Id.* at 665-669. The court

2    held that Alcatel's damages theory was speculative and unreliable: "Alcatel's theory, which is

3    contingent upon numerous dubious and tenuous inferences, speculates in some cases that any

4    one of the alleged trade secrets, such as trade secrets 4, 7, or 9, is essentially worth the purchase

5    price of Monterey because had Monterey not misappropriated any of these alleged trade

6    secrets, it would not have developed a prototype of the Wavelength Router in sufficient time to

7    have been displayed at the SuperComm Trade Show. . . . In the Court's opinion, these

8    assumptions and opinions, all of which serve as the foundation for Alcatel's damage theory, are

9    simply too speculative." *Id.* at 668. The same analysis should apply here – Telesocial's

10   damages theory is even more speculative; ████████████████████████████████

11   ████████████████████████████████.

12              B.      Kearl has ████████████ despite Telesocial's implicit concession
13                      he was required to do so.

14              Courts must exercise their "gatekeeping authority to ensure that only theories

15   comporting with settled principles of apportionment [are] allowed to reach the jury." *VirnetX,*

16   *Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014); *Garretson v. Clark,* 111 U.S. 120, 121

17   (1884) ("patentee must in every case give evidence tending to separate or apportion the

18   defendant's profits and the patentee's damages between the patented feature and the unpatented

19   features, and such evidence must be reliable and tangible, and not conjectural or speculative . . .

20   ."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012); *Alcatel* at

21   671-72; *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 U.S. Dist. LEXIS 46106, at *43-44

22   (N.D. Cal. 2015).

23              Telesocial implicitly concedes that Kearl was required to apportion ████████

24   ████████████████████. Opp. at 7. However, what Telesocial describes in that

25   section ████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27
     DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE KEARL OPINIONS /
28                                  No. 3:14-cv-03985-JD                                              6

1
2
3
4
5
6
7           Telesocial claims misappropriation of ███████. So, by definition, the damages
8    analysis must connect the royalty to ████████████████████████████████████████
9    ████████████████████████████████████████████████████████████████████████████
10   ████████████████████████████████████████████████████████████████████████████.
11          Faced with that fatal flaw, Telesocial falls back on the claim that Kearl's opinion is
12   reliable ████████████████. Opp. at 8-9.  But this is not the correct legal standard.
13   As the Federal Circuit held in *VirnetX*, "when claims are drawn to an individual component of
14   a multi-component product, it is the exception, not the rule, that damages may be based upon
15   the value of the multi-component product." *VirnetX*, 767 F.3d at 1326 (citing *LaserDynamics*,
16   694 F.3d at 67-68).    The entire market value rule is a "narrow exception" that only applies if
17   the patentee or owner of the trade secret shows that these features constitute the basis for
18   customer demand.  *LaserDynamics*, 694 F.3d at 67.  ████████████████████████████
19   ████████████████████████████████████████████████. "Whether 'viewed as valuable,
20   important, or even essential,' the patented features must be separated." *VirnetX*, 767 F.3d at
21   1329 (citing *LaserDynamics*, 694 F.3d at 68).
22          The Court should follow the analysis in *VirnetX* and *Laser Dynamics*.  "[D]isclosure to
23   the jury of overall product revenues 'cannot help but skew the damages horizon for the jury,
24   regardless of the contribution of the patented component to this revenue.'" *LaserDynamics*,
25   694 F.3d at 68 (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir.
26
27
28   DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE KEARL OPINIONS /
     No. 3:14-cv-03985-JD                                                                      7

1   2010)).  This is especially true where, as here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *VirnetX*,

3   767 F.3d at 1329 (because expert did not "'carefully tie proof of damages to the claimed

4   invention's footprint in the marketplace,'" testimony on the royalty base under this approach

5   "was inadmissible and should have been excluded." (quoting *ResQNet.com, Inc. v. Lansa Inc.,*

6   594 F.3d 860, 869 (Fed. Cir. 2010)); *Cornell Univ. Hewlett Packard Co.*, 609 F. Supp. 2d 279,

7   287-90 (N.D.N.Y. 2009) ("it is the duty of the court to ensure that estimates are tied to demand

8   for the claimed invention and proper economic methodologies, not just numbers in an

9   accounting format.").

