DURIE TANGRI LLP
  Daralyn J. Durie (SBN 169825)
  ddurie@durietangri.com
217 Leidesdorff Street
San Francisco, California, 94111
+1 (415) 362-6666
+1 (415) 236-6300 facsimile

*Attorneys for Orange, S.A.*

FOLEY HOAG LLP
  Daniel Schimmel (*pro hac vice*)
  dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, New York, 10036
+1 (646) 927-5500
+1 (646) 927-5599 facsimile

  Anthony Mirenda (*pro hac vice*)
  amirenda@foleyhoag.com
Seaport West
155 Seaport Boulevard
Boston, MA 02210
+1 (617) 832-1220
+1 (617) 832-7000 facsimile

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ORANGE S.A., et al.,<br><br>        Defendants. | Case No. 3:14-cv-03985-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 3 TO PRECLUDE PLAINTIFF FROM PRESENTING EVIDENCE, TESTIMONY, OR ARGUMENT CONCERNING AN ANTICIPATION BUSINESS PLAN FOR AN UNLAUNCHED, NON-COMMERCIALIZED PRODUCT**<br>Final Pretrial Conference: March 23, 2017<br>Ctrm: 11, 19th Floor<br>Judge: Honorable James Donato<br>Trial: April 10, 2017 |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at a time and date to be set by the Court, Defendants Orange S.A. and all individual defendants (collectively, the "Orange Defendants") will and hereby do move *in limine* pursuant to Federal Rule of Civil Procedure 16(b) and Federal Rules of Evidence 401 and 403 to preclude Plaintiff Telesocial ("Telesocial") from introducing into evidence several versions of an internal anticipation business plan (the "Le Drogo Simulation") or offering any related testimony, argument, or other reference at trial as irrelevant and confusing.[1]  This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, the supporting Declaration of Anthony Mirenda, all pleadings and papers on file in this action, and such further evidence, argument, and exhibits that may be submitted to the Court at or before the hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES

Between March and June 2013, Catherine Le Drogo, a marketing official at Orange Technocentre and one of the primary sponsors of Party Call within Orange, created a series of internal simulations, called "anticipation business plans" (the "Le Drogo Simulation").  The Le Drogo Simulation was designed to demonstrate to her colleagues internally that there was a possible return on investment on Party Call, provided that (1) a trial or "Friendly User Test" (the "FUT") determined that there was sufficient interest from customers in France, and (2) the relevant Orange operating subsidiaries were persuaded to adopt Party Call.  The Le Drogo Simulation was prepared seven to ten months *after* Orange's alleged misappropriation occurred.  Ms. Le Drogo hoped for a successful product, and her simulation was based on two assumptions that never came

---

[1] The Orange Defendants separately filed a motion to exclude the opinions and testimony of James Kearl, which is pending. (Dkt. No. 204).  While Kearl relies on the Le Drogo Simulation in his analysis, that motion challenges his opinions under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); Orange is not duplicating those arguments here and does not waive them.  In the instant motion, the Orange Defendants seek to exclude the Le Drogo Simulation itself as well as testimony by any witness concerning those projections.   A sample version of the Le Drogo Simulation is included as an exhibit to the supporting Declaration of Anthony Mirenda.

to pass: (1) successful FUT results demonstrating customer interest, and (2) Facebook's agreement to a partnership with Orange, making Party Call immediately available to all Facebook users around the world, without the need for them to download an application. In 2014, the FUT results showed lack of customer interest, and Facebook declined Orange's proposed partnership. Orange did not commercially launch Party Call and never earned any revenues. Telesocial's damages theory, however, is entirely based on the speculative Le Drogo Simulation, and Orange anticipates that Telesocial will seek to introduce this document. Based on that document and certain additions by Telesocial's counsel, Telesocial claims that the value of Party Call to Orange was $100 million.

