1  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
2     Kevin P.B. Johnson (Bar No. 177129)
      kevinjohnson@quinnemanuel.com
3     Todd M. Briggs (Bar No. 209282)
      toddbriggs@quinnemanuel.com
4     David E. Myre (Bar No. 304600)
      davidmyre@quinnemanuel.com
5  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
6  Telephone:    (650) 801-5000
   Facsimile:    (650) 801-5100
7
   QUINN EMANUEL URQUHART &
8  SULLIVAN, LLP
      Edward J. DeFranco (Bar No. 165596)
9     eddefranco@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
10 New York, New York 10010
   Telephone:    (212) 849-7000
11 Facsimile:    (212) 849-7100

12 SINGER / BEA LLP
      Benjamin L. Singer (Bar No. 264295)
13    bsinger@singerbea.com
      Renee Bea (Bar No. 268807)
14    rbea@singerbea.com
   601 Montgomery Street, Suite 1950
15 San Francisco, California 94111
   Telephone: (415) 500-6080
16 Facsimile: (415) 500-7080

17 *Attorneys for Plaintiff*
   TELESOCIAL, INC.
18
                    UNITED STATES DISTRICT COURT
19
                 NORTHERN DISTRICT OF CALIFORNIA
20
                      SAN FRANCISCO DIVISION
21

22 | TELESOCIAL, INC.,        | CASE NO. 3:14-CV-03985-JD |
   |                          |                           |
   |           Plaintiff,     | **TELESOCIAL'S TRIAL BRIEF** |
23 |                          |                           |
   |        vs.               | Judge:   Hon. James Donato |
24 |                          | Crtrm.:  11, 19th Floor    |
   | ORANGE S.A., et al.,     |                           |
25 |                          | Action Filed:   Sept. 2, 2014 |
   |           Defendants.    | FAC Filed:      Dec. 15, 2014 |
26 |                          | Trial Date:     April 10, 2017 |

27

28

1     Pursuant to Paragraph 4 of this Court's Standing Order for Civil Jury Trials, Plaintiff

2  Telesocial, Inc. ("Telesocial") hereby submits this Trial Brief "specifying each cause of action and

3  defense remaining to be tried along with a statement of the applicable legal standard."

4  **I.     INTRODUCTION**

5     Telesocial asserts claims against Defendants for violations of the Federal Computer Fraud and

6  Abuse Act ("CFAA") (Count I), violations of the California Comprehensive Computer Data Access

7  and Fraud Act ("CCDAFA") (Count II), breach of the Telesocial Terms of Use (Count III), breach of

8  the covenant of good faith and fair dealing implied in the Telesocial Terms of Use (Count IV),

9  misappropriation of Telesocial's trade secrets (Count V), and unfair competition against Defendant

10  Orange, S.A. (Count VI).

11     On January 25, 2017, Defendants moved for summary judgment seeking complete dismissal of

12  all six of Telesocial's claims.  (D.E. 198).  At a hearing on March 9, 2017, the Court denied

13  Defendants' motion for summary judgment in its entirety as to four of those claims, upholding

14  Telesocial's Count I (CFAA), Count II (CCDAFA), Count V (trade secret misappropriation), and

15  Count VI (unfair competition).

16     The Court granted, in part, Defendants' motion for summary judgment as to Count III (breach

17  of contract) and Count IV (breach of the covenant of good faith and fair dealing), imposing some

18  limitations on those claims.[1]   The causes of action and defenses remaining to be tried in this case,

19  along with a statement of the applicable legal standard are set forth below.

20  **II.    TELESOCIAL'S CAUSES OF ACTION**

21     **A.     Federal Computer Fraud and Abuse Act**

22     Telesocial alleges that Orange and each of the Individual Defendants violated three separate

23  provisions of the Federal Computer Fraud and Abuse Act ("CFAA"): 18 U.S.C. §1030(a)(2)(C),

24  (a)(4), and (b).  The applicable legal standard for this cause of action is set forth in 18 U.S.C. §1030,

25  et seq.

26  

---

27  [1]  Telesocial has not yet received a transcript of the hearing this morning on Defendants' motion for summary judgment, nor a written ruling on the motions, and thus reserves all rights regarding the
28  scope of its claims pending receipt of a final order on those claims, including Counts III and IV.

1   (a) Whoever—

2   * * * * *

3   (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains--

4

5   * * * * *

6   (C) information from any protected computer;

7   * * * * *

8   (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct

9   furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the

10   value of such use is not more than $5,000 in any 1-year period;

11   * * * * *

12   shall be punished as provided in subsection (c) of this section.

