QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Todd M. Briggs (Bar No. 209282)
toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile:  (650) 801-5100
*Attorneys for Plaintiff*

DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
MICHAEL H. PAGE (SBN 154913)
mpage@durietangri.com
CLEMENT S. ROBERTS (SBN 209203)
croberts@durietangri.com
JAMES S. TSUEI (SBN 285530)
jtsuei@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

FOLEY HOAG LLP
DANIEL SCHIMMEL (*pro hac vice*)
dschimmel@foleyhoag.com
ANTHONY MIRENDA (*pro hac vice*)
amirenda@foleyhoag.com
Americas Tower
1177 Avenue of the Americas
New York, NY 10036
Telephone:    646-927-5500
Facsimile:    646-927-5599
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL INC., | Case No. 3:14-cv-03985-JD |
| Plaintiff, | **[PROPOSED] JOINT JURY INSTRUCTIONS** |
| v. | Ctrm:   11, 19th Floor |
| ORANGE S.A., *et al.*, | Judge:  Honorable James Donato |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

STIPULATED INSTRUCTION NO. 65 RE:  DUTY OF JURY .......................................................1

STIPULATED INSTRUCTION NO. 66 RE:  CLAIMS AND DEFENSES ................................2

DISPUTED INSTRUCTION NO. 3 RE: RELEVANT TIME PERIOD—OFFERED BY
        DEFENDANTS ...................................................................................................................4

STIPULATED INSTRUCTION NO. 4 RE:  BURDEN OF PROOF—
        PREPONDERANCE OF THE EVIDENCE...................................................................8

STIPULATED INSTRUCTION NO. 5 RE:  BURDEN OF PROOF—CLEAR AND
        CONVINCING EVIDENCE..........................................................................................9

STIPULATED INSTRUCTION NO. 6 RE:  DIFFERENT LEGAL RIGHTS ..............................10

STIPULATED INSTRUCTION NO. 7 RE:  WHAT IS EVIDENCE ...........................................11

STIPULATED INSTRUCTION NO. 8 RE:  WHAT IS NOT EVIDENCE ..................................12

STIPULATED INSTRUCTION NO. 9 RE:  DIRECT AND CIRCUMSTANTIAL
        EVIDENCE ...................................................................................................................13

STIPULATED INSTRUCTION NO. 10 RE:  CREDIBILITY OF WITNESSES.........................14

STIPULATED INSTRUCTION NO. 11 RE:  CONDUCT OF CORPORATIONS ......................16

STIPULATED INSTRUCTION NO. 12 RE:  NO TRIAL TRANSCRIPT AVAILABLE
        TO JURY.......................................................................................................................17

STIPULATED INSTRUCTION NO. 13 RE:  TAKING NOTES.................................................18

STIPULATED INSTRUCTION NO. 14 RE:  QUESTIONS TO WITNESSES BY
        JURORS ........................................................................................................................19

STIPULATED INSTRUCTION NO. 15 RE:  FOREIGN LANGUAGE TESTIMONY ..............20

STIPULATED INSTRUCTION NO. 16 RE:  USE OF INTERROGATORIES ...........................21

STIPULATED INSTRUCTION NO. 17 RE:  USE OF REQUESTS FOR ADMISSION ............22

STIPULATED INSTRUCTION NO. 18 RE:  EXPERT OPINION .............................................23

STIPULATED INSTRUCTION NO. 19 RE:  CHARTS AND SUMMARIES NOT
        RECEIVED IN EVIDENCE.........................................................................................24

STIPULATED INSTRUCTION NO. 20 RE:  CHARTS AND SUMMARIES ADMITTED
        INTO EVIDENCE ........................................................................................................25

STIPULATED INSTRUCTION NO. 21 RE:  CORPORATIONS AND
        PARTNERSHIPS—FAIR TREATMENT ...................................................................26

Case No. 3:14-cv-03985-JD

[PROPOSED] JOINT JURY INSTRUCTIONS

STIPULATED INSTRUCTION NO. 22 RE: DAMAGES—PROOF ..........................................27

STIPULATED INSTRUCTION NO. 23 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT..................................................................................................28

DISPUTED INSTRUCTION NO. 24 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—DEFINITIONS—OFFERED BY PLAINTIFF
        TELESOCIAL..............................................................................................29

DISPUTED INSTRUCTION NO. 24 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—DEFINITIONS—OFFERED BY DEFENDANTS .....................31

STIPULATED INSTRUCTION NO. 25 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—SECTION 1030(a)(2)(C) .................................................35

STIPULATED INSTRUCTION NO. 26 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT COMPUTER FRAUD—SECTION 1030(a)(4) .............................36

STIPULATED INSTRUCTION NO. 27 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—CONSPIRACY ......................................................................37

DISPUTED INSTRUCTION NO. 28 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—INTENT TO DEFRAUD DEFINED—OFFERED BY
        PLAINTIFF TELESOCIAL...........................................................................39

DISPUTED INSTRUCTION NO. 28 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—INTENT TO DEFRAUD DEFINED—OFFERED BY
        DEFENDANTS.............................................................................................40

STIPULATED INSTRUCTION NO. 29 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—KNOWINGLY DEFINED ................................................43

STIPULATED INSTRUCTION NO. 30 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—DAMAGES ........................................................................44

STIPULATED INSTRUCTION NO. 31 RE: FEDERAL COMPUTER FRAUD AND
        ABUSE ACT—DAMAGES: GOODWILL DEFINED .........................................45

STIPULATED INSTRUCTION NO. 32 RE: CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT........................................................................46

DISPUTED INSTRUCTION NO. 33 RE: CALIFORNIA COMPUTER DATA ACCESS
        AND FRAUD ACT—DEFINITIONS—OFFERED BY PLAINTIFF
        TELESOCIAL..............................................................................................47

DISPUTED INSTRUCTION NO. 33 RE: CALIFORNIA COMPUTER DATA ACCESS
        AND FRAUD ACT—DEFINITIONS—OFFERED BY DEFENDANTS ............48

STIPULATED INSTRUCTION NO. 34 RE: CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—SECTION 502(c)(1)............................................51

STIPULATED INSTRUCTION NO. 35 RE: CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—SECTION 502(c)(2)............................................52

STIPULATED INSTRUCTION NO. 36 RE:  CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—SECTION 502(c)(6)............................................53

STIPULATED INSTRUCTION NO. 37 RE:  CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—SECTION 502(c)(7)............................................54

STIPULATED INSTRUCTION NO. 38 RE:  CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—CONSPIRACY ......................................................55

STIPULATED INSTRUCTION NO. 39 RE:  CALIFORNIA COMPUTER DATA
        ACCESS AND FRAUD ACT—DAMAGES............................................................56

STIPULATED INSTRUCTION NO. 40 RE:  BREACH OF CONTRACT—
        INTRODUCTION....................................................................................................57

STIPULATED INSTRUCTION NO. 41 RE:  BREACH OF CONTRACT—
        FORMATION ..........................................................................................................58

STIPULATED INSTRUCTION NO. 42 RE:  BREACH OF CONTRACT—ELEMENTS ..........59

STIPULATED INSTRUCTION NO. 43 RE:  BREACH OF CONTRACT—OFFER AND
        ACCEPTANCE........................................................................................................60

STIPULATED INSTRUCTION NO. 44 RE:  CONTRACT INTERPRETATION—
        MEANING OF ORDINARY WORDS ....................................................................61

STIPULATED INSTRUCTION NO. 45 RE:  CONTRACT INTERPRETATION—
        MEANING OF TECHNICAL WORDS ..................................................................62

STIPULATED INSTRUCTION NO. 46 RE:  CONTRACT INTERPRETATION—
        CONSTRUCTION OF CONTRACT AS A WHOLE ............................................63

DISPUTED INSTRUCTION NO. 47 RE:  CONTRACT INTERPRETATION—
        DEFINITION OF "REVERSE ENGINEERING"—OFFERED BY
        DEFENDANTS ........................................................................................................64

STIPULATED INSTRUCTION NO. 48 RE:  CONTRACT INTERPRETATION—
        CONSTRUCTION AGAINST DRAFTER ............................................................68

STIPULATED INSTRUCTION NO. 49 RE:  BREACH OF IMPLIED COVENANT OF
        GOOD FAITH AND FAIR DEALING— ESSENTIAL FACTUAL
        ELEMENTS ............................................................................................................69

STIPULATED INSTRUCTION NO. 50 RE:  BREACH OF CONTRACT—DAMAGES
        GENERALLY ..........................................................................................................70

DISPUTED INSTRUCTION NO. 51 RE:  BREACH OF CONTRACT—
        CONSEQUENTIAL OR SPECIAL DAMAGES—OFFERED BY
        PLAINTIFF TELESOCIAL..................................................................................71

DISPUTED INSTRUCTION NO. 51 RE:  BREACH OF CONTRACT—
        CONSEQUENTIAL OR SPECIAL DAMAGES—OFFERED BY
        DEFENDANTS........................................................................................................72

DISPUTED INSTRUCTION NO. 51 RE: BREACH OF CONTRACT—LOST PROFITS DAMAGES—OFFERED BY PLAINTIFF TELESOCIAL....................................75

DISPUTED INSTRUCTION NO. 51 RE: BREACH OF CONTRACT—LOST PROFITS DAMAGES—OFFERED BY DEFENDANTS.......................................76

STIPULATED INSTRUCTION NO. 52 RE: MITIGATION OF DAMAGES ............................79

STIPULATED INSTRUCTION NO. 53 RE: NOMINAL DAMAGES ................................80

STIPULATED INSTRUCTION NO. 54 RE: MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION...................................................81

STIPULATED INSTRUCTION NO. 55 RE: MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS ................................82

STIPULATED INSTRUCTION NO. 56 RE: MISAPPROPRIATION OF TRADE SECRETS—"TRADE SECRET" DEFINED ................................84

STIPULATED INSTRUCTION NO. 57 RE: MISAPPROPRIATION OF TRADE SECRETS—SECRECY REQUIREMENT ................................85

STIPULATED INSTRUCTION NO. 58 RE: MISAPPROPRIATION OF TRADE SECRETS—"INDEPENDENT ECONOMIC VALUE" EXPLAINED ................86

STIPULATED INSTRUCTION NO. 59 RE: MISAPPROPRIATION OF TRADE SECRETS—REASONABLE EFFORTS TO PROTECT SECRECY ...................87

DISPUTED INSTRUCTION NO. 60 RE: LABELING INFORMATION A TRADE SECRET—OFFERED BY DEFENDANTS ................................89

STIPULATED INSTRUCTION NO. 61 RE: MISAPPROPRIATION OF TRADE SECRETS—MISAPPROPRIATION BY ACQUISITION...................................92

STIPULATED INSTRUCTION NO. 62 RE: MISAPPROPRIATION OF TRADE SECRETS— IMPROPER MEANS OF ACQUIRING A TRADE SECRET .........93

STIPULATED INSTRUCTION NO. 63 RE: MISAPPROPRIATION OF TRADE SECRETS—MISAPPROPRIATION BY USE .......................................94

STIPULATED INSTRUCTION NO. 64 RE: AFFIRMATIVE DEFENSE— INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS ..................................................................................95

DISPUTED INSTRUCTION NO. 65 RE: MISAPPROPRIATION OF TRADE SECRETS—DAMAGES – OFFERED BY PLAINTIFF TELESOCIAL .............96

DISPUTED INSTRUCTION NO. 65 RE: MISAPPROPRIATION OF TRADE SECRETS—DAMAGES—OFFERED BY DEFENDANTS ................................97

DISPUTED INSTRUCTION NO. 66 RE: MISAPPROPRIATION OF TRADE SECRETS—LOST BUSINESS VALUE—OFFERED BY PLAINTIFF TELESOCIAL................................................................................101

DISPUTED INSTRUCTION NO. 67 RE:  MISAPPROPRIATION OF TRADE
          SECRETS—LOST PROFITS—OFFERED BY PLAINTIFF
          TELESOCIAL ................................................................................105

DISPUTED INSTRUCTION NO. 67 RE:  MISAPPROPRIATION OF TRADE
          SECRETS—LOST PROFITS—OFFERED BY DEFENDANTS ........................106

DISPUTED INSTRUCTION NO. 68 RE:  MISAPPROPRIATION OF TRADE
          SECRETS—UNJUST ENRICHMENT ................................................109

DISPUTED INSTRUCTION NO. 68 RE:  MISAPPROPRIATION OF TRADE
          SECRETS—UNJUST ENRICHMENT ................................................110

STIPULATED INSTRUCTION NO. 69 RE:  NON-DUPLICATIVE DAMAGES ....................113

STIPULATED INSTRUCTION NO. 70 RE:  PUNITIVE DAMAGES—LIABILITY ..............114

STIPULATED INSTRUCTION NO. 71 RE: UNLAWFUL BUSINESS PRACTICES—
          INTRODUCTION ........................................................................116

STIPULATED INSTRUCTION NO. 72 RE: UNLAWFUL BUSINESS PRACTICES—
          DEFINED ...................................................................................117

STIPULATED INSTRUCTION NO. 73 RE:  RETURN OF VERDICT ....................................118

STIPULATED INSTRUCTION NO. 74 RE:  DUTY TO DELIBERATE ..................................119

STIPULATED INSTRUCTION NO. 75 RE:  CONSIDERATION OF EVIDENCE—
          CONDUCT OF THE JURY .............................................................120

STIPULATED INSTRUCTION NO. 76 RE:  COMMUNICATION WITH COURT ................122

**STIPULATED INSTRUCTION NO. 65**
**RE: DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may so or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.4.

