REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DURIE TANGRI LLP
  Daralyn J. Durie (SBN 169825)
  ddurie@durietangri.com
  Eugene Novikov (SBN 257849)
  enovikov@durietangri.com
  James Tsuei (SBN 285530)
  jtsuei@durietangri.com
217 Leidesdorff Street
San Francisco, California 94111
+1 (415) 362-6666
+1 (415) 236-6300 facsimile

*Attorneys for Orange, S.A.*

FOLEY HOAG LLP
  Daniel Schimmel (*pro hac vice*)
  dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, New York 10036
+1 (646) 927-5500
+1 (646) 927-5599 facsimile

  Anthony Mirenda (*pro hac vice*)
  amirenda@foleyhoag.com
Seaport West
155 Seaport Boulevard
Boston, MA 02210
+1 (617) 832-1220
+1 (617) 832-7000 facsimile

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> ORANGE S.A., et al., <br><br> Defendants. | Case No. 3:14-cv-03985-JD <br><br> **DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION EXCLUDE THE OPINIONS AND TESTIMONY OF GEORGE FOSTER (D.I. 199)** <br><br> Date: February 16, 2017 <br> Time: 10:00 a.m. <br> Ctrm: 11, 19th Floor <br> Judge: Honorable James Donato <br> Trial: April 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

In this supplemental memorandum of points and authorities, requested by the Court at the March 9, 2017 hearing in this case, the Orange Defendants further address whether damages expert George Foster's calculation of Plaintiff Telesocial, Inc.'s hypothetical enterprise value in the "but-for world" is relevant to any appropriate remedy in this case.

## ARGUMENT

While some cases (all but one from other circuits) have allowed the use of a plaintiff's diminished corporate value as a measure of damages, what Telesocial proposes to do with Foster's testimony is unprecedented, legally incorrect, and should not be permitted.  Foster's entire expert report is devoted to a single task: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  But that number is not relevant to anything.  *First*, using a company's counterfactual value at a future point in time, after the occurrence of hypothetical events that Foster himself admits might or might not have happened, as a measure of compensatory damages, is unsound as a matter of law, economics, and logic.  *Second*, even if such an estimate *could* be used as a starting point for a damages calculation, Foster's opinion will not assist the jury.  He says nothing about the loss that Telesocial allegedly suffered, and does not even attempt to apportion the value he assigns to his hypothetical version of Telesocial to help a jury calculate that loss.  The Court should not admit bare testimony that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with nothing to tether those numbers to what Telesocial should be permitted to recover in this case.

### I.   TELESOCIAL'S VALUE AFTER HYPOTHETICAL TRANSACTIONS IS IRRELEVANT.

The California Uniform Trade Secret Act permits recovery of damages for "the actual loss caused by misappropriation." Cal. Civ. Code § 3426.3.  The most common measure of compensatory damages in a trade secret case is lost profits, which serve as a logical estimate of "the value of the loss of the secret to the [plaintiff] under the circumstances." *Tri-Tron Int'l v. Velto*, 525 F.2d 432, 437 (9th Cir. 1975); *see also Clark v. Bunker*, 453 F.2d 1006, 1011 (9th Cir. 1972).  In a few cases, discussed below, courts have permitted the use of the actual value of the plaintiff's business at the time of the loss as a reference point to calculate the damages amount.  But it would be unprecedented to permit the

