QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  Todd M. Briggs (Bar No. 209282)
  toddbriggs@quinnemanuel.com
  David E. Myre (Bar No. 304600)
  davidmyre@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Edward J. DeFranco (Bar No. 165596)
  eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

SINGER / BEA LLP
  Benjamin L. Singer (Bar No. 264295)
  bsinger@singerbea.com
  Renee Bea (Bar No. 268807)
  rbea@singerbea.com
601 Montgomery Street, Suite 1950
San Francisco, California 94111
Telephone:     (415) 500-6080
Facsimile:     (415) 500-7080

Attorneys for Plaintiff
TELESOCIAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL, INC.,<br><br>             Plaintiff,<br><br>      vs.<br><br>ORANGE S.A., et al.,<br><br>             Defendants. | CASE NO. 3:14-CV-03985-JD<br><br>**TELESOCIAL, INC.'S SUPPLEMENTAL BRIEFING ON ORANGE'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PROFESSOR GEORGE FOSTER**<br><br>Ctrm: 11, 19th Floor<br>**Judge: Hon. James Donato** |

1    In this supplemental brief, as requested by the Court at the March 9, 2017 hearing, Plaintiff

2    Telesocial Inc. ("Telesocial") addresses whether lost business value is an appropriate measure of

3    damages for its trade secret misappropriation claims.  California precedent confirms that "actual

4    loss" under the California Uniform Trade Secrets Act ("CUTSA") encompasses a wide range of

5    harms, including lost business value.  This precedent is consistent with decisions from many other

6    courts that have expressly held that lost business value is an "actual loss" when interpreting

7    damages statutes similar to the CUTSA.  Thus, given that Orange's misappropriation effectively

8    destroyed Telesocial's business value, Professor George Foster's lost business value analysis is

9    relevant and should not be excluded from presentation to the jury.

10   **I.    TELESOCIAL MAY RECOVER ITS LOST BUSINESS VALUE UNDER CUTSA.**

11   Under the CUTSA, "[a] complainant may recover damages for the actual loss caused by

12   misappropriation.  A complainant also may recover for the unjust enrichment caused by the

13   misappropriation that is not taken into account in computing damages for actual loss."  Cal. Civ.

14   Code § 3426.3(a).  While "actual loss" is not expressly defined by statute, it refers to the losses or

15   injuries actually suffered by the plaintiff, as opposed to the "unjust enrichment" gained by the

16   defendant.  This division between "actual loss" and unjust enrichment in the CUTSA demonstrates

17   that "actual loss" simply means actual damages—*i.e.*, compensatory damages.  As explained in

18   *Saunders v. Taylor*, in California law, "actual damages is a term synonymous with compensatory

19   damages," and is used to "denote compensatory damages for actual injuries, as opposed to other

20   types of relief" such as nominal, exemplary, punitive or equitable remedies.  42 Cal. App. 4th

21   1538, 1544 (1996); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1146-47 (N.D. Cal.

22   2005).  As loss of business value is an actual concrete loss suffered by Telesocial, it is included

23   within "actual loss" under the CUTSA.

24   Actual loss under the CUTSA is often measured in terms of lost profits, *see Tri-Tron*

25   *Intern. v. Velto*, 525 F.2d 432, 437-38 (9th Cir. 1975), but California courts have also endorsed the

26   use of several other measures of "actual loss" for trade secret damages.  *See, e.g., Litton Sys., Inc.*

27   *v. Ssangyong*, 1993 WL 317266, at *2 (N.D. Cal. Aug. 19, 1993) ("lost various contracts and the

28   value of its San Carlos operation had declined significantly"); *Top Agent Network v. Zillow*, 2015

WL 10435931, at *4 (N.D. Cal. Aug. 6, 2015) ("significant harm, both financially and to [plaintiff's] goodwill and reputation"); *ATS Prod., v. Champion Fiberglass,* 2014 WL 466016, at *3 (N.D. Cal. Feb. 3, 2014) ("lost sales and/or lost royalties" and "damages to ATS's reputation"); *Leatt Corp. v. Innovative Safety,* 2010 WL 11442713, at *5 (S.D. Cal. Aug. 24, 2010) (development costs); *Clark v. Bunker,* 453 F.2d 1006, 1011 (9th Cir. 1972) (income on trust funds which plaintiff would have received but for the trade secret misappropriation).

