DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
EUGENE NOVIKOV (SBN 257849)
enovikov@durietangri.com
JAMES S. TSUEI (SBN 285530)
jtsuei@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:     415-236-6300

FOLEY HOAG LLP
DANIEL SCHIMMEL (*pro hac vice*)
dschimmel@foleyhoag.com
1540 Broadway, 23rd Floor
New York, NY 10036
Telephone:    646-927-5500
Facsimile:     646-927-5599

ANTHONY MIRENDA (*pro hac vice*)
amirenda@foleyhoag.com
155 Seaport Blvd.
Boston, MA 02210
Telephone:   617-832-1220
Facsimile:    617-832-7000

Attorneys for Defendant
ORANGE S.A.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TELESOCIAL INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>ORANGE S.A., *et al.*,<br><br>        Defendants. | Case No. 3:14-cv-03985-JD<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S APRIL 3, 2017 STATUS REPORT**<br><br>Ctrm:   11, 19th Floor<br>Judge:  Honorable James Donato<br>Trial:    April 10, 2017 |

There are two important takeaways from Plaintiff's status report.

I. **ALTERNATIVE FUNDING, ON ANY TIMETABLE, REMAINS SPECULATIVE.**

Plaintiff's status report makes clear that a "brief continuance" is not actually a viable response to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Telesocial's failure to secure adequate funding to meet its trial needs, or to reasonably budget what funding it had, should not cause the Court to upend a trial schedule set many months ago. Telesocial admits ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Rather than deal with this then, or at the least alert the Court, it chose to gamble and that gamble failed. There is no unfairness in holding Telesocial to the state of affairs for which it alone is responsible. See Fed. R. Civ. P. 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("The focus of the inquiry is upon the moving party's reasons for seeking modification," and if "that party was not diligent, the inquiry should end.").

///

///

## II. TELESOCIAL'S FALLBACK POSITION AMOUNTS TO HAVING ITS PRINCIPALS TESTIFY AS STEALTH EXPERTS.

Telesocial's fallback position—requesting that Telesocial's principals be given access to all of Orange's technical documents[1] (which had been produced pursuant to the Court's normal protective order) so that they could then testify about them—is a false flag.  Any **fact** testimony about Orange's products can be gleaned from the Orange employees, and Telesocial already designated six of them as witnesses in its case-in-chief, including the two people discussed at the Pre-Trial Conference who Telesocial insisted cancel their family plans so that they could be available to testify in San Francisco the week of April 10.[2]  It is plain from Telesocial's argument in its initial motion that the purpose of having its principals review these materials is to present their analysis as a substitute for the analysis performed by Telesocial's technical experts:  "[E]ven if Telesocial could review Orange's produced documents at this late stage," Telesocial writes, "expecting Telesocial to prepare another witness within two weeks on information that Telesocial's experts took months to analyze is impractical, if not impossible." (Telesocial's Motion for a Continuance (D.I. 280) at 3.)

But Telesocial proposes to do this without having disclosed such stealth opinions and the bases for the opinions during discovery, without these witnesses being deposed on those opinions, and without the opinions being subject to *Daubert* scrutiny.  Would Telesocial's principals be limited to the opinions disclosed in the reports of its actual experts?  Would they be bound by the concessions made at those experts' depositions?  Such a course would create a dozen new issues, and not really solve the underlying

---

[1] Telesocial's argument about certain materials designated under the protective order misses the point.  It is true that Defendants have dedesignated some specific documents to permit them to be filed in open court; the issue is not with those, but with the many documents still designated.  Telesocial has not informed Defendants as to which particular documents or other materials (including Orange's source code for all of the different products produced in discovery) it proposes to share with Telesocial's principals; those documents would have to be considered on an individualized basis with Orange.  In the end, such a process would be to no avail, because even if Telesocial's principals could see the documents, they still could not testify as percipient witnesses about documents they are just now seeing for the first time.

[2] Telesocial told the Court: "[W]e believe that they should come the prior week, because, you know, this trial's been scheduled for approximately six months now.  And we think it's unfair if they only have their witnesses come to testify live during their case, but not during our case." (Declaration of Daralyn Durie in Support of Defendants' Opposition to Telesocial's Motion for a Continuance (D.I. 285-1), Ex. 2, at 53:20–24.)  The Court agreed, saying "Mr. Briggs has the right to present his case in the format he wants," and noting that "trial's been set for many, many months." (*Id.* at 55:24–25, 56:11–14.)

1 problem.

2                                              ***

3       If ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, then the Court and Defendants will once again be faced with a last minute scramble.  Based on the trial schedule set many months ago, Defendants have already coordinated the schedules of fourteen French witnesses who are traveling to San Francisco to testify at trial starting next week, including six who Telesocial has said it will call during its case-in-chief, and two who are no longer Orange employees.  Each of these individuals has his or her own personal and professional scheduling challenges and each has many other people – their families, colleagues, clients, and customers – who depend on their availability.  Resetting the trial for a date in June is unlikely to solve Telesocial's funding problem.  And if it did, then at that point, Defendants' case will be prejudiced by Defendants' inability to present witnesses – including third parties – who are available now but who would be unavailable months from now.  In addition, Defendants' trial counsel each have other long-scheduled case commitments that impact availability, including May and June arbitrations involving multiple other parties, and family commitments that were scheduled months ago around this trial date.

### III.     CONCLUSION

It is unfair and unwarranted to shift the burden of Telesocial's calculated risk and failed bet onto Orange.  We are aware of no case—and Telesocial does not cite any—in which a Court has granted a last-minute continuance of trial under these circumstances.  The Court should not allow Telesocial, having failed to raise its financial predicament earlier, to continue this trial because it ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Telesocial's request should be denied.

Dated: April 4, 2017                             DURIE TANGRI LLP

                                                 By:  _____/s/ Daralyn J. Durie_____
                                                             DARALYN J. DURIE

                                                 Attorneys for Defendant
                                                 ORANGE S.A.

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on April 4, 2017 with a copy of this document via the Court's CM/ECF system.

*/s/ Daralyn J. Durie*
DARALYN J. DURIE