QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
  Todd M. Briggs (Bar No. 209282)
  toddbriggs@quinnemanuel.com
  David E. Myre (Bar No. 304600)
  davidmyre@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Edward J. DeFranco (Bar No. 165596)
  eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

Attorneys for Plaintiff
TELESOCIAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESOCIAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ORANGE S.A., et al.,<br><br>Defendants. | CASE NO. 3:14-CV-03985-JD<br><br>**DECLARATION OF ERIC STONE IN SUPPORT OF ORANGE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF ITS MOTION TO EXCLUDE TESTIMONY FROM ERIC STONE AND ORANGE'S REPLY IN SUPPORT OF ITS MOTION**<br><br>**Ctrm: 11, 19th Floor**<br>**Judge: Hon. James Donato**<br>**Trial: July 10, 2017** |

I, Eric Stone, declare as follows:

1. I am the Chief Technology Officer of Plaintiff Telesocial, Inc. ("Telesocial"). I make this declaration in support of Orange's Administrative Motion to Seal its Motion to Exclude Testimony from Eric Stone and its Administrative Motion to Seal its Reply in Support of that Motion. Unless otherwise noted, I have personal knowledge of the facts stated herein and, if called upon to testify, I could and would competently testify thereto.

2. I founded Telesocial along with William Waytena in 2008. From 2008 forward, I along with a number of other engineers who I supervised spent years developing a proprietary, social calling technology for Telesocial that allowed social network application users (*e.g.*, Facebook users) to make telephone calls through social network applications using traditional telephone networks. The technology we developed contains highly confidential and secret aspects that are not publicly accessible or otherwise available, and the disclosure of this underlying, non-public social calling technology would substantially harm Telesocial, as it would allow third-parties to gain access to and copy the technology that took years for Telesocial to develop and refine.

3. Given its value, Telesocial has taken a number of steps to maintain the confidentiality of our underlying social calling technology. For example, Telesocial has a practice of requiring employees, contractors, customers, and partners to sign non-disclosure agreements to prevent our social calling technology from becoming public. Telesocial also required users who wished to use Telesocial's API or "Call Friends" application to agree to a Terms of Use preventing them from misusing our technology. We further implemented safeguards that limited access to Telesocial's underlying technology to only specific, permitted personnel who needed access to perform work on Telesocial's behalf, but who were subject to confidentiality obligations that forbid them from disclosing or using Telesocial's intellectual property. Finally, Telesocial took steps to ensure the physical security of our computer hardware, including keeping it in a secure data center and using password and encryption policies and firewalls to safeguard our data.

4. When Telesocial initiated this action, we also took certain steps to ensure that confidential information and proprietary technology produced in the litigation would remain

1  protected.  For example, a Protective Order was entered under which Telesocial could designate
2  information as "Confidential", "Highly Confidential – Attorneys' Eyes Only", or "Highly
3  Confidential – Source Code" before producing it, in order to maintain its confidentiality. D.E. 71,
4  72. Telesocial was and remains concerned that without these protections, otherwise confidential
5  and highly sensitive documents regarding its technology produced during litigation could be
6  revealed to competitors or the public.

7  5. A number of documents containing highly-sensitive, confidential information
8  regarding Telesocial's technology have been produced in this litigation because of, and under the
9  assumption that they would remain protected by, these provisions.  For example, Telesocial has
10 provided detailed descriptions of its trade secrets that it alleges Orange misappropriated, filed in
11 this action at D.E. 213-62.  Telesocial has also hired expert witnesses who have performed
12 detailed analysis regarding its proprietary technology, and has produced those reports and filed the
13 expert's findings in support of certain motions in this litigation. D.E. 213-4, 213-8, 213-9.
14 Orange's expert witnesses have also had access to Telesocial's proprietary technology, but only
15 subject to the terms of the Protective Order in this litigation.

16 6. I understand that Orange's Motion and its Reply contain excerpts from the my
17 deposition (325-5), the deposition of Telesocial's expert Christian Hicks (D.E. 325-3) as well as
18 Mr. Hicks's analysis of Telesocial's API logs (D.E. 325-2).  I understand that Orange's motion also
19 contained Telesocial's responses to Orange's Interrogatories 2-5 (D.E. 325-4); I understand that
20 these responses contain Telesocial's contain confidential details of Telsocial's proprietary
21 technology and confidential details of Telesocial's  business that would not be public but for
22 Orange's filing.  If this information were released to the public, it could reveal important details
23 regarding Telesocial's business and trade secrets.

1   I declare under penalty of perjury that the foregoing is true and correct.

2

3   Executed in San Francisco, California on July 16, 2017

4

5

6   By _____
      Eric Stone

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:14-CV-03985-JD
DECLARATION OF ERIC STONE