> **C.   The Opposition demonstrates that Kearl's methodology is a black box.**

Telesocial's Opposition claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 11.  That is false, as the Court can plainly see ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "appears to have been plucked out of thin air based on vague qualitative notions."  *See LaserDynamics,* 694 F.3d at 69; Mot. at 9.

Telesocial's reliance on *Fujifilm*, *Comcast*, and *Veritas* is misguided.  In *Fujifilm*, the

---

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

expert not only opined on the parties respective bargaining positions, but he specifically investigated customary R&D expenditures and royalties as a percentage of profits and opined that it was "reasonable to conclude that Motorola would have passed at least 10 percent of incremental profits from the patents in suit to Fujifilm in the form of royalties." *Fujifilm*, 2015 U.S. Dist. LEXIS 46106, at *40-42. The court held that "[v]iewed in a vacuum, [the expert's] Georgia-Pacific analysis might be too generalized to support his royalty rate opinion. But that analysis combined with [the expert's] review of Motorola's research and development expenses makes the 10 percent figure sufficiently linked to 'the relevant facts and circumstances of [this case] to be presented to the jury.'" *Id.* at 42 (citing *Uniloc*, 632 F.3d at 1318). In contrast, Kearl offered [REDACTED] and the quantitative analysis that the court found critical in Fujifilm is precisely what is lacking here. Telesocial claims that *Comcast IP Holdings I, LLC v. Sprint Commc'ns* supports the proposition [REDACTED]. But the expert in that case started with an actual patent transaction. 2015 U.S. Dist. LEXIS 104367, at *20 (D. Del. Aug. 10, 2015). She "adjusted her figure to arrive at her opined damage award" based on an analysis of the well-accepted *Georgia-Pacific* factors. *Id.* In *Veritas*, the District Court for the Western District of Washington held that the expert had adequately applied the Georgia-Pacific factors because he started his analysis by considering actual prior licensing transactions "and then engaged in over 50 pages of analysis regarding the effect of each of the Georgia-Pacific factors on that starting point." *Veritas Operating Corp v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 112135, at *19 (W.D. Wash. Feb. 26, 2008). [REDACTED]

**D.** **Telesocial's Opposition misstates Kearl's Report and**  **at the time of the alleged misconduct.**

Telesocial claims that ▮▮▮. Opp. at 14. This is false – ▮▮▮ *LaserDynamics,* 694 F.3d at 75 (key element is the necessity to return to the date when the infringement began.); *Alcatel*, 239 F. Supp. 2d at 670. ▮▮▮; *LaserDynamics,* 694 F.3d at 79 (expert should be excluded where the opinion could not "be reconciled with the actual licensing evidence;"); *Alcatel USA, Inc.*, 239 F. Supp. 2d at 673 (pointing out that "Alcatel has not presented any evidence of previous licenses into which it entered, or offered to enter, with other comparable companies based on this or similar technology").

## CONCLUSION

For all the foregoing reasons, Orange requests that the Court grant this Motion and issue an order prohibiting James R. Kearl from offering any of the opinions in his Rule 26 report.

                                        Respectfully submitted,

                                        ORANGE, S.A., et al.

                                        By their attorneys,

                                        /s/ Anthony D. Mirenda
                                        Anthony D. Mirenda
                                        FOLEY HOAG LLP

                                        Dated:   January 25, 2017

FILER'S ATTESTATION

      Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Daralyn J. Durie, attest that concurrence in the filing of this document has been obtained.

/s/ Daralyn J. Durie
Daralyn J. Durie

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE KEARL OPINIONS / No. 3:14-cv-03985-JD            11