According to Telesocial, Orange's alleged misappropriation began in September 2012 and continued until November or December 2012. By September 2012, Telesocial had exchanged draft contracts with only two telecom operators, Orange and Deutsche Telekom. Both contracts exclusively contemplated a short term trial in France and Germany. In August 2012, Telesocial sent a draft contract to Deutsche Telekom seeking payment of 50,000 euros for a trial in Germany. In July 2012, Telesocial and Orange exchanged draft term sheets for a trial in France. The negotiations between Orange and Telesocial broke down shortly after Telesocial sought payment of 850,000 euros for a trial, after initially mentioning a range of 60,000 to 75,000 euros. These are the only two real world draft contracts that Telesocial discussed with a potential customer, and both were negotiated shortly before the alleged misappropriation began.

**Argument**

Speculative business plans for an unlaunched, non-commercialized product are not relevant and are likely to mislead the jury and create confusion. While Telesocial might obviously prefer to use the rosier, if incorrect, Le Drogo Simulation for Party Call, this is no reason to displace the requirement that evidence is relevant only where "it has any tendency to make a fact more or less probable than it would without the evidence." Fed. R. Evid. 401. Nothing about the Le Drogo Simulation aids the fact-finding process—if anything, the Le Drogo Simulation only distracts from that process, by introducing simulations that were conditioned on the occurrence of two preconditions that never actually occurred.

In *McMahan Securities Co.*, the court excluded a prospective business plan for a product that was never launched where the business plan depended on unrealized assumptions and where "it [was] clear in hindsight that the April 2004 Business Plan was a 'best case scenario prediction' for the prospective launch of the Adult Brand." *McMahan Secs. Co. L.P. v. FB Foods, Inc.*, No. 04-1791, 2007 U.S. Dist. LEXIS 14921, *15 (M.D. Fl. Mar. 2, 2007), *see also Cardiac Pacemakers, Inc. v Aspen II Holding Co.*, No. 04-4048, 2006 U.S. Dist. LEXIS 27954, *16-17 (D. Minn. May 8, 2006) (precluding reference to Defendant's abandoned business plan under Rules 401, 402, and 403). Le Drogo modeled an analysis that forecasted the launch and commercialization of a product that never materialized. The very premise of the Le Drogo Simulation supports its exclusion because it is unhelpful in understanding any issue in the case. *See Gardner v. Fed. Express Corp.*, No. 14-01082, 2015 U.S. Dist. LEXIS 136513, *6 (N.D. Cal. Oct. 6, 2015) (granting plaintiff's motion *in limine* where the "probative value of such evidence is substantially outweighed by a danger of confusing the issues and/or misleading the jury with respect to the distinct issue of Plaintiff's damages). Nothing is gained from understanding that, at one point in time, Le Drogo hoped for a successful launch of a product it pitched internally to other Orange operating subsidiaries. However, these projections invite confusion between the actual state of affairs—no launch, no revenues, and no profits—and the hypothetical state of affairs—launch, revenues, and profits—and the Le Drogo Simulation should be excluded.[2]

## CONCLUSION

For all the foregoing reasons, Orange respectfully requests that the Court grant this Motion and preclude Telesocial from offering the Le Drogo Simulation into evidence or offering any related testimony, argument, or other reference at trial.

Respectfully submitted,

---

[2] The Le Drogo Simulation is also not relevant because it was prepared seven to ten months after the alleged misappropriation began. The only relevance of this document is as it relates to a hypothetical negotiation for a reasonable royalty, but the case law makes clear that the relevant time period is when the alleged misappropriation began, and that speculative projections are inadmissible. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75, 80 (Fed. Cir. 2012); *Alcatel USA, Inc. v. Cisco Sys.*, 239 F. Supp. 2d 660, 672-73 (E.D. Tex. 2002).

|   |   |
|---|---|
| | ORANGE, S.A., et al. |
| | By their attorneys, |
| | Daniel Schimmel (*pro hac vice*) |
| | Anthony Mirenda (*pro hac vice*) |
| | |
| | */s/ Anthony D. Mirenda* |
| | Anthony D. Mirenda |
| | FOLEY HOAG LLP |

Dated: February 23, 2017

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Daralyn J. Durie, attest that concurrence in the filing of this document has been obtained.

*/s/ Daralyn J. Durie*

Daralyn J. Durie