13

14   (b) Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

15

16   **B.      California Comprehensive Computer Data Access and Fraud Act**

17   Telesocial alleges that Orange and each of the Individual Defendants violated four separate

18   provisions of California Penal Code Section 502, known as the California Computer Data Access and

19   Fraud Act ("CDAFA"): Section 502(c)(1), 502(c)(2), 502(c)(6), and 502(c)(7) as well as conspiracy to

20   violate these provisions.  The applicable legal standard for this cause of action is set forth in Cal. Pen.

21   Code § 502(c), et seq. and cases applying this statute.  *See, e.g.*, *Facebook, Inc. v. Power Ventures,*

22   *Inc.*, 828 F.3d 1068, 1079 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016).

23   Section 502(c) provides:

24   (c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

25

26   (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in

27   order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

28

1

2

3

    (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

4

    * * * * *

5

6

    (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

7

8

    (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

9

**C.    Breach of Contract**

10

    Telesocial alleges that Orange and each of the Individual Defendants are liable for breach of

11

contract.  Specifically, Telesocial alleges that Orange and each of the Individual Defendants agreed to

12

Telesocial's Terms of Use prior to gaining access to Telesocial's Call Friends application.

13

Telesocial's Terms of Use state: "All use of the Telesocial API, its code, any docs, SDK™, content,

14

and related materials made available to you is subject to and must comply with these Terms of Use."

15

The Terms of Use further require that registered users agree "not [to] enable the following":

16

"[s]elling, renting, leasing, subleasing, sub licensing, distributing, reselling or in any other way

17

publishing the Telesocial API or service to any third parties which may develop derivative works

18

without our approval"; "use [of] the service in any competitive purpose"; and "use of the service in

19

any way that is unlawful."  The Terms of Use further provide, in Section 2, restrictions on "Use of the

20

Telesocial Network" as follows:  "Use of the Telesocial service should not include reverse

21

engineering the system or service or doing malicious things to our features, functionality and service

22

via our API and SDK.  You will not attempt to sabotage the Telesocial service, interfere with it,

23

attempt to disrupt or disable any of our API servers or conduct any attacks.  Your use of the Service

24

may be terminated at any time for any reason whatsoever, and you must respect the Intellectual

25

Property contained within our site and Service."

26

    To determine whether a binding contract has been formed over the Internet, the dispositive

27

questions are (1) did the offeror provide reasonable notice of the proposed terms, and (2) did the

28

offeree unambiguously manifest asset to those terms. Telesocial must show either that: (1) the

1   Defendant had actual notice of the Terms of Use; or (2) the Defendant had constructive notice of the

2   Terms of Use, which means that the notice on Telesocial's website or application would have put a

3   reasonably prudent user on inquiry notice of the terms of the contract, based on the design and content

4   of Telesocial's website or application.  Each Defendant contends that a contract was not created

5   because they never manifested asset to the terms of Telesocial's Terms of Use.  To overcome this

6   contention for any particular Defendant, Telesocial must prove that the Defendant acknowledged the

7   agreement before proceeding to use Telesocial's application.  While passively viewing a website does

8   not manifest assent to an agreement, clicking a dual-purpose box that requires a user to agree to the

9   Terms of Use on a website is sufficient to form a contract.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d

10   1171 (9th Cir. 2014); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal.

11   2016).

12         **D.      Breach of Covenant of Good Faith and Fair Dealing**

13         Telesocial alleges that Orange and each of the Individual Defendants are liable for breach of

14   the covenant of good faith and fair dealing.  Telesocial and Defendants were parties to the Terms of

15   Use, and Defendants owed a duty of good faith and fair dealing to Telesocial arising therefrom.

16   Telesocial abided by the Terms of Use.  Defendants breached their duty of good faith and fair dealing

17   by unfairly interfering with Telesocial's right to receive the benefits of the Terms of Use.  In

18   particular, Defendants unfairly interfered with Telesocial's right to restrict access to legitimate users

19   and/or limit use of the Telesocial's Call Friends application only for lawful and noncompetitive

20   purposes, and in such a manner that Telesocial API or service would not be distributed or any other

21   way published to any third parties that may develop derivative works without Telesocial's approval.

22         To establish this claim, Telesocial must prove the following by a preponderance of the

23   evidence: (1) that Telesocial and the Defendant entered into a contract; (2) that Telesocial did all, or

24   substantially all of the significant things that the contract required it to do; (3) that the Defendant

25   unfairly interfered with Telesocial's right to receive the benefits of the contract; and (4) that Telesocial

26   was harmed by the Defendant's conduct.  *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349–350

27   (2000).