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The parties in this case are Plaintiff Telesocial Inc., which we have referred to as Plaintiff or "Telesocial," Defendant Orange S.A., which we have referred to as "Orange," and the following individual defendants:  Anne Benrikhi, Dimitri Delmas, Olivier Godiniaux, Guillaume Guimond, Fabrice Petesch, Jacques Viel, Barbara Bobillier, Benoit Amet, Thomas Lesenechal, Florian De Sa, Antoine Lecoutteux and Sylvain Jaudry.  We have collectively referred to all of the individual defendants as the "Individual Defendants," and all of the Individual Defendants together with Orange as the "Defendants."

Telesocial filed this lawsuit against Orange and the Individual Defendants seeking money damages for (1) violation of the Computer Fraud and Abuse Act, (2) violation of the California Comprehensive Computer Data Access and Fraud Act, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, and (5) misappropriation of trade secrets.  Specifically, Telesocial alleges that Defendants hacked into its servers, breached its Call Friends' Terms of Use and Privacy Policy, and misappropriated its trade secret information.  Telesocial also requests an award of punitive damages.

Orange and the Individual Defendants deny all of these allegations.  Specifically, Orange and the Individual Defendants deny that they violated the Computer Fraud and Abuse Act or the California Comprehensive Computer Data Access and Fraud Act.  Defendants deny that they hacked into Telesocial's servers.  Defendants deny that a contractual agreement was formed between any of the Defendants and Telesocial regarding the Terms of Use.  Defendants maintain that the use of the Call Friends application by any of the Defendants did not breach the Terms of Use and did not breach the implied covenant of good faith and fair dealing.  Defendants deny that they misappropriated any trade secret information from Telesocial.  Defendants deny that Telesocial suffered any damages, and maintain that any award of punitive damages would be inappropriate.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.5.

**DISPUTED INSTRUCTION NO. 3**
**RE: RELEVANT TIME PERIOD—OFFERED BY DEFENDANTS**

You have heard evidence about the parties' relationship prior to August of 2012, including evidence about negotiations between the parties during the summer of 2012. You are not allowed to consider evidence about the relationship and negotiations between the parties prior to August 2012, including evidence about information that may have been exchanged between the parties, in determining whether or not Orange or the Individual Defendants violated the CFAA, CDAFA, breached the Terms of Use, or misappropriated trade secrets.

Authority:

Order Denying Motion to Dismiss, April 28, 2015, Dkt. 85.

**Telesocial's Position:**

This instruction should be stricken in its entirety as improper and unnecessary.  It is the Court's function to rule on the admissibility of relevant evidence during the trial.  The only jury instructions regarding evidence that are proper are Stipulated Instruction Nos. 6 & 7.

Moreover, the proposed instruction is contrary to the law of the case.  In its attempt to invoke the MTD Order (D.E. 85), Orange misrepresents the scope of that Order, and purposefully conflates the question of whether evidence is admissible with the question of whether the NDA's forum clause reaches Telesocial's claims.  These are two different standards.

The jury may consider all relevant and admissible evidence. Fed. R. Evid. 401, 402. Evidence is relevant when it has a "tendency to make a [fact of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401.  There can be little doubt that evidence from the time period leading up to Orange's hacking and theft of trade secrets is relevant under Rule 401's lenient standard of admissibility.  *U.S. v. McVeigh*, 153 F.3d 1166, 1172 (10th Cir. 1998) ("As for the degree of probative value required under Rule 401, the rule sets the bar very low").

Orange's conduct prior to August 31, 2012 is relevant to Orange's intent to thereafter misappropriate Telesocial's trade secrets; provides context explaining the urgency of Orange's hacking, given Orange's promise to deliver those features to Facebook; shows the value that Orange recognized in Telesocial's innovations; and discredits Orange's claims of independent development.  Intent is an issue the fact finder must tackle in connection with Telesocial's computer fraud and abuse claims (see 18 U.S.C. §1030(a); Cal. Penal Code §502), and assessing whether Telesocial is entitled to punitive damages (Cal. Civ. C. §3246.3(c); Cal. Penal Code §§ 502(e)(1), 502(e)(4); CACI 4411 (2016)).  *Torres v. Clark*, No. 10-cv-00339, 2011 WL 2680877, at *6 (E.D. Cal. July 8, 2011) (noting evidence of intent is admissible).

The evidence from the pre-August 2012 time period tends to show that Orange's frantic hacking of Telesocial's servers in September, October, and November 2012 was willful, and intended to solve a problem of Orange's own making—its commitment to deliver to Facebook and the international stage a technology it did not have.  It also betrays that Orange regarded

Telesocial's social calling technology as valuable and desirable, which in turn tends to show the trade secrets Orange needed to power that technology were valuable. (*See* CACI 4412). Orange's interactions with Facebook—including Facebook's positive reaction to Telesocial's technology as compared to Orange's products—also rebuts Orange's anticipated proffer of evidence that PartyCall was built on Orange products in development prior to the alleged hacking and theft.

Nevertheless, Orange attempts to invoke this Court's decision regarding the scope of the NDA's forum clause to manufacture a temporal limitation on evidence. The Court's Order (D.E. 85) does not support this position. The Court found that the NDA's "arising out of or relating to" forum clause did not apply to the claims asserted in the First Amended Complaint ("FAC") (D.E. 37) because they do not require interpretation or adjudication of the NDA. *See* D.E. 85 at 6; *Orange, S.A. v. United States Dist. Court*, 818 F.3d 956, 962-63 (9th Cir. 2016); *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). In reaching its conclusion, the Court not only looked at the claims themselves, but also considered the factual allegations of the FAC, including numerous allegations that described Orange's conduct leading up to its unlawful actions in the Fall 2012. (See D.E. 85; D.E. 37, ¶¶20-23, 29-39). In doing so, the Court has already rejected Orange's prior efforts to stretch the NDA beyond its scope:

> Orange contends that all claims in the FAC trace back to the confidential discussions held under the NDA and are therefore subject to the clause. In essence, Orange argues that once the parties started discussing Call Friends under the NDA, all other events and communications involving the application, including the events alleged in the FAC, necessarily relate to it. To get to that conclusion, Orange must stretch the NDA well past any reasonable application to the facts alleged in the complaint, and too far to be the basis for dismissing this case. (D.E. 85 at 4-5) (emphasis added).

Accordingly, nothing in the MTD Order suggests that the law of the case cuts off the consideration of relevant evidence or events that occurred prior to August 2102. Telesocial must be allowed to present, and the jury must be allowed to consider, relevant evidence prior to August 2012.

**Defendants' Position:**

Orange proposes this instruction to clarify to the jury that evidence of the parties' relationship prior to August 2012 may be considered only for context and that such evidence may not be used to establish substantive liability on the part of the Orange Defendants. This is consistent with this Court's order denying the Orange Defendants' motion to dismiss the First Amended Complaint, in which the Court held that the Orange Defendants' *forum non conveniens* argument did not apply because Telesocial's claims in the First Amended Complaint did "not fall within the scope of the forum selection clause." Docket No. 85 at 4. Concluding that each of Telesocial's claims concerned only the conduct after the termination of the Non-Disclosure Agreement ("NDA") that contained the forum selection clause, this Court limited the scope of evidence bearing on liability to conduct post-dating the termination of the NDA. While the jury will necessarily hear evidence about the parties' relationship prior to the termination of the NDA, it is important that the jury understand that this evidence may not be used to establish liability on any claim. Orange's requested instruction is necessary to align the Court's decision on the Orange Defendant's motion to dismiss with the evidence that will be heard at trial.

**STIPULATED INSTRUCTION NO. 4**
**RE:  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.6.

**STIPULATED INSTRUCTION NO. 5**
**RE:  BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or affirmative defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.7 (modified).

**STIPULATED INSTRUCTION NO. 6
RE:  DIFFERENT LEGAL RIGHTS**

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.


Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.8.

**STIPULATED INSTRUCTION NO. 7**
**RE:  WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.9.

**STIPULATED INSTRUCTION NO. 8**
**RE:  WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  [In addition some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.]

4.    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.10.

**STIPULATED INSTRUCTION NO. 9**
**RE:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.12.

**STIPULATED INSTRUCTION NO. 10**
**RE: CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.     the opportunity and ability of the witness to see or hear or know the things testified to;

2.     the witness's memory;

3.     the witness's manner while testifying;

4.     the witness's interest in the outcome of the case, if any;

5.     the witness's bias or prejudice, if any;

6.     whether other evidence contradicted the witness's testimony;

7.     the reasonableness of the witness's testimony in light of all the evidence; and

8.     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.14.

**STIPULATED INSTRUCTION NO. 11**
**RE:  CONDUCT OF CORPORATIONS**

Both Plaintiff Telesocial Inc. and Defendant Orange S.A. are corporations.  Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority.  An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

Authority:

Adapted from instruction given in *Oracle USA, Inc. v. TomorrowNow, Inc.*, No. 07-cv-1658-PJH, Dkt. No. 968 (N.D. Cal. Nov. 2, 2010).

**STIPULATED INSTRUCTION NO. 12**
**RE:  NO TRIAL TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.17 (modified).

**STIPULATED INSTRUCTION NO. 13**
**RE:  TAKING NOTES**

During trial, you may have taken notes to help you remember the evidence.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.18 (modified).

**STIPULATED INSTRUCTION NO. 14
RE: QUESTIONS TO WITNESSES BY JURORS**

You were allowed to propose written questions to witnesses after the lawyers completed their questioning of each witness. There were some proposed questions [that I did not permit][that I did not ask in the wording submitted]. As I instructed you earlier in the case, this might happen either due to the rules of evidence or other legal reasons, or because the question was expected to be answered later in the case. Do not speculate as to the reasons why this happened.

Similarly, in your deliberations, do not give undue weight to the questions proposed by jurors. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 1.19 (modified).

**STIPULATED INSTRUCTION NO. 15**
**RE:  FOREIGN LANGUAGE TESTIMONY**

You have heard testimony of witnesses who testified in the French language.  Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know the French language, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witnesses' testimony.  You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.8 (modified).

**STIPULATED INSTRUCTION NO. 16**
**RE:  USE OF INTERROGATORIES**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.11.

**STIPULATED INSTRUCTION NO. 17**
**RE:  USE OF REQUESTS FOR ADMISSION**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.12.

**STIPULATED INSTRUCTION NO. 18
RE:  EXPERT OPINION**

You heard testimony from certain witnesses who testified to their opinions and the reasons for those opinions.  This opinion testimony was allowed because of the education and/or experience of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.13 (modified).

**STIPULATED INSTRUCTION NO. 19**
**RE: CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain demonstrative charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Demonstrative charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.14 (modified).

**STIPULATED INSTRUCTION NO. 20**
**RE:  CHARTS AND SUMMARIES ADMITTED INTO EVIDENCE**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 2.15 (modified).

## STIPULATED INSTRUCTION NO. 21
## RE:  CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 4.1.

**STIPULATED INSTRUCTION NO. 22**
**RE:  DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Telesocial on any one of Telesocial's claims, you must determine Telesocial's damages on that claim as to each Defendant.  Telesocial has the burden of proving damages as to each Defendant by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Telesocial for any injury you find was caused by that Defendant.