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1 plaintiff to project the *hypothetical* value of its business into a world in which a number of fortunate
2 contingencies have come to pass, and use *that* value as a measure of damages.  Such a theory is
3 fundamentally unsound.
4     Telesocial appears to be arguing that it is entitled to recover some portion of its *enterprise value*
5 allegedly wiped out by the Orange Defendants' misconduct.  But rather than ▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Telesocial
7 instead asked Foster to calculate the value of Telesocial in a counterfactual future world where ▮▮
8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9 ▮▮▮▮▮.  The gist of Foster's opinion is that *had* these things occurred ▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Dkt.
11 215-2 ¶¶ 19, 70–71 (Exhibit 1 to Foster Decl.).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮     As the Orange Defendants argued in their motion, Foster's methodology is at best
14 questionable.  But even were he able to pinpoint Telesocial's value in this hypothetical world with
15 100% accuracy, his testimony should still be excluded because *the only even arguably relevant*
16 *valuation of Telesocial is its actual value at the time of the loss*—not the but-for-world value about
17 which Foster opines.
18     The reason is that a valuation of Telesocial prior to the alleged misappropriation would already
19 have reflected the possibility of a future financing round and a telecom deal.  A company valuation
20 incorporates within it both potential upside and uncertainty.  Financiers invest in a company because
21 they hope it will do well and the value of their investment will rise, but the amount they pay for shares
22 includes a discount for downside risk.  Thus, the value of Telesocial at the time of the alleged theft
23 would have already taken into account the market's view of the chance that the positive outcomes that
24 Foster takes as given would actually occur.  Foster testified at his deposition that ▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮.  Dkt. 200-3 at 58:14–25 (Exhibit 2 to Mirenda Decl.).  In other words,
27 Foster simply cheats by assuming that the probability of these events occurring was 100%, even though
28 he conceded, as he had to, that his assumption was counter-factual and that the probability of those

events was in fact less than 100%.  *Id.* at 57:10–58:13.  Because the actual value of Telesocial as of the date of breach necessarily already reflected all future expectancies that existed as of that date, all Foster has done is to inflate that value by making assumptions that inherently uncertain future contingencies in fact would have occurred.

Thus, even if one accepts Telesocial's general damages theory—that it is entitled to use the value of the company as a proxy for the value of the trade secrets—the number Foster generated is not the right one.  Consequential damages in a tort case must be based on the actual value of the thing allegedly destroyed or taken *at the time of the tortious act*.  *Hyatt v. Sierra Boat Co.*, 79 Cal. App. 3d 325, 342 (1978).  Just as it would be no excuse in an arson case that "the next week after [the defendant] burned the plaintiff's house a great and innocently caused conflagration swept the site" because "the value was still there when the defendant did the burning," Telesocial is not entitled to turn the possibility of forthcoming good fortune into a certainty.  *Id.*  If Telesocial wants to use its value as a measure of damages, it must use its actual value at the time of the alleged wrong as the starting point.

The cases (all but one from other circuits) that have endorsed the use of a company's value as a measure of damages for trade secret misappropriation are in accord.  In *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879–880 (5th Cir. 2013), the Fifth Circuit, applying Texas law, upheld the use of the plaintiff's enterprise value as a measure of damages where the jury based its verdict on expert testimony about the company's value *at the time of the loss*.  The court emphasized that the financial projections used to estimate the value took into account venture capital groups' comprehensive risk evaluation at the time of their investment.  *Id.* at 880.  The unpublished case *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, No. B169590, 2005 WL 1460296, at *13 (Cal. Ct. App. June 22, 2005), dealt with different facts, permitting recovery for the depressed sale price of a plaintiff's business in an actual transaction that took place after the misconduct.  *Stanacard, LLC v. Rubart LLC*, No. 12 CIV. 5176 (CM), 2016 WL 6820741, at *4 (S.D.N.Y. Nov. 10, 2016) merely says that "[i]n some cases, courts have found that lost business value is an appropriate measure of damages when business value is completely or almost completely destroyed by the misappropriation of trade secrets."  For that proposition, *Stanacard* cites the district court in *Wellogix* along with *DeVries v. Starr*, 393 F.2d 9, 10 (10th Cir. 1968), which permitted the jury to make an inference about the "value of the enterprise

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

against which a wrong is alleged" from actual data about sales volume and profits for several years before and after the alleged theft.  In short, none of the cases supporting Plaintiff's "lost business value" damages thesis have permitted a plaintiff to rely on an expert's arbitrary conjuring-up of a counterfactual future world in which the value of a plaintiff's business is inflated by fortunate contingencies that occurred in the meantime.  Foster's opinion should be excluded for this reason alone.

## II. FOSTER'S OPINION WILL NOT HELP THE JURY TO REACH A DAMAGES VERDICT.

Even if Foster's projection of Telesocial's value *were* relevant to the damages calculation in this case, his testimony should still be excluded because he does not apportion his projected value of the company to determine what portion would be attributable to its trade secrets.