Given courts' "broad latitude in fashioning appropriate remedies" and "considerable leeway in calculating a damage award for trade secrets theft," *Litton Sys.*, 1993 WL 317266, at *2 (collecting cases); *Cadence Design Sys. v. AvantA*, 29 Cal. 4th 215, 226 (2002) ("a successful trade secret plaintiff is entitled to the full panoply of remedies"), California courts faced with the destruction of a plaintiff's business by a defendant's misappropriation or other misconduct have found the value of that lost business is an appropriate measure of "actual loss." *Vehicular Techs. Corp. v. Titan Wheel*, 2005 WL 1460296, at *1 (Cal. Ct. App. June 22, 2005) (unpublished); *Elec. Funds Sols. v. Murphy*, 134 Cal. App. 4th 1161, 1181 (2005) (party could seek recovery of lost future value even though it was an "unestablished business" without historical revenues, by relying on "economic and financial data, market surveys and analyses, business records of similar enterprises" or "general business conditions and the degree of success of similar enterprises"). For example, in *Vehicular Techs.*, the California Court of Appeal found that the plaintiff could recover both lost profits and lost business value damages on its claims, including trade secret misappropriation. 2005 WL 1460296, at *4, *13. The court noted: "Vehicular presented evidence that without Tractech's tortious conduct, it would have had a prosperous business in 2002, which could have been sold for a high price, but that due to Tractech's conduct, it was a business with low sales, poor marketing, and management disarray, and could only command a low price." *Id.* at *13; *see Elec. Funds*, 134 Cal. App. 4th at 1181.

Interpreting trade secret damages statutes similar to the CUTSA (including UTSA-based statutes), courts across the country have also consistently held that loss in business value is an appropriate measure of actual loss caused by trade secret misappropriation. *E.g. Wellogix v. Accenture*, 716 F.3d 867, 880 (5th Cir. 2013) (holding that loss of business value is a recoverable

1    form of "actual damages" under Texas common law and the Texas Theft Liability Act); *W. Plains*

2    *v. Retzlaff Grain*, 2016 WL 165698, at *3 (D. Neb. Jan. 13, 2016) (same, interpreting "actual loss"

3    under Neb. UTSA-based statute); *CardioVention v. Medtronic*, 483 F. Supp. 2d 830, 846 (D.

4    Minn. 2007) (same, interpreting "actual loss" under Minn. UTSA-based statute); *Eagle Grp. v.*

5    *Pullen*, 58 P.3d 292, 299 (Wash. App. 2002) (finding that "actual loss" under Wash. UTSA-based

6    statute may include lost future business opportunities); *Stanacard v. Rubard*, 2016 WL 6820741,

7    at *4 (S.D.N.Y. Nov. 10, 2016) (noting that "courts have found that lost business value is an

8    appropriate measure of damages when business value is completely or almost completely

9    destroyed by the misappropriation of trade secrets," but precluding expert because those facts were

10   not alleged by plaintiff); *Micro Data Base Sys. v. Dharma Sys.,* 148 F.3d 649, 658 (7th Cir. 1998)

11   (finding party entitled to seek damages for loss of future business caused by misappropriation,

12   interpreting N.H. UTSA-based statute); *see also* UTSA § 8 (providing for "[u]niformity of

13   application and construction" and reciting that the UTSA's provisions "shall be applied and

14   construed to make uniform the law relating to misappropriation of trade secrets among states

15   enacting substantially identical laws").

16         The Fifth Circuit's analysis in *Wellogix v. Accenture* is instructive.  716 F.3d at 879-80.

17   While the court was addressing a misappropriation claim under the Texas Theft Liability Act, as

18   opposed to the CUTSA, the fundamental issue was the same—*i.e.*, whether a jury could award as

19   "actual damages" the value of the plaintiff's business destroyed as a result of the alleged

20   misappropriation.  *Id.*  Noting the "'flexible' approach used to calculate damages for claims of

21   misappropriation of trade secrets," the court held that recovery of actual damages based on the

22   plaintiff's value was appropriate where evidence was presented that defendant misappropriated

23         [plaintiff's] trade secrets to develop complex services technology; that this
     misappropriation created a competitive disadvantage; that this disadvantage caused
24         [plaintiff's] value to drop to 'zero'; and that this disadvantage also caused
     [plaintiff] to lose out on potential deals with other oil and gas companies.
25

26   *Wellogix*, 716 F.3d at 879-80.  As noted, courts in other districts have found such reasoning

27   applies equally to recovery of "actual losses" under UTSA-based damages statutes.  *W. Plains*,

28   2016 WL 165698, at *3; *CardioVention*, 483 F. Supp. 2d at 846; *Eagle Grp.*, 58 P.3d at 299.