28

TELESOCIAL'S TRIAL BRIEF

1    **E.**  **California Uniform Trade Secrets Act**

2    Telesocial alleges that Orange and each of the Individual Defendants are liable for

3 misappropriation of Telesocial's trade secrets.  The applicable legal standard for this cause of action is

4 set forth in Cal. Civ. Code § 3426, et seq.  "Trade secret misappropriation occurs whenever a person:

5 (1) acquires another's trade secret with knowledge or reason to know 'that the trade secret was

6 acquired by improper means' (§ 3426.1, subd. (b)(1)); (2) discloses or uses, without consent, another's

7 trade secret that the person '[u]sed improper means to acquire knowledge of' (id. subd. (b)(2)(A)); (3)

8 discloses or uses, without consent, another's trade secret that the person, '[a]t the time of disclosure or

9 use, knew or had reason to know that his or her knowledge of the trade secret was' (a) '[d]erived from

10 or through a person who had utilized improper means to acquire it' (id. subd. (b)(2)(B)(i)), (b)

11 '[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use' (id. subd.

12 (b)(2)(B)(ii)), or (c) '[d]erived from or through a person who owed a duty to the person seeking relief

13 to maintain its secrecy or limit its use' (id. subd. (b)(2) (B)(iii)); or (4) discloses or uses, without

14 consent, another's trade secret when the person, '[b]efore a material change of his or her position,

15 knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by

16 accident or mistake' (id. subd. (b)(2)(C))." *DVD Copy Control Assn., Inc. v. Bunner*, 31 Cal.4th 864,

17 874 (2003);  *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 171 Cal. Rptr. 3d 714, 725-27 (Cal. Ct.

18 App. 2014).

19    **F.**  **California Unfair Competition Law**

20    Telesocial alleges that Orange violated the California Unfair Competition Law.  Under this

21 law, an "unlawful business act or practice" may include any business practice that violates state or

22 federal law.  Orange violated the California Unfair Competition Law by engaging in the following:

23 (1) violating and/or causing their agents and employees to violate the Federal Computer Fraud and

24 Abuse Act; (2) violating and/or causing their agents and employees to violate the California

25 Comprehensive Computer Data Access and Fraud Act; and (3) using and/or causing their agents and

26 employees to use fictitious names and identities to conceal the aforementioned violations whether

27 intentionally or negligently. *See* Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A.*

28 *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1992); *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-

1   39 (Cal. Ct. App. 1994) ("The 'unlawful' practices prohibited by section 17200 are any practices

2   forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-

3   made."); William L. Stern, Bus. & Prof. C. §17200 Practice, § 3:56 (2010) (paraphrased).

4   **III.   DEFENDANTS' DEFENSES**

5      **A.   Federal Computer Fraud and Abuse Act**

6      Defendants deny that they meet certain elements of the Federal Computer Fraud and Abuse

7   Act, but do not raise any affirmative defenses to this claim.  (D.E. 235 at 5).

8      **B.   California Comprehensive Computer Data Access and Fraud Act**

9      Defendants deny that they meet certain elements of the California Computer Data Access

10  and Fraud Act, but do not raise any affirmative defenses to this claim.  (D.E. 235 at 6).

11     **C.   Breach of Contract**

12     Defendants deny that they meet certain elements of Telesocial's breach of contract claim.

13  Defendants also raise the affirmative defense of failure to mitigate damages. (D.E. 235 at 8-9).

14     **D.   Breach of Covenant of Good Faith and Fair Dealing**

15     For Telesocial's breach of the covenant of good faith and fair dealing claims, Defendants

16  raise the same defenses that they raise for Telesocial's breach of contract claims.  (D.E. 235 at 8-

17  9).

18     **E.   California Uniform Trade Secrets Act**

19      Defendants deny that they meet certain elements of Cal. Civ. Code § 3426.  In addition,

20  Defendants raise the affirmative defense that Telesocial's trade secrets were "readily available."

21  *See San Jose Constr. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1542-43 (Cal. App. Ct. 2007).

22  Specifically, Orange contends "trade secrets" were publicly available and ascertainable through

23  the normal use of the publicly available Call Friends application.  Orange agrees that it bears the

24  burden of proof on this claim.  (D.E. 235 at 7-8).

25     **F.   California Unfair Competition Law**

26     Defendants have not raised any specific defenses to this claim.  (D.E. 235 at 8).

27  Defendants moved for summary judgment seeking a finding that Telesocial's unfair competition

28

1   claims are preempted by its trade secret misappropriation claims, but the Court denied Defendants'

2   motion at the March 9, 2017 hearing.

3   Respectfully submitted,

4

5   TELESOCIAL, INC.

6   By its attorneys,

7   */s/ Todd M. Briggs*
    Todd M. Briggs
8   QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
9
    Dated:  March 9, 2017
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28