It is for you to determine what damages, if any, have been proved.  I will instruct you further on damages for each specific claim shortly.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1 (modified).

**STIPULATED INSTRUCTION NO. 23**
**RE: FEDERAL COMPUTER FRAUD AND ABUSE ACT**

Telesocial claims that Orange and each of the Individual Defendants violated three separate provisions of the Federal Computer Fraud and Abuse Act ("CFAA"). I will now instruct you on the law regarding the applicable provisions of the CFAA, and the damages you may award if you find a CFAA violation. If you find that a Defendant violated at least one of the provisions of the CFAA provisions that follow, you should find for Telesocial and against that Defendant on the CFAA claim. If you do not find that a Defendant violated the CFAA, then you must find against Telesocial on its CFAA claim as to that Defendant.

Authority:

None: transitional instruction.

**DISPUTED INSTRUCTION NO. 24**
**RE: FEDERAL COMPUTER FRAUD AND ABUSE ACT—DEFINITIONS—OFFERED BY PLAINTIFF TELESOCIAL**

For purposes of Instruction Nos. 25–27, the following terms have the following meanings:

Access is "without authorization" when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the owner of the computer has rescinded permission to access the computer and the defendant continues to use the computer anyway.

"Exceeds authorized access" means to access a computer with authorization and to use such access to obtain information in the computer that the accesser is not entitled to obtain.

"Computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

"Protected computer" means a computer which is used in or affecting interstate or foreign commerce or communication.

"Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

"Person" means any individual, firm, corporation, or other entity.

"Fraud" means wrongdoing.

Authority:

18 U.S.C. § 1030(e) (2006) (computer, exceeds authorized access, loss, and person) (modified); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072, 1078 (9th Cir. 2004) (citing *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582 n.10 (1st Cir. 2001)) (without authorization); *eBay, Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) (without authorization and fraud); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010)

(without authorization); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008) (fraud); *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1077 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *United States v. Nosal*, 676 F.3d 854, 862-63 (9th Cir. 2012).

**DISPUTED INSTRUCTION NO. 24**
**RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DEFINITIONS—OFFERED BY DEFENDANTS**

For purposes of Instruction Nos. 25–27, the following terms have the following meanings:

A person uses a computer "without authorization" when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the owner of the computer has rescinded permission to access the computer and the defendant continues to use the computer anyway.

A person "exceeds authorized access" when a person accesses a computer with authorization and uses such access to obtain information in the computer that the accesser is not entitled to obtain.  The access to and use of a computer in breach of a terms of use agreement is not a basis to find that a defendant accessed a computer "without authorization" or that a defendant "exceeded authorized access."

Authority:

*Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1077 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *United States v. Nosal*, 676 F.3d 854, 862-63 (9th Cir. 2012).

1 **Telesocial's Position:**

2      Telesocial takes no issue with the definition of "without authorization" in Defendants'

3 instruction.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009).  Nor does

4 Telesocial takes issue with the instruction: "A person 'exceeds authorized access' when a person

5 accesses a computer with authorization and uses such access to obtain information in the computer

6 that the accesser is not entitled to obtain."  18 U.S.C. § 1030(e)(6).

7      However, Defendants' assertion that a "breach of a terms of use agreement is not a basis to

8 find that a defendant accessed a computer 'without authorization' or that a defendant 'exceeded

9 authorized access,'" is an overstatement of the law.   While the court in *Facebook, Inc. v. Power*

10 *Ventures, Inc.*, 828 F.3d 1068, 1077 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016),

11 held that breach of a terms of use may not ***alone*** constitute access without authorization, other

12 courts in this circuit have subsequently recognized that breach of a terms of use coupled with

13 knowledge that those terms prohibited the access at issue, and that the party was not otherwise

14 permitted to continue using a plaintiff's technology, is sufficient to rise to access "without

15 authorization."  *E.g. Oracle USA, Inc. v. Rimini St., Inc.*, 191 F. Supp. 3d 1134, 1149 (D. Nev.

16 2016).

17      Therefore, Telesocial's proposed instruction which does not include this legal argument

18 that Defendants proposed should be used or, at a minimum, the final sentence of Orange's

19 instruction should be stricken.

20

21

22

23

24

25

26

27

28

**Defendants' Position:**

The CFAA is an "anti-hacking statute," not an all-purpose "expansive misappropriation statute." *United States v. Nosal*, 676 F.3d 854, 857-58 (9th Cir. 2012) ["*Nosal I*"] ("the CFAA was concerned with hacking"). Telesocial's definitions of "without authorization" and "exceeds authorized access" are contradicted by case law and contrary to the purpose of the statute and the plain meaning of the terms. Orange's proposed definitions focus the jury on the purpose of the anti-hacking statute and parallel clearly-established authority that the access to and use of a computer in breach of a terms of use agreement is not a basis to find that a defendant accessed a computer "without authorization" or that a defendant "exceeded authorized access."

"Unauthorized access" is "an unambiguous, non-technical term that, given its plain and ordinary meaning, means accessing a protected computed without permission." *United States v. Nosal*, 828 F.3d 865, 868 (9th Cir. 2016) ["*Nosal II*"]. In *Nosal II*, the Ninth Circuit explained that "'[w]ithout authorization' would apply to *outside* hackers (individuals who have no authorized access to the computer at all)." *Id* at 874. In other words, a person is "without authorization" under the CFAA "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009). Telesocial's definition of "without authorization" is misleading as the "reasonable expectations of the party granting permission" is not at issue in determining if a party accessed a protected computer without authorization. Either no permission has been granted or permission has been rescinded.

"Exceeds authorized access" is defined in the statute as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). In the Ninth Circuit, "exceeds authorized use" refers to someone who is "authorized to access only certain data or files but accesses unauthorized data or files – what is colloquially known as 'hacking.'" *Nosal I*, 676 F.3d at 856-57, 858. That is, "the circumvention of technological access barriers." *Id.* at 863.

The Ninth Circuit has held that a defendant does *not* violate the CFAA by violating a company's terms of use restrictions. *Nosal I*, 676 F.3d at 860-62; *Facebook v. Power Ventures, Inc.*, 828 F.3d 1068, 1070 (9th Cir. 2016) ("*Nosal I* makes clear that violation of the terms of use of a website cannot itself constitute access without authorization."). Telesocial's definition that "[a]ccess 'without authorization' includes access and use in violation of the terms of the applicable terms of use agreement" is contrary to this clearly established case law.

Apart from the definitions of "exceeds authorized access" and "without authorization," Defendants do not otherwise dispute Plaintiff's statutory definitions.

## STIPULATED INSTRUCTION NO. 25
## RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—SECTION 1030(a)(2)(C)

Telesocial claims that Orange and each of the Individual Defendants violated Section 1030(a)(2)(c) of the CFAA .  To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following elements by a preponderance of the evidence:

    1.    The Defendant intentionally accessed a Telesocial computer without authorization or exceeded authorized access to a Telesocial computer;

    2.    By accessing the Telesocial computer, the Defendant obtained information from a computer that was used in or affected commerce or communication between one state and another state, or between a state of the United States and a foreign country; and

    3.    The Defendant's actions caused loss to Telesocial of at least $5,000.

The terms "without authorization," "exceeded authorized access," and "loss" were defined in a prior instruction.

Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 8.97 (2010) (modified); 18 U.S.C. §§ 1030(a)(2)(C), 1030(g), and 1030(c)(4)(A)(i)(I).

**STIPULATED INSTRUCTION NO. 26
RE: FEDERAL COMPUTER FRAUD AND ABUSE ACT COMPUTER FRAUD—
SECTION 1030(a)(4)**

Telesocial claims that Orange and each of the Individual Defendants violated Section 1030(a)(4) of the CFAA. To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following elements by a preponderance of the evidence:

1.   The Defendant knowingly accessed without authorization or exceeded authorized access to a Telesocial computer used in or affecting interstate or foreign commerce or communication;

2.   The Defendant did so with the intent to defraud;

3.   By accessing the Telesocial computer without authorization or exceeding authorized access thereto, the Defendant furthered the intended fraud;

4.   By accessing the Telesocial computer without authorization or exceeding authorized access thereto, the Defendant obtained anything of value; and

5.   The Defendant's actions caused loss to Telesocial of at least $5,000.

The terms "without authorization," "exceeded authorized access," "loss," and "fraud" were defined in a prior instruction.

Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 8.99 (2010) (modified); 18 U.S.C. § 1030(a)(4), 1030(g), and 1030(c)(4)(A)(i)(I).

# STIPULATED INSTRUCTION NO. 27
## RE: FEDERAL COMPUTER FRAUD AND ABUSE ACT—CONSPIRACY

Telesocial claims that Orange and each of the Individual Defendants violated Section 1030(b) of the CFAA. To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following elements by a preponderance of the evidence:

1.  There was an agreement between two or more persons to obtain information from a protected computer;

2.  The Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3.  One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

A conspiracy is a kind of unlawful partnership—an agreement of two or more persons to commit one or more unlawful acts. The act of conspiracy is the agreement to do something unlawful; it does not matter whether the unlawful act agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the unlawful acts alleged as an object of the conspiracy with all of you agreeing as to the particular unlawful act which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy.

The terms "protected computer" and "person" were defined in a prior instruction.

Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 8.20 (2010).

**DISPUTED INSTRUCTION NO. 28
RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENT TO DEFRAUD
DEFINED—OFFERED BY PLAINTIFF TELESOCIAL**


An intent to defraud is an intent to deceive or cheat.


Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 3.16 (2010, revised 12/2016).

**DISPUTED INSTRUCTION NO. 28**
**RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENT TO DEFRAUD**
**DEFINED—OFFERED BY DEFENDANTS**

An intent to defraud is an intent to deceive or cheat.  If you determine that a defendant acted in good faith, then that defendant did not act with the intent to defraud.

Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 3.16 (2010) & Comment.

**Telesocial's Position:**

Orange's proposed instruction should be rejected in favor of adopting the Ninth Circuit

Manual of Model Criminal Jury Instructions ("Criminal Model"), No. 3.16, which states simply

that, "[a]n intent to defraud is an intent to deceive or cheat."  Telesocial's proposed instruction on

intent to defraud tracks the Criminal Model rule verbatim, and the Ninth Circuit has expressly

determined that the additional language proposed by Orange is simply unnecessary.  As explained

in the comments to the relevant Criminal Model instruction:

> In *United States v. Shipsey*, 363 F.3d 962, 967-68 (9th Cir.), *cert.*

> *denied*, 543 U.S. 1004 (2004), the Ninth Circuit explicitly approved the language of this instruction and, because the trial court gave this

> instruction, the panel held that "***no good faith instruction was necessary at all***." *Id.* (emphasis added).

Orange may argue that in *United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir.1993), a

good faith instruction was allowed, but that instruction was directed to, "whether a defendant had

an honest, good faith belief in the truth of the specific misrepresentations alleged in the

indictment…"  Criminal Model Comment (citing).  Here, there is no compelling reason to depart

from the accepted Criminal Model Instruction No. 3.16, which should be adopted for this case.

**Defendants' Position:**

Orange requests a good faith instruction in connection with the definition of "intent to defraud." So instructed, the jury can consider whether Orange acted with subjective good faith, and thus did not have the intent to defraud. Such an instruction is consistent with the Commentary in the Ninth Circuit Manual of Model Criminal Jury Instructions, No. 3.16 (2010) & Comment, as well as case law in the Ninth Circuit. *See United States v. Nguyen,* No. 15-5044, 2016 U.S. App. LEXIS 22132 (9th Cir. 2016); *United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993).

**STIPULATED INSTRUCTION NO. 29**
**RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—KNOWINGLY DEFINED**


An act is done knowingly if the Defendant is aware of the act and does not act through ignorance, mistake, or accident.  The Plaintiff is not required to prove that the Defendant knew that their acts or omissions were unlawful.  You may consider evidence of the Defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the Defendant acted knowingly.



Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 5.6 (2010) (modified).

**STIPULATED INSTRUCTION NO. 30**
**RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES**

If you find that defendants violated any of the provisions of the CFAA described above, you may award Telesocial damages under the CFAA.  These damages may include:

1.     costs of responding to the violation;

2.     costs of conducting a damage assessment;

3.     costs of restoring the data, program, system, or information to its prior condition;

4.     lost revenues or costs incurred due to interruption of service;

5.     costs of investigating the violation;

6.     costs of identifying the violation;

7.     the value of any business Telesocial lost as a result of the violation of the CFAA; and

8.     the value of any goodwill and business reputation Telesocial lost as a result of the violation of the CFAA.