Foster admits that ███████████████████████████████████████████████ ███████████████████████████████████. Dkt. 200-3 at 28:4–12 (Exhibit 2 to Mirenda Decl.).  *All* he offers is his opinion of what the projected value of the company would have been had ███████████████████████████████████████████████████████████████████████████████. But he does not tether that number to any loss actually suffered by Telesocial, and the jury would have no basis to go from the valuation that Foster provides to a damages number supportable by the evidence.  In that situation, the opinion should be excluded as unhelpful to the jury under Fed. R. Evid. 702.  *See ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614 (9th Cir. 2016) (proper to exclude opinion where the jury would be missing an "essential input" required to get from the expert's calculation to a damages number).

Telesocial may argue that the jury could rationally conclude that Foster's valuation *is* the proper damages figure, on the theory that the Orange Defendants' conduct wiped out the entire value of Telesocial.  But there is no foundation for such a conclusion in the record, and Foster himself provides none.  *Stop Staring! Designs v. Tatyana, LLC*, No. 09-2014 DSF (AJWX), 2012 WL 12877991, at *1 (C.D. Cal. Feb. 21 2012), *aff'd sub nom. Stop StaringA Designs v. Tatyana, LLC*, 625 F. App'x 328 (9th Cir. 2015) (damages expert's testimony excludable where his damages scenarios lack a factual foundation).  Moreover, this argument is precluded by Foster's report, which ███████ ████████████████████████████████████████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

████████████████████████████████████████████████████ Dkt. 215-2 ¶¶ 21–22 (Exhibit 1 to Foster Decl.).  At his deposition, Foster ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ (Dkt. 215-3 at 48:4–49:20 (Exhibit 2 to Foster Decl.).  But Foster makes no attempt to apportion Telesocial's value among its various components.  Therefore, even if the jury finds that the Orange Defendants' conduct destroyed Telesocial's trade secrets and immediate business prospects, it would have no basis upon which to determine what portion of the company's value was attributable to the trade secrets—██████ ████████████████████████████████████████████████. *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV04-9049 DOC (RNBx), 2011 WL 836418, at *3 (C.D. Cal. Mar. 4, 2011) (excluding expert testimony that failed to properly apportion value among the claimed trade secrets); *cf. Mgmt. & Eng'g Techs. Int'l, Inc. v. Info. Sys. Support, Inc.*, 490 Fed. Appx. 30, 34 (9th Cir. 2012) (finding that a jury verdict was not legally supportable where the damages expert did not apportion value among the legally valid and legally invalid trade secrets) (Arizona law).

## CONCLUSION

Because Foster's opinions are irrelevant and unhelpful to the jury, his testimony should be excluded in its entirety.

Dated: March 13, 2017                              Respectfully submitted,

                                                   */s/ Daralyn J. Durie*

                                                   DURIE TANGRI LLP
                                                     Daralyn J. Durie (SBN 169825)
                                                     ddurie@durietangri.com
                                                     Eugene Novikov (SBN 257849)
                                                     enovikov@durietangri.com
                                                     James Tsuei (SBN 285530)
                                                     jtsuei@durietangri.com
                                                   217 Leidesdorff Street
                                                   San Francisco, California 94111
                                                   +1 (415) 362-6666
                                                   +1 (415) 236-6300 facsimile

                                                   *Attorneys for Orange, S.A.*

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

FOLEY HOAG LLP
Daniel Schimmel (*pro hac vice*)
dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, New York 10036
+1 (646) 927-5500
+1 (646) 927-5599 facsimile

Anthony Mirenda (*pro hac vice*)
amirenda@foleyhoag.com
Seaport West
155 Seaport Boulevard
Boston, MA 02210
+1 (617) 832-1220
+1 (617) 832-7000 facsimile

*Attorneys for Defendants*

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Eugene Novikov, attest that concurrence in the filing of this document has been obtained.

Dated: March 13, 2017            */s/ Eugene Novikov*
                                    Eugene Novikov