Telesocial similarly alleges that Orange's misappropriation destroyed the value of its business.  Specifically, Telesocial spent years developing trade secrets to bridge the gap between rapidly-growing social networks and the traditional telecommunications industry—trade secrets that were the core of its entire business.  (D.E. 37 ¶ 24-28, 33).  By stealing Telesocial's trade secrets then announcing a partnership to launch a product built from them with Facebook in November 2012, Orange deprived Telesocial of any opportunity to continue its business, effectively destroying the value of the company.  For example, Telesocial's Director of Global Marketing Ylva Rahm testified that, despite "several months" of talks and "genuine interest" from mobile operators, Telesocial was thereafter unable to do a deal with anyone because Orange "stole our idea and launched it as their own. So we had no possibility of selling it anymore, marketing it anymore." (Ex. A, at 204:20-205:25).  Orange's misappropriation destroyed Telesocial's ability to secure any partnership or any venture capital funding, eviscerating Telesocial's business value.

Accordingly, Telesocial should be permitted to present evidence regarding, and seek to recover, its actual losses in the form of this complete loss of business value, including the expert opinions and analyses of Professor Foster.  *Vehicular Techs.*, 2005 WL 1460296, at *13; *Wellogix*, 716 F.3d at 879-80.  Indeed, Defendants have not identified any case law prohibiting recovery for lost business value as an "actual loss" under the CUTSA.  Professor Foster analyzed that lost business value caused by Orange's misconduct and opined that the value of Telesocial would have increased to between $43.885 and $51.002 million if, instead of stealing Telesocial's innovation, Orange had acted in good faith and partnered with Telesocial to launch products based on that technology, or simply not stolen its inventions in the first place.  (D.E. 214-06, ¶¶ 13, 19).  Foster's analysis and opinions are relevant to, and will inform the jury regarding, Telesocial's "actual losses" under the CUTSA, as well as under Telesocial's breach of contract, CFAA and CDAFA claims, and should not be precluded.  *See Vehicular Techs.*, 2005 WL 1460296, at *12-13 (breach of contract);  *Oracle v. Rimini St.*, 191 F. Supp. 3d 1134, 1146 (D. Nev. 2016) (CDAFA); *AtPac v. Aptitude Sols.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (CFAA).

Orange argued that Foster's opinion is nonetheless inadmissible because it was improper for him to "project[] forward" and consider potential future events that may have impacted

Telesocial's value but for Orange's conduct. (Ex. C, at 13:14-19). The Court recognized the flaw in that position, as it would "end with [] an unacceptable proposition that it's okay to fleece a brand new company because they can't show actual losses." (*Id.* at 12:25-13:1). Case law is in accord, as courts have confirmed that prospective business opportunities that may have occurred but for alleged misconduct may be taken into account in determining lost business value. *Elec. Funds*, 134 Cal. App. 4th at 1181 (permitting an "unestablished business" to seek potential future profits that it allegedly would have earned but for defendant's theft of its customers and business methods); *CardioVention*, 483 F. Supp. 2d at 846 (allowing testimony regarding what plaintiff's business could have done "if it had obtained financing" and competed in the market when calculating lost business value, rejecting assertion that this opinion was "too speculative" because it was "based on a product that had no track record of sales, faced significant market resistance, and is contradicted by the record of actual sales"); *Eagle Grp.*, 114 Wash. App. at 420 (confirming that "actual losses" under UTSA-based statute "may include lost business opportunities").

Orange also asserted at oral argument that "there's no foundation here for the assumption that the entire value of the company derived only from the specific trade secrets that were allegedly misappropriated." (Ex. C, at 13:10-13). But that is a question for the jury, not a *Daubert* motion, and the case law confirms that where facts support a finding that the defendant's conduct eviscerated the entire value of a company, damages representing the full value of the company may be awarded. *Wellogix*, 716 F.3d at 879-80 (upholding jury award of damages based on full value of the destroyed company); *see also Vianet v. Tap Acquisition*, 2016 WL 4368302, at *22 (N.D. Tex. Aug. 16, 2016) (permitting plaintiff to pursue damages based on "full enterprise value" of the company); *W. Plains*, 2016 WL 165698, at *3 (denying motion to preclude plaintiff from presenting evidence regarding the "total loss of value" of its business).

In sum, well-established principles of California law confirm that Foster's opinion provides relevant and admissible testimony regarding Telesocial's lost business value that, when Telesocial proves the facts as outlined above, will help guide the jury as to an appropriate measure of "actual loss" under the CUTSA that Telesocial seeks to recover. Orange's motion to exclude Professor Foster's testimony should be denied.

1

DATED:  March 13, 2017

2

By: */s/ Todd M. Briggs*
Todd M. Briggs

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL BRIEFING ON ORANGE'S MOTION TO EXCLUDE GEORGE FOSTER