It is Telesocial's burden to prove its damages by a preponderance of the evidence.  You should determine damages separately for each Defendant, if any, that you find liable for violating the CFAA.

Authority:

18 U.S.C. §§ 1030(e)(11), 1030(g); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 980–81 (N.D. Cal. 2008).

**STIPULATED INSTRUCTION NO. 31
RE:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES:  GOODWILL
DEFINED**

Goodwill means a business's reputation, patronage, and other intangible assets that are considered when appraising the value of the business.  Goodwill reflects the ability of a business to earn income in excess of income that would be expected from the business viewed as a mere collection of assets.

Authority:

Black's Law Dictionary 715 (8th Ed. 2007); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004) (citing Black's Law Dictionary (8th Ed. 2007).

**STIPULATED INSTRUCTION NO. 32**
**RE: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT**

Telesocial claims that Orange and each of the Individual Defendants violated four separate provisions of California Penal Code Section 502, known as the California Computer Data Access and Fraud Act ("CDAFA"). I will now instruct you on the law regarding the applicable provisions of the CDAFA, and the damages you may award if you find a CDAFA violation. If you find that a defendant violated at least one of the CDAFA provisions that follow, you should find for Telesocial and against that defendant on the CDAFA claim. If you do not find that a Defendant violated the CDAFA, then you must find against Telesocial on its CDAFA claim as to that Defendant.

Authority:

None: transitional instruction

**DISPUTED INSTRUCTION NO. 33
RE: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—DEFINITIONS—
OFFERED BY PLAINTIFF TELESOCIAL**

For purposes of Instruction Nos. 34–38, the following terms have the following meanings:

"Access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with the logical, arithmetical or memory function resources of a computer, computer system or computer network.

"Computer network" means any system that provides communications between one or more computer systems and input/output devices.

"Computer program or software" means a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions.

"Computer system" means a device or collection of devices, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions including, but not limited to, logic, arithmetic, data storage and retrieval, communication, and control.

"Data" means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device.

Authority:

Cal. Penal Code § 502(b); *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1079 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016).

**DISPUTED INSTRUCTION NO. 33**
**RE: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—DEFINITIONS—**
**OFFERED BY DEFENDANTS**

For purposes of Instruction Nos. 34–38, the following terms have the following meanings:

"Access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with the logical, arithmetical or memory function resources of a computer, computer system or computer network. A defendant does not violate Section 502(c)(1) of the CDAFA by accessing and using a computer in breach of a terms of use, unless the owner of the computer system demanded that the defendant cease using the computer and the defendant continued to use it.

Authority:

*Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1079 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016).

**Telesocial's Position:**

Telesocial takes no issue with the definition of "Access" in Defendants' instruction, which restates the statutory definition under California law. Cal. Penal Code § 502(b) ("Access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network.").

However, for the second proposed sentence, Defendants improperly seeks to extend a fact-specific holding of an opinion to create a general rule that has not been endorsed by courts in this circuit. Specifically, in *Facebook, Inc. v. Power Ventures, Inc.*, the court held that "a violation of the terms of use of a website cannot itself constitute access without authorization." 828 F.3d 1068, 1078 (9th Cir. 2016), *as amended on denial of reh'g* (Dec. 9, 2016). The court went on to discuss how, while violation of a terms of use was not alone enough, under the facts of that case the defendants' continued access after plaintiff Facebook "expressly rescinded [their] permission when [it] issued its written cease and desist letter to Power on December 1, 2008" was sufficient to constitute unauthorized "access" under the CDAFA. *Id.*

The court did not, however, as Defendants suggest, create a bright line rule that sending a cease and desist letter "demand[ing] that the defendant cease using [a] computer" was a *necessary* element to support a CDAFA claim. *See* Defs' Proposed Jury Instruction; *Facebook, Inc.*, 828 F.3d at 1079. In fact, courts in this circuit construing the CDAFA have recognized otherwise. *E.g. Oracle USA, Inc. v. Rimini St., Inc.*, 191 F. Supp. 3d 1134, 1149 (D. Nev. 2016) (noting, for example, that where "defendants knew [plaintiff] changed its website's Terms of Use to prohibit automated downloading tools in February 2007, more than a year and half before defendants engaged in the prohibited conduct," that could adequately constitute revocation of a right to access for CDAFA claim). Accordingly, Orange's assertion that accessing a computer in breach of a terms of use may not constituted a violation of the CDAFA "unless the owner of the computer system demanded that the defendant cease using the computer" is an overstatement, and should be stricken. Instead, Telesocial's instruction that includes only the expressly defined terms in the CDAFA should be used.

**Defendants' Position:**

      For reasons articulated above in Defendants' position on analogous CFAA definitions, Defendants maintain (and appropriate case law supports) that breach of a Terms of Use is not sufficient to constitute a violation of Section 502(c)(1) of the CDAFA. Defendants do not otherwise dispute Plaintiff's statutory definitions.

**STIPULATED INSTRUCTION NO. 34**
**RE:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—**
**SECTION 502(c)(1)**

Telesocial claims that Orange and each of the Individual Defendants violated Section 502(c)(1) of the CDAFA.  To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following by a preponderance of the evidence:

    1.     The Defendant knowingly accessed and without permission used a Telesocial computer, computer system, or computer network;

    2.     The Defendant did so in order to either (A) devise or execute a scheme to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property or data; and

    3.     The Defendant's actions caused damage or loss to Telesocial.

The terms "access," "computer system," "computer network," and "data" were defined in a prior instruction.

Authority:

Cal. Penal Code §§ 502(c)(1), 502(e).

**STIPULATED INSTRUCTION NO. 35
RE:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—
SECTION 502(c)(2)**

Telesocial claims that Orange and each of the Individual Defendants violated Section 502(c)(2) of the CDAFA.  To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following by a preponderance of the evidence:

      1.      The Defendant knowingly accessed and without permission took, copied, or made use of any data from a Telesocial computer, computer system, or computer network; and

      2.      The Defendant's actions caused damage or loss to Telesocial.

The terms "access," "computer system," "computer network," and "data" were defined in a prior instruction.

Authority:

Cal. Penal Code §§ 502(c)(2), 502(e).

**STIPULATED INSTRUCTION NO. 36
RE:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—
SECTION 502(c)(6)**

Telesocial claims that Orange and each of the Individual Defendants violated Section 502(c)(6) of the CDAFA.  To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following by a preponderance of the evidence:

    1.    The Defendant knowingly and without permission provided or assisted in providing a means of accessing a Telesocial computer, computer system, or computer network; and

    2.    The Defendant's actions caused damage or loss to Telesocial.

The terms "access," "computer system," and "computer network" were defined in a prior instruction.

Authority:

Cal. Penal Code §§ 502(c)(6), 502(e).

**STIPULATED INSTRUCTION NO. 37**
**RE:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—**
**SECTION 502(c)(7)**

Telesocial claims that Orange and each of the Individual Defendants violated Section 502(c)(7) of the CDAFA.  To prevail under this provision as to a particular Defendant, Telesocial must prove each of the following by a preponderance of the evidence:

      1.     The Defendant knowingly and without permission accessed or caused to be accessed a Telesocial computer, computer system, or computer network; and

      2.     The Defendant's actions caused damage or loss to Telesocial.

The terms "access," "computer system," and "computer network" were defined in a prior instruction.

Authority:

Cal. Penal Code §§ 502(c)(7), 502(e).

**STIPULATED INSTRUCTION NO. 38**
**RE:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONSPIRACY**

In addition to contending that Orange and each Individual Defendant personally violated the CDAFA, Telesocial also contends that Orange and the Individual Defendants conspired to violate the CDAFA.  Telesocial claims that each Defendant is responsible for the CDAFA violations committed by the other Defendants by virtue of their participation in a conspiracy.

A conspiracy is an agreement by two or more persons to commit a wrongful act.  Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.  If you find that one of the Defendants violated the CDAFA, then you must make an individual determination as to each of the other Defendants as to whether one or more of them is also responsible for the harm.  Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make the Defendant responsible for the harm.

If you find that any Defendant committed a violation of CDAFA that harmed Telesocial, then you must determine whether any of the other Defendants are also responsible for the harm.  Another Defendant is also responsible if Telesocial proves the following by a preponderance of the evidence:

1.    That Defendant was aware that one or more of the co-conspirators planned to commit computer fraud;

2.    That Defendant agreed with one or more of the co-conspirators and intended that the computer fraud be committed.

A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators.  Telesocial is not required to prove that any Defendant personally committed a wrongful act or that he or she knew all the details of the agreement or the identities of all the other participants.

Authority:
CACI 3600 (2016).

**STIPULATED INSTRUCTION NO. 39**
**RE: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—DAMAGES**

If you find that a Defendant violated the CDAFA, you may award damages to Telesocial. These damages shall include amounts sufficient to compensate Telesocial for the harm it suffered as a result of any violations, including any expenditure reasonably and necessarily incurred by Telesocial to verify that its computers, computer system, computer network, computer program, and/or data was or was not altered, damaged, or deleted by the access.

In addition, if, you find by clear and convincing evidence that a Defendant willfully violated the CDAFA with oppression, fraud, or malice, you may additionally award punitive or exemplary damages from that Defendant, as set forth in the instructions on punitive damages I will give you later.

You should determine actual damages separately for each Defendant, if any, that you find liable for violating the CDAFA.

Authority:

Cal. Penal Code §§ 502(e)(1), 502(e)(4).

## STIPULATED INSTRUCTION NO. 40
## RE: BREACH OF CONTRACT—INTRODUCTION

Telesocial claims that it entered into a binding contract with each of the Defendants, referred to as the Telesocial "Terms of Use and Privacy Policy" or the "Terms of Use." Specifically, Telesocial claims that each of the Defendants agreed to be bound by the Terms of Use when registering for Telesocial's API and/or Call Friends application in 2012.

Telesocial claims that each of the Defendants breached this contract by engaging in reverse engineering the Telesocial API and reasonably related materials, using the Telesocial API and reasonably related materials for an unlawful purpose, and using the Telesocial API and reasonably related materials for a competitive purpose. Telesocial also claims that Defendants' conduct breached the implied covenant of good faith and fair dealing.

Telesocial claims that each Defendant's breach of this contract caused harm to Telesocial for which each Defendant should pay.

Defendants deny these claims. Defendants maintain that the Terms of Use did not apply to the Call Friends application. Defendants maintain that there was never a contractual agreement formed between any of the Defendants and Telesocial, and that, in any event, Defendants' use did not breach the Terms of Use and did not breach the implied covenant of good faith and fair dealing.

Authority:
CACI 300 (2016) (modified).

**STIPULATED INSTRUCTION NO. 41**
**RE: BREACH OF CONTRACT—FORMATION**

Telesocial claims that it entered into binding contracts with Orange and each of the Individual Defendants. To prove the existence of a binding contract as to any particular Defendant, Telesocial must prove the following by a preponderance of the evidence:

1. That the contract terms were clear enough that the parties could understand what each was required to do;

2. That the parties agreed to give each other something of value; and

3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

When you examine whether the parties agreed to give each other something of value, consider that a promise to do something or not to do something may have value.

If Telesocial did not prove all of the above, then a contract was not created.

Authority:

CACI 302 (2016) (modified).

**STIPULATED INSTRUCTION NO. 42**
**RE:  BREACH OF CONTRACT—ELEMENTS**

To recover damages from a Defendant for breach of contract, Telesocial must prove the following by a preponderance of the evidence:

1. That Telesocial and the Defendant entered into a contract;

2. That Telesocial did all, or substantially all, of the significant things that the contract required it to do;

3. That all conditions required by the contract for the Defendant's performance had occurred;

4. That the Defendant failed to do something that the contract required it to do or did something that the contract prohibited it from doing;

5. That Telesocial was harmed thereby; and

6. That the Defendant's breach of contract was a substantial factor in causing Telesocial's harm.

Authority:

CACI 303 (2016) (modified).

**STIPULATED INSTRUCTION NO. 43**
**RE:  BREACH OF CONTRACT—OFFER AND ACCEPTANCE**

Both an offer and an acceptance are required to create a contract.  Contracts may be formed over the Internet, but this has not fundamentally changed these principles of contract.  The touchstone for all contracts, whether Internet digital or old school paper, is mutual manifestation of asset, whether by written or spoken word or by conduct.

To determine whether a binding contract has been formed over the internet, the dispositive questions are (1) did the offeror provide reasonable notice of the proposed terms, and (2) did the offeree unambiguously manifest assent to those terms.

Each Defendant contends that a contract was not created because they were not provided reasonable notice of the terms of Telesocial's "Terms of Use", and thus there was never any offer.  To overcome this contention for any particular Defendant, Telesocial must prove either that:

1.     The Defendant had actual notice of the Terms of Use; or

2.     The Defendant had constructive notice of the Terms of Use, which means that the notice on Telesocial's website or application would have put a reasonably prudent user on inquiry notice of the terms of the contract, based on the design and content of Telesocial's website or application.

If Telesocial did not prove one of the above, then a contract was not created.

Each Defendant also contends that a contract was not created because they never manifested assent to the terms of Telesocial's Terms of Use.  If Telesocial did not prove that a particular Defendant manifested assent to its Terms of Use, then a contract was not created.

Authority:

CACI 307 (2016); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016).

**STIPULATED INSTRUCTION NO. 44**
**RE:  CONTRACT INTERPRETATION—MEANING OF ORDINARY WORDS**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

Authority:

CACI 315 (2016).

**STIPULATED INSTRUCTION NO. 45**
**RE:  CONTRACT INTERPRETATION—MEANING OF TECHNICAL WORDS**

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

Authority:

CACI 316 (2016).

## STIPULATED INSTRUCTION NO. 46
## RE: CONTRACT INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

Authority:

CACI 317 (2016).

**DISPUTED INSTRUCTION NO. 47**
**RE:  CONTRACT INTERPRETATION—DEFINITION OF "REVERSE**
**ENGINEERING"—OFFERED BY DEFENDANTS**

It is the Court's responsibility to provide to you the meaning of particular words or phrases.  For your purposes, the phrase "reverse engineering" means starting with a known product and working backward to divine the process which aided in its development or manufacture, deconstructing it in a way that reveals details such as design and architecture.   In the context of software, this means taking an existing program for which source-code is not available and attempting to recover details regarding the source code's design and implementation.

Authority:

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); Eldad Eilam, Reversing: Secrets of Reverse Engineering, xxiv (2005).

**Telesocial's Position:**

Orange's proposed instruction should be rejected. *First*, the instruction is unnecessary as the jury is competent to interpret and understand the usual and ordinary meaning of reverse engineering in the Terms of Service contract. *See* CACI 315 (2016) (citing to Cal. Civil Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.")) *and Hayter Trucking Inc. v. Shell Western E & P, Inc.*, 18 Cal. App. 4th 1, 15 (Cal. 1993) (Generally speaking, words in a contract are to be construed according to their plain, ordinary, popular or legal meaning, as the case may be.)). The term "reverse engineering" has a usual and ordinary meaning in the English language. *See, e.g.,* Merriam-Webster.com. (Reverse Engineering (noun): the activity of studying the parts of something to see how it was made and how it works so something like it can be made) (accessed March 9, 2017. https://www.merriam-webster.com/dictionary/reverse engineering.).

*Second,* Orange's instruction is incorrect as a matter of law. To the extent a legal definition of "reverse engineering" exists at all, the generally accepted definition under California law is expressed in the *Judicial Council of California Civil Jury Instructions* ("CACI") on trade secrets, which defines reverse engineering as "examining or testing a product to determine how it works, by a person who has a right to possess the product." CACI 4408 (2017). This is consistent with the usual and ordinary meaning of the term, and therefore counsels against Orange's instruction.

*Third*, the proposed instruction improperly provides legal argument under the guise of instruction, purporting to represent as a neutral, agreed upon definition what is actually Orange's disputed effort to artificially limit the scope of reverse engineering to deconstructing a software application's source code. It would be prejudicial for the Court to characterize Orange's argument on how the facts should be applied to the law as though it were an accepted definition. Thus, the Court should not include in its instruction any reference to what Orange contends.

Moreover, the authority Orange cites does not even support Orange's proposed instruction. *Kewanee Oil Co. v. Bicron Corp.* is inapplicable in that it did not even concern a matter of contract interpretation or California law—rather, it concerned the law of trade secrets in Ohio. 416 U.S. 470, 476 (1974).  Moreover, though the Supreme Court described reverse engineering in that opinion as, "starting with the known product and working backward to divine the process which aided in its development or manufacture," *id.,* in doing so it relied solely on a 1902 decision from the Fifth Appellate Circuit of Ohio which merely described reverse engineering as the "examination of the manufactured products sold or offered for sale to the public."  *National Tube Co. v. Eastern Tube Co.*, Ohio C.C. (n.s.) 459, 462 (Ohio Cir. Ct. 1902).  The article Orange cites about how to reverse engineer software offers no legal authority for its instruction, and moreover, adopts a broad definition that is more consistent with the usual and plain meaning of "reverse engineering" than Orange's proposed definition.  *See* Eldad Eilam, Reversing: Secrets of Reverse Engineering, 3 (2005) (in Chapter 1, entitled "What is Reverse Engineering?", stating that "[r]everse engineering is the process of extracting the knowledge or design blueprints from anything man-made") (available at http://www.foo.be/cours/dess-20122013/b/Eldad_Eilam-Reversing__Secrets_of_Reverse_Engineering-Wiley(2005).pdf).

**Defendants' Position:**

The Orange Defendants request that the Court provide the well-accepted definition for "reverse engineering" so that the jury can appropriately weigh the evidence it hears against a clear definition. The United States Supreme Court has defined "reverse engineering" as "starting with the known product and working backward to divine the process which aided in its development or manufacture." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974). The software industry defines "reverse engineering" as a process where an "engineered artifact" is "deconstructed in a way that reveals its innermost details, such as its design and architecture . . . [i]n the software world reverse engineering boils down to taking an existing program for which source-code or proper documentation is not available and attempting to recover details regarding its' [sic] design and implementation." *See, e.g.*, Eldad Eilam, *Reversing: Secrets of Reverse Engineering,* xxiv (2005). This definition is broadly accepted in the industry. *See* "Reverse Engineering and Design Recovery: A Taxonomy," Elliot Chikofsky, James Cross II, IEEE 1990, IEEE Computer Society Press at pp. 13-7), available at http://www.eecs.yorku.ca/course_archive/2004-05/F/6431/Chikofsky.pdf ("The process of analyzing a subject system to identify the systems' components and their interrelationships and create representations of the system in another form or at a higher level of abstraction."); Andrew Johnson-Laird, *Software Reverse Engineering in the Real World*, 19 Dayton L. Rev. 843, 846 (1994) (describing in-depth industry understanding and definition of "reverse engineering"); *see also* Black's Law Dictionary 1345 (8th Ed. 1999) ("reverse engineering" is the "process of discovering how an invention works by inspecting and studying it, esp. by taking it apart in order to learn how it works and how to copy it and improve it."). So instructed as to this broadly accepted and well-understood definition, the jury will be best able to weigh the evidence before it.

**STIPULATED INSTRUCTION NO. 48**
**RE:  CONTRACT INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you.  If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the party that drafted the disputed words.

Authority:

CACI 320 (2016).

**STIPULATED INSTRUCTION NO. 49**
**RE:  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—**
**ESSENTIAL FACTUAL ELEMENTS**

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

Telesocial claims that Orange and each of the Individual Defendants violated the duty to act fairly and in good faith.  To establish this claim as to a particular Defendant, Telesocial must prove the following by a preponderance of the evidence:

1.   That Telesocial and the Defendant entered into a contract;

2.   That Telesocial did all, or substantially all of the significant things that the contract required it to do;

3.   That the Defendant unfairly interfered with Telesocial's right to receive the benefits of the contract; and

4.   That Telesocial was harmed by the Defendant's conduct.

Authority:

CACI 325 (2016) (modified).

**STIPULATED INSTRUCTION NO. 50
RE: BREACH OF CONTRACT—DAMAGES GENERALLY**

If you decide that Telesocial has proved its claim for breach of contract against a particular Defendant, you must decide how much money will reasonably compensate Telesocial for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Telesocial in as good a position as it would have been if the breach had not occurred.

To recover damages for any harm, Telesocial must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Telesocial also must prove the amount of its damages according to the following instructions. Telesocial does not have to prove the exact amount of damages, but you must not speculate or guess in awarding damages.

Authority:
CACI 350 (2016) (modified).

**DISPUTED INSTRUCTION NO. 51**
**RE: BREACH OF CONTRACT—CONSEQUENTIAL OR SPECIAL DAMAGES—**
**OFFERED BY PLAINTIFF TELESOCIAL**

Telesocial also claims damages known as consequential or special damages for its breach of contract claim. This type of damages are those that are a "consequence of" or "flow from" the breach. To recover for this harm, Telesocial must prove that when the parties made the contract, Defendants knew or reasonably should have known of the special circumstances leading to the harm. Examples of consequential or special damages include lost profits, lost business value, loss of goodwill, and harm to reputation.

If you find that Defendants knew or reasonably should have known that the alleged breach of contract would damage the value of Telesocial's business, in determining the measure of lost business value damages, you should consider the difference between the value of Telesocial's business before the breach and the value of Telesocial's business as a result of the breach and all reasonably foreseeable consequences of the breach.

Authority:

CACI 351 (2016) (modified); *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (2004) (the scope of damages under Section 3300 includes those damages foreseeable under the circumstances); 1 Witkin Sum. Cal. Law Contracts § 870-71 (10th 2010) (damages may be awarded for harm reasonably contemplated by the parties, or harm a party knew or should have known might result, at the time of contracting).

**DISPUTED INSTRUCTION NO. 51**
**RE: BREACH OF CONTRACT—CONSEQUENTIAL OR SPECIAL DAMAGES—**
**OFFERED BY DEFENDANTS**

Telesocial also claims damages known as consequential or special damages for its breach of contract claim. To recover for this harm, Telesocial must prove, as to each particular Defendant, that when the parties made the contract, that Defendant knew or reasonably should have known of the special circumstances leading to the harm. You may only award damages if they were reasonably foreseeable and contemplated by the parties at the time of contracting, and must not speculate or guess in awarding damages.

Authority:

CACI 351 (2016) (modified); *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (2004) (the scope of damages under Section 3300 includes those damages foreseeable under the circumstances); 1 Witkin Sum. Cal. Law Contracts § 870-71 (10th 2010) (damages may be awarded for harm reasonably contemplated by the parties, or harm a party knew or should have known might result, at the time of contracting).

**Telesocial's Position:**

The parties largely agree on certain language tracking the model California instructions, but Defendants take issue with Telesocial's general description of the potential types of consequential or special damages that may be appropriate under California law.  In particular, Defendants object to the inclusion of discussion relating to the harm Defendants breach caused to Telesocial's business, but California law makes clear that a wide range of damages, including related to the harm caused to a business, may be recoverable so long as the losses are foreseeable and proximately caused by the breach of a contract.  *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969 (2004); *e.g. Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 474 (2010) (upholding an award of lost profits on real estate development deal where benefits would have been achieved but-for anticipatory breach); *Burnett & Doty Dev. Co. v. Phillips*, 84 Cal. App. 3d 384, 390 (Cal. Ct. App. 1978).  Accordingly, Telesocial's proposed additions to the jury instructions—which set forth examples of potential harms it may seek to recover if it can show that the losses were a foreseeable and caused by Defendants' breach—appropriately provide context for the flexible standard for special damages under California law.  *Lewis Jorge*, 34 Cal. 4th at 969.  The jury should be presented these options to provide clarity in its analysis of what, if any, types of special damages are appropriate under the factual circumstances that will be presented to them.

As for Defendants' proposed instruction, Telesocial again takes issue with the last sentence because it is duplicative of general instructions that will already be provided to the jury, and is simply an attempt to once again tack on the statement that "[y]ou must not speculate or guess in calculating the amount."  This already-addressed issue should not be repeated once more, because the jury is already cautioned against guesswork or speculation through the Stipulated Instruction No. 22 on the proof of damages, which in turn is based on Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1.

**Defendants' Position:**

Defendants' proposed instruction closely tracks the California model, expanding only in focusing on (1) the foreseeability required by special damages and (2) that the jury not speculate or guess in awarding damages.

Plaintiff's proposed instruction includes an entirely new paragraph on its "lost business value" theory of damages. As explained further below in Defendants' position on the disputed instruction on "Misappropriation of Trade Secrets -- Lost Business Value," this instruction is without base in law or fact and consequently should not be given. *See Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) ("Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading.").

**DISPUTED INSTRUCTION NO. 51**
**RE: BREACH OF CONTRACT—LOST PROFITS DAMAGES—OFFERED BY**
**PLAINTIFF TELESOCIAL**

To recover damages for lost profits, Telesocial must prove that it is reasonably certain it would have earned profits but for Defendant's breach of the contract.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount Telesocial would have received if the contract had been performed and then subtract from that amount the costs Telesocial would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

Authority:

CACI 352 (2016) (modified).

**DISPUTED INSTRUCTION NO. 51**
**RE: BREACH OF CONTRACT—LOST PROFITS DAMAGES—OFFERED BY**
**DEFENDANTS**

To recover damages for lost profits, Telesocial must prove that it is reasonably certain it would have earned profits but for Defendant's breach of the contract.

To decide the amount of damages for lost profits, you must determine the gross, or total, amount Telesocial would have received if the contract had been performed and then subtract from that amount the costs Telesocial would have had if the contract had been performed.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss. You must not speculate or guess in awarding damages.

Authority:

CACI 352 (2016) (modified).

**Telesocial's Position:**

Telesocial disputes the very last sentence of Orange's proposed instruction because it departs from the CACI model instruction for lost profits damages, and is also duplicative of general instructions that will already be provided to the jury. Orange attempts to tack onto the end of an otherwise model instruction the statement that, "[y]ou must not speculate or guess in awarding damages." This language does not appear anywhere in the CACI instruction on lost profit damages, or in the commentary associated with that instructions. *See* CACI 352. The language is also not necessary to include here because the jury is already cautioned against guesswork or speculation through the Stipulated Instruction No. 22 on the proof of damages, which in turn is based on Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1.

Orange cites to *Gilbrook v. City of Westminster,* 177 F.3d 839, 861 (9th Cir. 1999) for the proposition that damages "must not be premised on 'sympathy, speculation, or guess work.'" Telesocial does not dispute that such an instruction is proper, *see* Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1, but nothing in *Gilbrook* mandates repeating such an instruction numerous times. *See Gilbrook,* 177 F.3d at 861. Moreover, Orange overstates the court's findings in *Gilbrook,* which was not based on an isolated instruction regarding speculation or guess work, but rather on "[r]eading the [broader damages] instruction as a whole." *Id.* If one were to read the instructions in this case as proposed by Telesocial, one would find the jury was properly—but not repeatedly—cautioned against calculating damages based on guesswork and speculation.

**Defendants' Position:**

As in the previous instruction, Orange requests an instruction that the jury not speculate or guess in awarding damages.  In the Ninth Circuit, damages "must not be premised on 'sympathy, speculation, or guess work.'"  *Gilbrook v. City of Westminster*, 177 F.3d 839, 861 (9th Cir. 1999) (affirming District Court's jury instruction).  This instruction ensures that the jury weighs the evidence that is presented to it and, if it awards damages, that the jury arrives at a damages figure without recourse to speculation or guess work.

## STIPULATED INSTRUCTION NO. 52
## RE:  MITIGATION OF DAMAGES

If a Defendant breached the contract and the breach caused harm, Telesocial is not entitled to recover damages for harm that the Defendant proves Telesocial could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of Telesocial's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Telesocial made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

Authority:

CACI 358 (2016) (modified).

**STIPULATED INSTRUCTION NO. 53**
**RE:  NOMINAL DAMAGES**

The law that applies to Telesocial's breach of contract claims authorizes an award of nominal damages.  If you find for Telesocial but you find that Telesocial has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.6 (modified).

**STIPULATED INSTRUCTION NO. 54**
**RE: MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION**

Telesocial claims that it is the owner of the following six trade secrets relating to its social calling technology:

1. Initiating the landing page using Facebook user and social calling system status;

2. Placing, participating in, and publishing a call through Facebook Open Graph;

3. Creating a Facebook story in the form of a clickable link that results in the connection of a phone call;

4. Propagation of call information throughout the system;

5. Overall social calling system architecture with front-end/back-end social calling system structure, front-end/back-end social calling database, social calling API, social calling router and social calling media server; and

6. Social calling call flows for registering new users and establishing phone calls.

Telesocial claims that each of these six items are trade secrets and that Orange and each of the Individual Defendants misappropriated its trade secrets. "Misappropriation" means the improper acquisition, use or disclosure of a trade secret.

Telesocial also claims that Defendants' misappropriation caused it harm, and caused Orange to be unjustly enriched.

Defendants maintain that none of the six claimed trade secrets actually qualified as a trade secret, and deny that they misappropriated any of those six trade secrets.

Defendants also maintain that the claimed trade secrets were readily ascertainable by proper means. I will explain that concept in Instruction X.

Authority:

CACI 4400 (2016) (modified).

## STIPULATED INSTRUCTION NO. 55
### RE: MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS

Telesocial claims that Orange and each of the Individual Defendants have misappropriated its trade secrets. Specifically, Telesocial claims that Defendants have misappropriated the following six trade secrets relating to its social calling technology:

1. Initiating the landing page using Facebook user and social calling system status;

2. Placing, participating in, and publishing a call through Facebook Open Graph;

3. Creating a Facebook story in the form of a clickable link that results in the connection of a phone call;

4. Propagation of call information throughout the system;

5. Overall social calling system architecture with front-end/back-end social calling system structure, front-end/back-end social calling database, social calling API, social calling router and social calling media server; and

6. Social calling call flows for registering new users and establishing phone calls.

To succeed on its trade secret misappropriation claim as to a particular Defendant, Telesocial must prove the following for one or more of the six trade secrets by a preponderance of the evidence:

1. That Telesocial owned the trade secret;

2. That the trade secret was secret at the time of the misappropriation;

3. That the Defendant improperly acquired, used or disclosed the trade secret;

4. That Telesocial was harmed, or Orange was unjustly enriched, in connection with the trade secret; and

5. That the Defendant's improper acquisition, use or disclosure of the trade secret was a substantial factor in causing Telesocial's harm or in causing Orange's unjust enrichment.

Authority:

CACI 4401 (2016) (modified).

**STIPULATED INSTRUCTION NO. 56**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—"TRADE SECRET" DEFINED**

To prove that any one or more of the six claimed trade secrets was a trade secret,

Telesocial must prove the following by a preponderance of the evidence:

1.    That the claimed trade secret was secret;

2.    That the claimed trade secret had actual or potential independent economic value

because it was secret; and

3.    That Telesocial made reasonable efforts to keep the claimed trade secret.

Authority:

CACI 4402 (2016) (modified).

**STIPULATED INSTRUCTION NO. 57**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—SECRECY REQUIREMENT**


The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Telesocial's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.


Authority:

CACI 4403 (2016) (modified).

**STIPULATED INSTRUCTION NO. 58**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—"INDEPENDENT ECONOMIC**
**VALUE" EXPLAINED**

The six claimed trade secrets at issue in this case have independent economic value if they give the owner an actual or potential business advantage over others who do not know the social calling technologies and who could obtain economic value from their disclosure or use.

In determining whether a particular one or more of the six claimed trade secrets had actual or potential independent economic value because they were secret, you may consider the following:

1.     The extent to which Telesocial obtained or could obtain economic value from the claimed trade secrets in keeping them secret;

2.     The extent to which others could obtain economic value from the claimed trade secrets if they were not secret;

3.     The amount of time, money, or labor that Telesocial expended in developing the claimed trade secrets; and

4.     The amount of time, money, or labor that was saved by a competitor who used the claimed trade secrets.

The presence or absence of any one or more of these factors is not necessarily determinative.

Authority:

CACI 4412 (2016) (modified).

# STIPULATED INSTRUCTION NO. 59
## RE: MISAPPROPRIATION OF TRADE SECRETS—REASONABLE EFFORTS TO PROTECT SECRECY

To establish that one or more of the six claimed trade secrets was a trade secret, Telesocial must prove that it made reasonable efforts under the circumstances to keep the information secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Telesocial, exercising due care to protect important information of the same kind. This requirement applies separately to each claimed trade secret.

In determining whether or not Telesocial made reasonable efforts to keep the six claimed trade secrets secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1. Whether documents or computer files containing the claimed trade secrets were marked with confidentiality warnings;

2. Whether Telesocial instructed its employees to treat the claimed trade secrets as confidential;

3. Whether Telesocial restricted access to the claimed trade secrets to persons who had a business reason to know the information;

4. Whether Telesocial kept the claimed trade secrets in a restricted or secured area;

5. Whether Telesocial required employees or others with access to the claimed trade secrets to sign confidentiality or nondisclosure agreements;

6. Whether Telesocial took any action to protect the specific claimed trade secrets, or whether it relied on general measures taken to protect its business information or assets;

7. The extent to which any general measures taken by Telesocial would prevent the unauthorized disclosure of any of the claimed trade secrets; and

8. Whether there were other reasonable measures available to Telesocial that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.


Authority:

CACI 4404 (2016) (modified).

## DISPUTED INSTRUCTION NO. 60
## RE:  LABELING INFORMATION A TRADE SECRET—OFFERED BY DEFENDANTS

As members of the jury, it is ultimately your responsibility to determine whether information constitutes a trade secret under the test I will explain to you. Just because a witness refers to certain information or documents as trade secrets does not mean that they are necessarily trade secrets within the meaning of the statute. Similarly, just because a document refers to information as a trade secret, confidential, or proprietary, does not necessarily make that information a trade secret if it does not otherwise meet the test I will explain to you.

Authority:

Adapted from instruction given in *United States v. Nosal*, No. 3:08-cr-00237-EMC, Dkt. No. 375 (N.D. Cal. 2013).

**Telesocial's Position:**

Orange's proposed instruction should be rejected. *First*, the instruction is unnecessary in this case. In the *Nosal* case upon which Defendants rely to support their instruction, the instruction served a purpose that is not present in this case—it was crafted to tackle documentary evidence of trade secrets that were "stamped 'confidential and proprietary.'" *See United States v. Nosal*, No. 3:08-cr-00237-EMC, Dkt. No. 375 (N.D. Cal. 2013) (original instruction 19.5 stated, "You are about to see documents that are stamped "confidential and proprietary." As members of the jury, it is ultimately your responsibility to determine whether information constitutes a trade secret under the test I will explain to you at the end of the trial...."). In contrast, the trade secrets in this case resided on computer servers, and although the jury will be told about the trade secrets themselves, the documentary support for the trade secrets theft claim does not include Telesocial "Proprietary and Confidential" stamped documents.

Moreover, the proposed instruction could cause confusion. The jury will already be instructed on the definition and scope of a trade secret, *see* Stipulated Jury Instruction No. 56, and the jury is fully capable of applying that definition to the body of evidence concerning Telesocial's trade secrets to determine whether or not Telesocial's claims inventions meet that definition. Thus, this instruction is unnecessary. There is also no precedent in either the *Judicial Council of California Civil Jury Instructions* ("CACI") or the *Ninth Circuit Manual of Model Civil Jury Instructions* for the instruction.

**Defendants' Position:**

Under California trade secret law, "merely saying something is a trade secret … does not make it so." *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 67 Cal. Rptr. 3d 54, 67 (Cal. Ct. App. 2007) (internal citations omitted); *see also Thompson v. Impaxx, Inc.*, 7 Cal. Rptr. 3d 427, 431 (Cal. Ct. App. 2003) ("Labeling information as a trade secret or as confidential information does not conclusively establish that the information fits this description.") (citing *Morlife, Inc. v. Perry*, 66 Cal. Rptr. 2d 731 (Cal. Ct. App. 1997)).  Orange proposes this instruction to help the jury assess whether Telesocial's claimed trade secrets are in fact trade secrets, especially because Telesocial's witnesses labeling something as a trade secret in their testimony could be misleading. The instruction is based on an instruction given in *United States v. Nosal*, No. 3:08-cr-00237-EMC, Dkt. No. 375 (N.D. Cal. 2013).  In that case, the Defendant also argued that the government had failed to prove that its claimed trade secrets were in fact trade secrets. *United States v. Nosal*, 828 F.3d 865, 881 (9th Cir. 2016).

**STIPULATED INSTRUCTION NO. 61**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—MISAPPROPRIATION BY ACQUISITION**

Orange and/or any of the Individual Defendants misappropriated Telesocial's trade secrets by acquisition if Orange and/or any of the Individual Defendants acquired the trade secrets and knew or had reason to know that it used improper means to acquire them.

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, misrepresentation, and acquisition with knowledge or reason to know that another party used improper means to acquire it.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1.     Independent efforts to invent or discover the information;

2.     Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3.     Observing the information in public use or on public display; or

4.     Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

Authority:

CACI 4405 (2016) (modified); CACI 4408 (2016) (modified).

**STIPULATED INSTRUCTION NO. 62**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—**
**IMPROPER MEANS OF ACQUIRING A TRADE SECRET**

Orange and/or any of the Individual Defendants misappropriated one or more of Telesocial's six trade secrets by disclosure if Orange and/or any of the Individual Defendants:

1.  Disclosed the trade secret without Telesocial's consent; and

2.  Did any one of the following:

     a.  acquired knowledge of the trade secret by improper means (as defined in other instructions); or

     b.  at the time of disclosure, knew or had reason to know that its knowledge of the trade secret came from or through another party, and that another party had previously acquired the trade secret by improper means.

Authority:

CACI 4406 (2016) (modified).

## STIPULATED INSTRUCTION NO. 63
## RE:  MISAPPROPRIATION OF TRADE SECRETS—MISAPPROPRIATION BY USE

Orange and/or any of the Individual Defendants misappropriated one or more of Telesocial's six trade secrets by use if Orange and/or any of the Individual Defendants:

1.   Used the trade secret without Telesocial's consent; and

2.   Did any one of the following:

    a.   at the time of the use, had acquired knowledge of the trade secret by improper means (as defined in other instructions); or

    b.   at the time of use, knew or had reason to know that its knowledge of the trade secret came from or through another party, and that another party had previously acquired the trade secret by improper means.

Authority:

CACI 4407 (2016) (modified).

## STIPULATED INSTRUCTION NO. 64
### RE:  AFFIRMATIVE DEFENSE—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS

Defendants did not misappropriate Telesocial's trade secrets if Defendants prove that the six claimed trade secrets were readily ascertainable by proper means at the time of the alleged acquisition, use, or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is available in trade journals, reference books, or on the Internet. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

Authority:

CACI 4408 (2016) (modified).

**DISPUTED INSTRUCTION NO. 65
RE: MISAPPROPRIATION OF TRADE SECRETS—DAMAGES – OFFERED BY
PLAINTIFF TELESOCIAL**

If Telesocial proves that Orange misappropriated its trade secrets, then Telesocial is entitled to recover damages if the misappropriation caused Telesocial to suffer an actual loss, or caused Orange to be unjustly enriched. Examples of actual losses that a plaintiff might suffer as a result of trade secret misappropriation include lost business value, lost profits, loss of goodwill, and harm to reputation.

Authority:

CACI 4409 (2016) (modified); *Top Agent Network, Inc. v. Zillow, Inc.*, Case No. 14-cv-04769-RS, 2015 WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015) (lost goodwill; damaged reputation); *Vehicular Technologies Corp. v. Titan Wheel Intern., Inc.*, No. B169590, 2005 WL 1460296, at *12-13 (June 22, 2005) (lost business value); *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 568-569 (S.D. Tex.), *aff'd*, 716 F.3d 857 (5th Cir. 2013) (lost business value); *Stanacard LLC v. Rubard LLC*, 12 Civ. 5176, 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) ("courts have found that lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed by the misappropriation of trade secrets") (collecting cases).

**DISPUTED INSTRUCTION NO. 65**
**RE: MISAPPROPRIATION OF TRADE SECRETS—DAMAGES—OFFERED BY DEFENDANTS**

If Telesocial proves that Orange misappropriated one or more trade secrets, then Telesocial is entitled to recover damages if the misappropriation caused Telesocial to suffer an actual loss, or caused Orange to be unjustly enriched.

Telesocial must separate or apportion Orange's profits, if any, and Telesocial's damages, if any, between each feature it claims as a trade secret and all of the other features that Orange developed, and such evidence must be reliable and tangible, and not conjectural or speculative.

Authority:

CACI 4409 (2016) (modified); *Garretson v. Clark,* 111 U.S. 120, 121 (1884); *VirnetX, Inc. v. Cisco Sys, VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).

**Telesocial's Position:**

Orange's proposed instruction should be rejected in favor of Telesocial's proposed instruction regarding trade secret damages. The parties are in agreement as to the first sentence of both Orange's and Telesocial's proposed instructions, which tracks the language of CACI 4409 verbatim. It is the second paragraph of Orange's proposed instruction that is problematic.

The second paragraph in Orange's proposed instruction is not supported by, or even mentioned in, CACI 4409. That is because a party is not required to calculate damages on a "trade secret-by-trade secret basis," *ATS Prod. Inc. v. Ghiorso*, No. 10-cv-4880, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26, 2012) (citing *Tri–Tron Int'l v. Velto*, 525 F.2d 432, 437 (9th Cir. 1975)), nor is apportionment otherwise legally required when calculating damages for trade secret claims. *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 856 (E.D. Tex. 2012), *aff'd*, 550 F. App'x 897 (Fed. Cir. 2014) (finding total damages award was proper without apportionment); *see also Bianco v. Globus Med., Inc.*, No. 12-cv-00147, 2014 WL 5462388, at *19-20 (E.D. Tex. Oct. 27, 2014) (rejecting motion to set aside jury award of reasonable royalties on trade secret misappropriation claim due to plaintiff's failure to apportion, as the jury was able to evaluate the evidence and determine the appropriate weight for "[defendant's] contributions to the development and commercialization" of the products at issue), *aff'd per curiam*, 618 F. App'x 1032 (Fed. Cir. 2015); *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008) (rejecting argument that apportionment was required for trade secret claim).

In contrast, the additional sentence in Telesocial's proposed instruction attempts to address a gap in the CACI model instructions, which provide no definition of "actual loss," despite the fact that they do offer specific instructions for other remedies available under California's trade secrets statute. *See* CACI 4410 (providing instruction on unjust enrichment); CACI 4411 (providing instruction on exemplary damages). Telesocial's instruction provides the jury with helpful examples of actual losses that offer meaningful guidance on the types of losses that a plaintiff might suffer as a result of trade secret misappropriation. *See* CACI 3903N (lost profits); *Top Agent Network, Inc. v. Zillow, Inc.*, Case No. 14-cv-04769-RS, 2015 WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015) (lost goodwill; damaged reputation); *Vehicular Technologies Corp. v. Titan*

*Wheel Intern., Inc.*, No. B169590, 2005 WL 1460296, at *12-13 (Cal. Ct. App., June 22, 2005) (lost business value, lost profits); *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 568-569 (S.D. Tex.), aff'd, 716 F.3d 857 (5th Cir. 2013) (lost business value); *Stanacard LLC v. Rubard LLC*, 12 Civ. 5176, 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) ("courts have found that lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed by the misappropriation of trade secrets") (collecting cases). Thus, the additional language proposed by Telesocial offers helpful guidance on this otherwise undefined measure of damages.

**Defendants' Position:**

Defendants' instruction should be given because Plaintiff's instruction fails to address their damages with sufficient precision. Plaintiff's damages must be tied to the trade secrets themselves. This instruction makes clear to the jury that Plaintiff is only entitled to the value of the protected (*i.e.*, patented or, as here, trade secret) features, and not the value of an entire product that incorporates those features. *See Garretson v. Clark,* 111 U.S. 120 (1884), *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("The law requires" apportionment); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012). As this Court has held in context of a patent reasonable royalty damages analysis:

> [w]hen the accused technology does not make up the whole of the accused products, and the patented feature does not drive the demand for the entire product, 'the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

*Open Text S.A. v. Box, Inc.*, No. 13-cv-04910, 2015 U.S. Dist. LEXIS 8783, *5-6 (N.D. Cal. Jan. 23, 2015), quoting *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Put another way, a damages award to Plaintiff must measure only "the incremental value" that is "added to the end product." *Ericsson*, 773 F.3d at 1226. Plaintiff's original instruction does not incorporate this requirement at all, which is why Defendants submit that the additional sentence must be included.

**DISPUTED INSTRUCTION NO. 66
RE: MISAPPROPRIATION OF TRADE SECRETS—LOST BUSINESS VALUE—
OFFERED BY PLAINTIFF TELESOCIAL**

To recover damages for lost business value, Telesocial must prove that Defendant's conduct caused Telesocial to suffer lost business value. To decide the amount of damages for lost business value, you must determine the difference between the value of Telesocial's business before the misappropriation and after the misappropriation.

The amount of lost business value damages need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

Authority:

*Top Agent Network, Inc. v. Zillow, Inc.*, Case No. 14-cv-04769-RS, 2015 WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015) (lost goodwill; damaged reputation); *Vehicular Technologies Corp. v. Titan Wheel Intern., Inc.*, No. B169590, 2005 WL 1460296, at *12-13 (Cal. Ct. App., June 22, 2005) (lost business value, lost profits); *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 568-569 (S.D. Tex.), aff'd, 716 F.3d 857 (5th Cir. 2013) (lost business value); *Stanacard LLC v. Rubard LLC*, 12 Civ. 5176, 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) ("courts have found that lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed by the misappropriation of trade secrets") (collecting cases); *see also* Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.2 (modified).

**Telesocial's Position:**

Telesocial's proposed instruction on lost business value is helpful and necessary to offer the jury guidance on calculating lost business value. Courts have found that lost business value is an appropriate measure of tort damages, including where business value is completely or almost completely destroyed by the misappropriation of trade secrets. *See Top Agent Network, Inc. v. Zillow, Inc.*, Case No. 14-cv-04769-RS, 2015 WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015) (lost goodwill; damaged reputation); *Vehicular Technologies Corp. v. Titan Wheel Intern., Inc.*, No. B169590, 2005 WL 1460296, at *12-13 (Cal. Ct. App., June 22, 2005) (lost business value, lost profits); *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 568-569 (S.D. Tex.), aff'd, 716 F.3d 857 (5th Cir. 2013) (lost business value); *Stanacard LLC v. Rubard LLC*, 12 Civ. 5176, 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) ("courts have found that lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed by the misappropriation of trade secrets") (collecting cases). The instruction is particularly appropriate in the context of the other proposed instructions on trade secrets damages which provide similar guidance on calculating lost profits, for example. *See* Instruction No. 67 (instruction on calculating lost profits for misappropriation of trade secrets).

**Defendants' Position:**

Plaintiff's custom-made instruction on "Lost Business Value" damages is not grounded in the law and or the facts of the case, and should not be given at all. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

In the first instance, there is no controlling law, in cases or statutes, supporting Plaintiff's loss of business value damages theory. To overcome this void Plaintiff has cobbled together a collection of authority that is neither controlling not particularly persuasive:

1. *Vehicular Technologies Corp. v. Titan Wheel Intern., Inc.*, No. B169590, 2005 Cal. App. Unpub. LEXIS 539 (June 22, 2005), is an uncited and (under the California Rules of Court) uncitable case where one of several damages calculations was based on the actual sale value of the plaintiff company.

2. In *Wellogix, Inc. v. Accenture, LLP, 823 F. Supp. 2d 555, 569 (S.D. Tex. 2011)*, *aff'd*, 716 F.3d 857 (5th Cir. 2013), the court undertook a lost business value analysis after holding that it was proper "[u]nder Texas law," citing to Texas state court cases.

3. Plaintiff's parenthetical quotation of *Stanacard LLC v. Rubard LLC*, 2016 U.S. Dist. LEXIS 162903, at *13 (S.D.N.Y. Nov. 10, 2016) omits the beginning of the sentence, which notes that lost business value damages have been awarded only "[i]n some cases" – and the court held that *Stanacard* was not one of them, as the court went on to exclude any testimony as to that theory.

Plaintiff also cites to 9th Circuit Model Civil Instruction 9.2, "Measures of Types of Damages" but this extensive list of different types of damages does not include lost business value at all.

Further, this theory of damages is particularly inappropriate in this case where there is no connection to the evidence. Plaintiff has offered expert testimony on Telesocial's enterprise value,[1] but has done nothing to connect those figures to any actual damages that it allegedly

---

[1] This issue is briefed more fully in Defendants' *Daubert* motions to exclude the Telesocial experts James Kearl (Dkt. No. 204) and George Foster (Dkt. No. 200).

1 suffered from Defendants' conduct.  Absent any support in the controlling law or facts of the case,

2 Plaintiff's instruction should not be given.

**DISPUTED INSTRUCTION NO. 67**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—LOST PROFITS—OFFERED BY**
**PLAINTIFF TELESOCIAL**

To recover damages for lost profits, Telesocial must prove it is reasonably certain it would have earned profits but for Defendants' conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Telesocial would have received but for Defendants' conduct and then subtract from that amount the expenses Telesocial would have had if Defendants' conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

Authority:

CACI 3903N (2016) (modified).

**DISPUTED INSTRUCTION NO. 67**
**RE: MISAPPROPRIATION OF TRADE SECRETS—LOST PROFITS—OFFERED BY**
**DEFENDANTS**

To recover damages for lost profits, Telesocial must prove it is reasonably certain it would have earned profits but for Defendants' conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Telesocial would have received but for Defendants' conduct and then subtract from that amount the expenses Telesocial would have had if Defendants' conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss, and you must not speculate or guess in calculating the amount.

Authority:

CACI 3903N (2016) (modified).

**Telesocial's Position:**

Telesocial disputes the very last sentence of Orange's proposed instruction because it departs from the CACI model instruction for lost profits damages, and is also duplicative of general instructions that will already be provided to the jury. Orange attempts to tack onto the end of an otherwise model instruction the statement that, "[y]ou must not speculate or guess in calculating the amount." This language does not appear anywhere in the CACI instruction on lost profit damages, or in the commentary associated with that instructions. *See* CACI 3903N. The language is also not necessary to include here because the jury is already cautioned against guesswork or speculation through the Stipulated Instruction No. 22 on the proof of damages, which in turn is based on Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1.

Orange cites to *Gilbrook v. City of Westminster,* 177 F.3d 839, 861 (9th Cir. 1999) for the proposition that damages "must not be premised on 'sympathy, speculation, or guess work.'" Telesocial does not dispute that such an instruction is proper, *see* Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1, but nothing in *Gilbrook* mandates repeating such an instruction numerous times. *See Gilbrook,* 177 F.3d at 861. Moreover, Orange overstates the court's findings in *Gilbrook,* which was not based on an isolated instruction regarding speculation or guess work, but rather on "[r]eading the [broader damages] instruction as a whole." *Id.* If one were to read the instructions in this case as proposed by Telesocial, one would find the jury was properly—but not repeatedly—cautioned against calculating damages based on guesswork and speculation.

**Defendants' Position:**

As in previous instructions, Orange requests an instruction that the jury not speculate or guess in awarding damages. In the Ninth Circuit, damages "must not be premised on 'sympathy, speculation, or guess work.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 861 (9th Cir. 1999) (affirming District Court's jury instruction). This instruction ensures that the jury weighs the evidence that is presented to it and, if it awards damages, that the jury arrives at a damages figure without recourse to speculation or guess work.

**DISPUTED INSTRUCTION NO. 68**
**RE: MISAPPROPRIATION OF TRADE SECRETS—UNJUST ENRICHMENT**

Orange was unjustly enriched if its misappropriation of one or more of Telesocial's trade secrets caused Orange to receive a benefit that it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Orange's benefit that would not have been achieved except for its misappropriation. Then subtract from that amount Orange's reasonable expenses. In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Telesocial's actual loss.

Authority:

CACI 4410 (2016) (modified).

**DISPUTED INSTRUCTION NO. 68**
**RE:  MISAPPROPRIATION OF TRADE SECRETS—UNJUST ENRICHMENT**

Orange was unjustly enriched if its misappropriation of one or more of Telesocial's trade secrets caused Orange to receive a benefit that it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Orange's benefit that would not have been achieved except for its misappropriation.  Then subtract from that amount Orange's reasonable expenses.  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Telesocial's actual loss, and you must not speculate or guess in calculating the amount.

Authority:
CACI 4410 (2016) (modified).

**Telesocial's Position:**

Telesocial disputes the very last sentence of Orange's proposed instruction because it departs from the CACI model instruction for unjust enrichment, and is also duplicative of general instructions that will already be provided to the jury. Orange attempts to tack onto the end of an otherwise model instruction the statement that, "you must not speculate or guess in calculating the amount." This language does not appear anywhere in the CACI instruction on unjust enrichment, or in the commentary associated with that instruction. *See* CACI 4410. The language is also not necessary to include here because the jury is already cautioned against guesswork or speculation through the Stipulated Instruction No. 22 on the proof of damages, which in turn is based on Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1.

Orange cites to *Gilbrook v. City of Westminster,* 177 F.3d 839, 861 (9th Cir. 1999) for the proposition that damages "must not be premised on 'sympathy, speculation, or guess work.'" Telesocial does not dispute that such an instruction is proper, *see* Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 5.1, but nothing in *Gilbrook* mandates repeating such an instruction numerous times. *See Gilbrook,* 177 F.3d at 861. Moreover, Orange overstates the court's findings in *Gilbrook,* which was not based on an isolated instruction regarding speculation or guess work, but rather on "[r]eading the [broader damages] instruction as a whole." *Id.* If one were to read the instructions in this case as proposed by Telesocial, one would find the jury was properly—but not repeatedly—cautioned against calculating damages based on guesswork and speculation.

**Defendants' Position:**

As in previous instructions, Orange requests an instruction that the jury not speculate or guess in awarding damages. In the Ninth Circuit, damages "must not be premised on 'sympathy, speculation, or guess work.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 861 (9th Cir. 1999) (affirming District Court's jury instruction). This instruction ensures that the jury weighs the evidence that is presented to it and, if it awards damages, that the jury arrives at a damages figure without recourse to speculation or guess work.

**STIPULATED INSTRUCTION NO. 69**
**RE:  NON-DUPLICATIVE DAMAGES**

Telesocial seeks an award of damages under multiple claims or legal theories against each Defendant.

After each claim or legal theory on your verdict form, there is a space for the amount of damages, if any, that you intend to award Telesocial under that claim or legal theory.  The amount you enter into these spaces should include all the damages that you conclude Telesocial may recover on that claim or legal theory, regardless whether the same damages are duplicated under another claim or legal theory.

However, Telesocial can only recover once for each harm or item of damage.  Therefore, at the end of the form there are spaces for the "total non-duplicative damages" against each Defendant.

You are instructed to write the total amount of damages you intend to award to Telesocial, if any, for all of the harm caused by all of the violations which you found that Defendant liable, without counting damages for the same harm twice as to that Defendant.

For example, if you find for Telesocial on more than one claim, and conclude that Telesocial suffered the same harm and is entitled to the same damages on more than one claim, only include those damages once in the "total non-duplicative damages."  Likewise, if you conclude that Telesocial suffered different and distinct harm on different claims, resulting in different damages on those claims, you should add the different damages figures resulting from those claims together for the "total non-duplicative damages" number.

Authority:

Adapted from Instruction given in *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-00106-LRH-VCF, Dkt. 880 (D. Nev. Oct. 6, 2015).

## STIPULATED INSTRUCTION NO. 70
## RE:  PUNITIVE DAMAGES—LIABILITY

If you find that Telesocial is entitled to compensatory damages for actual harm or loss on any of the following claims, then you may, but are not required to, award punitive damages to Telesocial:

1.      California Computer Data Access and Fraud Act ("CDAFA"); or

2.      Misappropriation of Trade Secrets.

You may not award punitive damages with respect to any other claim by Telesocial.

If you find that Telesocial is entitled to compensatory damages for actual harm or loss caused under one or more of those claims, then you may consider whether you should award punitive damages against that Defendant.  The question whether to award punitive damages against a particular Defendant must be considered separately with respect to each Defendant.

You may award punitive damages against a Defendant only if Telesocial proves by clear and convincing evidence that the wrongful conduct upon which you base your finding of liability for compensatory damages was engaged in with fraud, oppression or malice on the part of that Defendant.  You cannot punish the Defendant for conduct that is lawful, or which did not cause actual harm or loss to Telesocial.  For the purposes of your consideration of punitive damages only:

"Fraud" means an intentional misrepresentation, deception or concealment of a material fact known to a Defendant with the intent to deprive Telesocial of rights or property or to otherwise injure Telesocial.

"Oppression" means despicable conduct that subjects Telesocial to cruel and unjust hardship with a conscious disregard of the rights of Telesocial.

"Malice" means conduct which is intended to injure Telesocial or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others.

"Despicable conduct" means conduct that is so vile, base, or contemptible that it would be looked down on and despised by ordinary, decent people.

"Conscious disregard" means knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to avoid these consequences.

"Willfully" means acting with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

The purposes of punitive damages are to punish a wrongdoer that acts with fraud, oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to make the plaintiff whole for its injuries. Consequently, a plaintiff is never entitled to punitive damages as a matter of right and whether to award punitive damages against a Defendant is entirely within your discretion.

You are only asked to decide whether punitive damages would be proper and justified in this case. You are not asked at this time to determine an amount of punitive damages.

Authority:

CACI 4411 (2016) (modified); Instruction given in *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-00106-LRH-VCF, Dkt. 880 (D. Nev. Oct. 6, 2015) (applying California law regarding claim under California Computer Data Access and Fraud Act) (modified).

**STIPULATED INSTRUCTION NO. 71**
**RE: UNLAWFUL BUSINESS PRACTICES—INTRODUCTION**

Telesocial claims that Orange has violated the California Unfair Competition Law by engaging in unfair and unlawful business acts and practices. Specifically, Telesocial claims that Orange has engaged in unfair and unlawful business acts and practices in California by (1) violating the Computer Fraud and Abuse Act; (2) violating the California Comprehensive Computer Data Access and Fraud Act; and (3) using fictitious names and identities to conceal violations of the CFAA and CDAFA.

Orange denies these claims.

# STIPULATED INSTRUCTION NO. 72
## RE: UNLAWFUL BUSINESS PRACTICES—DEFINED

For the purposes of the California Unfair Competition Law, an "unlawful business act or practice" may include any business practice that violates state or federal law.  Therefore, you should find that Orange violated the California Unfair Competition Law by engaging in unlawful business practices if you determine that Orange has committed any of the following violations of state or federal law pursuant to my previous instructions:

1.    violating and/or causing their agents and employees to violate the Federal Computer Fraud and Abuse Act;

2.    violating and/or causing their agents and employees to violate the California Comprehensive Computer Data Access and Fraud Act; and

3.    using and/or causing their agents and employees to use fictitious names and identities to conceal the aforementioned violations whether intentionally or negligently.

Authority:

Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1992); *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."); William L. Stern, Bus. & Prof. C. §17200 Practice, § 3:56 (2010) (paraphrased).

**STIPULATED INSTRUCTION NO. 73**
**RE: RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk][bailiff] that you are ready to return to the courtroom.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 3.5.

**STIPULATED INSTRUCTION NO. 74
RE: DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury here in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 3.1.

## STIPULATED INSTRUCTION NO. 75
## RE:  CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

>Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

>Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or

the lawyers—until you have been excused as jurors.  If you happen
to read or hear anything touching on this case in the media, turn
away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has
been presented here in court.  Witnesses here in court take an oath to tell the truth, and the
accuracy of their testimony is tested through the trial process.  If you do any research or
investigation outside the courtroom, or gain any information through improper communications,
then your verdict may be influenced by inaccurate, incomplete or misleading information that has
not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial
jury, and if you decide the case based on information not presented in court, you will have denied
the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very
important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any
juror is exposed to any outside information, please notify the court immediately.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 3.2.

**STIPULATED INSTRUCTION NO. 76**
**RE:  COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Authority:

Ninth Circuit Manual of Model Civil Jury Instructions (2007, revised 1/2017) No. 3.3.

Dated: March 9, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____
*/s/Todd M. Briggs*
TODD M. BRIGGS

Attorneys for Plaintiff
Telesocial, Inc.

Dated: March 9, 2017

FOLEY HOAG LLP

By: _____
*/s/Anthony Mirenda*
ANTHONY MIRENDA

Attorneys for Defendants Orange S.A., Anne
Benrikhi, Dimitri Delmas, Olivier Godiniaux,
Guillaume Guimond, Fabrice Petesch,
Jacques Viel, Florian De Sa, Barbara
Bobillier, Benoit Amet, Thomas Lessenechal,
and Antoine Lecoutteux